```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

PPG INDUSTRIES, INC.,              .
                                   .
        Plaintiff,                 .
                                   . Case No. 12-cv-03526
vs.                                .
                                   . Newark, New Jersey
UNITED STATES OF AMERICA, et       . August 18, 2014
al.,                               .
                                   .
        Defendants.                .


                      TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE MICHAEL A. HAMMER
                 UNITED STATES MAGISTRATE JUDGE

The oral opinions contained herein have been reviewed and
revised in accordance with L. Civ. R. 52.1

APPEARANCES:

For the Plaintiff:        JOSEPH F. LAGROTTERIA, ESQ.
                          LeClairRyan
                          One Riverfront Plaza
                          1037 Raymond Boulevard, 16th Floor
                          Newark, NJ 07102
                          (973) 491-3600
                          Email:
                          Joseph.lagrotteria@leclairryan.com

                          ADAM GRANDIN HUSIK, ESQ.
                          LeClairRyan
                          One Riverfront Plaza
                          1037 Raymond Boulevard, 16th Floor
                          Newark, NJ 07102
                          (973) 491-3317
                          Email: Adam@husik.com

                          GREGORY S. THOMAS, ESQ.
                          LeClairRyan
                          One Riverfront Plaza
                          1037 Raymond Boulevard, 16th Floor
                          Newark, NJ 07102
                          (973) 491-3600
                          Email: Gregory.thomas@leclairryan.com
```

```
 1   For the Defendants:      LEWIS MARSHAL BARR, ESQ.
                              U.S. Department of Justice
 2                            Environment & Natural Resources
                              Division
 3                            P.O. Box 7611
                              Washington, DC 20044
 4                            (202) 514-9645
                              Email: Lewis.barr@usdoj.gov
 5
                              LISA MEGHAN BELL, ESQ.
 6                            U.S. Department of Justice
                              Environment & Natural Resources
 7                            Division
                              P.O. Box 7611
 8                            Washington, DC 20044

 9   For the Non-Party        PETER PAPASAVAS, ESQ.
     Insurers, The            Sheldon Karasik P.C.
10   AIG Companies:

11
     Audio Operator:
12
     Transcription Service:   KING TRANSCRIPTION SERVICES
13                            901 Route 23 South, Center Ste. 3
                              Pompton Plains, NJ 07444
14                            (973) 237-6080

15   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.
16

17

18

19

20

21

22

23

24

25
```

1                    I N D E X

2

3    Proceeding                                    Page

4       Proceedings                                  4

5    The Court's Ruling on Settlement Agreements with   26
     AIG
6
     The Court's Ruling on Settlement Agreements of    36
7    insurers represented by Fisher Kanaris

8    The Court's Ruling on the Protective Order       46

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Commencement of proceedings at 1:44 P.M.)

2

3              THE COURT:  All right.  This is the matter of PPG

4   Industries versus the United States, Civil No. 12-3526.  We

5   are here today for a status conference to address several

6   issues that the parties have brought to the Court's attention

7   following the June 17th hearing that we had.

8              Can I have appearances, please starting with

9   plaintiff.

10             MR. LAGROTTERIA:  Joe Lagrotteria, LeClairRyan on

11  behalf of plaintiff PPG Industries.

12             MR. HUSIK:  Adam Husik also of LeClairRyan for

13  plaintiff.

14             MR. THOMAS:  Greg Thomas of LeClairRyan, also for

15  plaintiff PPG.

16             FEMALE SPEAKER:  -- LeClairRyan.

17             THE COURT:  And for the defense?

18             MR. BARR:  Lew Barr, U.S. Department of Justice.

19             MS. BELL:  Lisa Bell, U.S. Department of Justice.

20             THE COURT:  All right.  Good afternoon.  And --

21             MR. PAPASAVAS:  Your Honor --

22             THE COURT:  -- you're here for AIG?

23             MR. PAPASAVAS:  -- Peter Papasavas from Sheldon

24  Karasik P.C. on behalf of AIG.

25             THE COURT:  All right.  Thank you very much.

1          Let's start with that issue, because I think a lot

2   has transpired since the exchange of the parties' information

3   in the middle of July concerning the agreements with the

4   third party -- or with the insurers, who aren't third

5   parties, actually, nonparties.  And I think at that point,

6   part of the concern was the scope of the discovery

7   confidentiality agreement and whether that was going to be

8   amended.

9          If I understand correctly, the amended discovery

10  confidentiality order that was filed on or around July 28th

11  should have resolved at least some of those concerns.

12  Correct?

13         And if you want to come up, counsel, so that you

14  could be heard on the microphones, that's fine, just pick

15  one.  I know you're not on one side or the other.

16         MR. PAPASAVAS:  Thank you, Your Honor.

17         THE COURT:  Here, maybe in the middle, there you

18  go.

19         So who wants to take the lead on -- wherever --

20  wherever you're comfortable.

21         Who wants to take the lead on bringing me up to

22  speed?  I'll start with the plaintiff.  Then I'll hear from

23  Mr. Barr.  And then I'll hear any concerns that -- I'm sorry,

24  sir.  How do I pronounce your name?

25         MR. PAPASAVAS:  Papasavas.

1                    THE COURT:  Papasavas.  Did I get that right?

2                    MR. PAPASAVAS:  Yes.

3                    THE COURT:  Okay.  That Mr. Papasavas has.

4              So go ahead.

5                    MR. THOMAS:  Your Honor, good afternoon, this is

6     Greg Thomas.  And -- for PPG.

7                    PPG has produced -- since the last conference has

8     made two additional productions of the settlement agreements.

9     This is following the -- the con- -- the amended

10    confidentiality order, which Your Honor --

11                   THE COURT:  Right.

12                   MR. THOMAS:  -- referred to issue resolved.

13             So just in terms of the count, we have a total of

14    49 agreements that we're dealing with, and 33 of those have

15    been produced, either in full or redacted form.  Some of the

16    insurers had requested that their agreements be redacted, and

17    we were willing to do that.  And just -- just for

18    Your Honor's information, PPG has not made any of these

19    redactions themselves.  There have been --

20                   THE COURT:  It's at the behest of the carriers.

21                   MR. THOMAS:  Yes, these are redactions that

22    individual carriers requested.

23                   THE COURT:  Okay.

24                   MR. THOMAS:  And so there remain of the 49, there

25    are 16 left.  About four of five of those are agreements that

1    relate -- or relate to first-party property carriers, who are

2    represented by --

3              THE COURT:  How many?  I'm sorry.

4              MR. THOMAS:  Four or five who are represented by

5    Fisher Kanaris.  Their counsel had sent in a letter on

6    August 15th to Your Honor.  And then there are about 11 --

7    that leaves about 11 agreements, most of those are order --

8    are agreements which require some type of court intervention

9    or a court order before their contents can be disclosed.

10             THE COURT:  These are separate from the first-party

11   insurers.

12             MR. THOMAS:  Some of those may be first party, but

13   they're separate from the Fisher Kanaris.

14             THE COURT:  Fish- -- all right.  Because I'm

15   looking at the docket.  I don't -- I don't have anything from

16   Fisher Kanaris.

17             MR. THOMAS:  There was a -- I can hand this to

18   Your Honor.

19             THE COURT:  Yeah, if you don't mind.  I am not

20   saying they didn't submit it.

21             MR. THOMAS:  It was faxed in on Friday, I believe.

22             THE COURT:  Okay.  Okay.  I'll double-back to this.

23   We'll come back.

24             All right.  So just in terms of the overview, all

25   right -- so -- so we've got 49 agreements total.  A total of

1  33 have been produced in full or redacted form.  Four or five

2  are what are referred to as the Fisher Kanaris parties,

3  because they're all represented by Fisher Kanaris.

4           MR. THOMAS:  That's correct, Your Honor.

5           THE COURT:  All right.  And then take me through

6  what are the others?

7           MR. THOMAS:  There are about 11 there are left.

8           THE COURT:  Okay.

9           MR. THOMAS:  And included in those 11 are the

10 AIG-related companies who are represented by Mr. Papasavas.

11          THE COURT:  Right.

12          MR. THOMAS:  And then there are a number of other

13 ones which contain provisions that are what I would -- I

14 guess refer to as restrictive in nature in the sense they

15 don't allow for any disclosure unless a court orders

16 disclosure.

17          THE COURT:  Okay.  Now those -- those -- and I know

18 part of the dispute is, well, what do we do with them.

19 You're proposing a sort of final notice to them.  The

20 government is basically saying, there's no point to that.

21 Right?  Is that where we are with those?  I'm still trying to

22 get my arms around ...

23          MR. THOMAS:  We're close to that, Your Honor.  I --

24 we have given notice and given -- had given one final round

25 of notices to these -- to these carriers' counsel or their

1    last-known address.

2              THE COURT:  When was that?

3              MR. THOMAS:  It was at least --

4              MR. PAPASAVAS:  I believe that was August 4th,

5    Your Honor.

6              MR. THOMAS:  Yeah, August 4th.  It was before I

7    went on vacation, Your Honor.

8              THE COURT:  Okay.

9              MR. THOMAS:  And --

10             THE COURT:  And did that give them notice of

11   today's hearing?

12             MR. THOMAS:  We did give them notice --

13             THE COURT:  Or some sort of deadline, are they

14   operating pursuant to that --

15             MR. THOMAS:  We gave them a deadline.  We gave them

16   a drop-dead deadline of the 11th, I believe.  Yes.

17             And our position, though, in terms of this final

18   group of 11, leaving aside Mr. Papasavas's clients, is

19   that --

20             THE COURT:  Right.  We'll deal with -- we'll deal

21   with the Papasavas clients and the Kanaris parties

22   separately.

23             MR. THOMAS:  Right.  But PPG is willing to submit

24   this last group of agreements to Your Honor if you --

25   Your Honor deems it necessary to look at disclosure

1   provisions, the confidentiality provisions and then make some

2   determination as to whether those agreements should be

3   produced in response to Mr. Barr's motion to compel.  And

4   we're willing to do that if Your Honor feels that's

5   necessary.

6           THE COURT:  Well, why wouldn't it be?

7           MR. THOMAS:  Well, if Your Honor decided to rule

8   without actually looking at the agreements.

9           THE COURT:  Okay.

10          MR. THOMAS:  That's one option.

11          MR. HUSIK:  Can I just clarify one point?

12          THE COURT:  Yeah.

13          MR. THOMAS:  Sure.

14          MR. HUSIK:  Your Honor, just to add, because I was

15  handling matters while he was away for a couple of weeks.

16          THE COURT:  Yeah.

17          MR. HUSIK:  This last category aren't agreements

18  where we felt he can file notice and then absent any

19  response, then produce them.  The text of the agreements, as

20  Mr. Thomas said, require a court order.  So nobody's

21  really --

22          THE COURT:  Right.  In other words, I've got to

23  basically make a 408 analysis.  Right?

24          MR. LAGROTTERIA:  Correct.

25          THE COURT:  Because they have confidentiality

```
 1    provisions in the settlement agreements?

 2              MR. LAGROTTERIA:  Correct.  Just wanted to clarify.

 3              THE COURT:  Okay.  All right.

 4              Mr. Barr, do you want to be heard on that?

 5              MR. BARR:  Yes, I -- just, I think, a little bit of

 6    confusion, and let me try to clear it up.

 7              There were six agreements, as we understood of

 8    it -- six insurers as to which a court order is -- is

 9    allegedly necessary.  Of course, we haven't seen the

10    agreement, so we don't know.

11              But even if there is an agreement that an order is

12    necessary, the Court -- you know, the Court can order it

13    without reviewing those agreements.

14              THE COURT:  I could.  But would I be making a

15    decision, then, in an absence of information?

16              MR. BARR:  Well, the insurers have had the

17    opportunity to --

18              THE COURT:  Yes.

19              MR. BARR:  -- provide all that to Your Honor.

20              THE COURT:  Right.

21              MR. BARR:  And if there was something that they

22    wanted to bring to your attention, they could have done that

23    over the last several months.

24              THE COURT:  Well --

25              MR. BARR:  That being said --
```

```
 1                    THE COURT:  Yeah.

 2                    MR. BARR:  -- there's another group, which we think

 3       is 11 or 12 insurers.

 4                    THE COURT:  Wait, I want to make sure we're not

 5       sort of talking past each other with respect to these groups.

 6                    MR. BARR:  The numbers are a little different.  So

 7       I'll omit the numbers and just say there's this group of

 8       insurers who either did not respond at any time over the last

 9       8, 9 months.

10                    THE COURT:  Isn't that -- that's not this last

11       group?

12                    MR. BARR:  It is.

13                    THE COURT:  It is.  Okay.

14                    MR. BARR:  Okay.  And they didn't respond again by

15       August 11th.

16                    THE COURT:  Right.  And that's -- those are --

17       that's the group for which plaintiff's counsel is proposing I

18       do an in camera review.  Right?  I just want to make sure

19       we're on the same page.  Am I confusing something?

20                    MR. BARR:  I thought -- I thought they were only

21       asking you to look at the agreements where there was a

22       requirement for a court order where --

23                    THE COURT:  I thought these were.  These were

24       restrictive in nature absent a court order.

25                    MR. HUSIK:  I think we're on the same page,
```

 1    actually.

 2              THE COURT:  All right.  Let me make sure -- hold

 3    on.  Let me just go through these again and make sure

 4    that....

 5              So PPG's produced -- out of a total of 49

 6    settlement agreements, you've produced 33 in whole or in

 7    part.  The redactions that you made were pursuant to not on

 8    your own volition but pursuant to the requests or demands by

 9    the carriers who were parties to that agreement.  Right?

10              MR. THOMAS:  That's correct, Your Honor.

11              THE COURT:  All right.  So that's the 33.  Then

12    we've got four or five that we refer to as to Fisher Kanaris

13    parties who are separately addressed in the Fisher Kanaris

14    August 15th letter.  I assume everybody has a copy of this?

15              MR. BARR:  Yes.

16              THE COURT:  Okay.  I'll come back to that.

17              MR. BARR:  That feels -- that's on the issue of

18    what redactions are appropriate.

19              THE COURT:  Okay.  And we'll come back to that.

20              I'm just still in grouping mode.

21              MR. BARR:  Right.

22              THE COURT:  Then we have Mr. Papasavas's.  He's

23    written to me.  We'll deal with that.  That's 11,

24    approximately, of the AIG companies.  Then what I thought the

25    final category was were these others who have not responded

 1   but do have restrictions in those agreements that prohibit

 2   disclosure absent a court order and for which plaintiff's

 3   counsel is proposing to submit to me for an *in camera* review,

 4   if I want, or to otherwise make a ruling on.  Is that right?

 5            MR. THOMAS:  That's correct, Your Honor.  There may

 6   be one or two in that grouping that don't have that

 7   provision.

 8            THE COURT:  Yeah.

 9            MR. THOMAS:  But they're related to -- they're like

10   successor companies to ones that are in --

11            THE COURT:  That are in there.  Okay.

12            Is that consistent with your understanding,

13   Mr. Barr?  Roughly?

14            MR. BARR:  More or less.  I mean, I think we're

15   talking about a 16 total, and --

16            THE COURT:  Yes.

17            MR. BARR:  -- and some -- some of them are supposed

18   to require a court order.  Others, the issue is what is the

19   appropriate amount of redaction.

20            THE COURT:  Okay.  Right.

21            All right.

22            So I will take for *in camera* review, which I don't

23   think will take unduly long, the -- that final category of

24   documents.

25            Now, is there -- is there a fight between the

1    parties about any of the redactions in the 33?  These are not

2    in either Fisher Kanaris nor Mr. Papasavas's AIG agreements.

3    Right?  These are -- these are redacted versions of

4    settlement agreements from outside of those two categories.

5              MR. BARR:  I believe that's correct.  We believe

6    from what we've seen, the redactions follow the June 19th

7    proposal that we sent to various insurers by way of an email.

8              So it looks like they've agreed to our proposal.

9    Conversations I've had with vary insurers' counsel indicates

10   that they've agreed to that -- that proposal.

11             THE COURT:  Is that correct?

12             MR. THOMAS:  I believe that -- that sounds --

13             THE COURT:  As far as you understand?

14             MR. THOMAS:  Although we haven't been privy to all

15   these conversations that Mr. Barr has been having with the

16   carriers, just so Your Honor's aware of that.

17             THE COURT:  That's fine.

18             MR. THOMAS:  But we have no -- we haven't made any

19   redactions or suggested any redactions.  We've just -- if a

20   carrier has requested them, we've accommodated them and

21   produced those redacted agreements.

22             THE COURT:  All right.  But at the end of the day,

23   there's no dispute as to those 33.  Is that correct?

24             MR. BARR:  I believe that's correct.

25             THE COURT:  Great.  Okay.

```
 1              So let's move, then, to Mr. Papasavas's AIG

 2   clients.

 3              So go ahead, Mr. Papasavas.  Why don't you take the

 4   lead.  And then I'll let Mr. Barr and then if plaintiff's

 5   counsel wants to be heard on this.

 6              I guess -- well, go ahead.  I read your July 18th

 7   letter.  I have to confess, though, I'm still -- putting

 8   aside the 94 versus 95 argument, explain to me, if PPG and

 9   the government are agreeing to an attorney's eyes only

10   review, which I understand to be the case, what, if any,

11   objection is still left?

12              MR. PAPASAVAS:  Well, I think the government's

13   position is that we've offered to provide a letter providing

14   information -- that's assuming that PPG consents, and the

15   government's objection to a letter from counsel is that it's

16   not admissible evidence.  And that's one of the -- one of

17   the --

18              THE COURT:  I could have sworn that I dealt with

19   this previously?  Didn't I propose a stipulation?

20              MR. BARR:  Yeah, it is deja vu all over again.

21              MR. HUSIK:  Your Honor, it's actually -- it's

22   actually not dealt with in the stipulation.

23              THE COURT:  Okay.

24              MR. HUSIK:  Other than we'll deal with it at that

25   time.
```

1           THE COURT:  All right.

2           MR. LAGROTTERIA:  That's how it's dealt with.

3           THE COURT:  The information that they are most

4  particularly interested in, right, is the amount, the party

5  and the site.  Right?

6           MR. PAPASAVAS:  Right.  And we've offered to

7  provide that information in the form of a letter from

8  counsel.  Outside, I offered to provide or to do it by

9  stipulation, which would include PPG.

10          THE COURT:  But it would have to include PPG;

11  otherwise, there's an admissibility issue.

12          MR. PAPASAVAS:  -- right.

13          THE COURT:  Right.

14          MR. PAPASAVAS:  Okay.  And that would protect our

15  concerns about the settlement agreement being disclosed or

16  ever becoming a matter of judicial record, if it's ever used

17  or presented in any manner to the Court.  And that's one of

18  our primary concerns.

19          All the other aspects of the settlement agreement

20  that the defendant is seeking really doesn't have any bearing

21  on their defense with respect to PPG.  It's the cost, the

22  sites, and the parties.  And that's what we've offered to

23  provide but in a form that protects our client 's right to

24  keep these settlement agreements confidential.

25          THE COURT:  All right.  So let me --

1          MR. PAPASAVAS:  I should -- I would like to point

2   out that I don't think under Rule 408, the settlement

3   agreements could be used as admissible evidence within this

4   case.  So --

5          THE COURT:  But that doesn't mean they're not

6   discoverable --

7          MR. PAPASAVAS:  -- if we're offering this deal as a

8   bypass --

9          THE COURT:  Oh, I see your argument.  Right.

10  You're recognizing the discoverability of the information but

11  also recognizing that they may not be admissible under 408.

12         MR. PAPASAVAS:  And there are other ways they could

13  get this information.  I mean, at some point a payment was

14  made from the insurers to PPG, and that could be tracked.

15         THE COURT:  Yeah.  It -- well, assuming it could be

16  tracked.

17         MR. PAPASAVAS:  And -- but that's -- right.

18         THE COURT:  Because we're going back in time to --

19         MR. PAPASAVAS:  And presumably PPG would be able to

20  disclose that.

21         But, again, we're -- we're trying to do in such a

22  manner where it's efficient, it's usable, and it satisfied

23  concerns of all the parties, including AIG.

24         THE COURT:  Mr. Lagrotteria, would -- would PPG be

25  amenable to a stipulation as to the three categories of

```
 1    information you just talked about?

 2              MR. LAGROTTERIA:  Well, yeah, generally yes,

 3    Your Honor.  But first of all, again, to repeat what I said

 4    before, we object to the use of this document at trial or

 5    evidence; this is just discoverability, as you pointed out.

 6    We don't believe they're admissible, but --

 7              THE COURT:  Right.  The settlement agreement

 8    itself -- right.

 9              MR. LAGROTTERIA:  Right.  And we still preserve

10    all -- any objections we have to the things like this to --

11              THE COURT:  Well, make it an in limine issue.

12              MR. LAGROTTERIA:  Right.  But what --

13              THE COURT:  Right.

14              MR. LAGROTTERIA:  -- I'm doing now, we're just

15    talking about discoverability.

16              THE COURT:  Right.

17              MR. LAGROTTERIA:  And that's what we're dealing

18    with now.

19              There may be -- the only thing I do have to say is

20    there may be other issues we may want to have in that letter

21    that protects PPG's interests, should these be deemed

22    admissible.

23              THE COURT:  Wait.  So explain to me, again, should

24    the agreement itself or the agreement be deemed admissible?

25              MR. LAGROTTERIA:  Well, again, I am not -- this is
```

1   not giving you an answer based upon this specific agreement.

2              THE COURT:  Right.

3              MR. LAGROTTERIA:  But Mr. Barr's position will be,

4   I assume, as he's articulated previously, is that PPG got

5   paid X amount of dollars in insurance for this site --

6              THE COURT:  Right.  And therefore, why should we

7   have to pay that again.

8              MR. LAGROTTERIA:  Yeah, we can't double-recovery,

9   whatever --

10             THE COURT:  Yeah.

11             MR. LAGROTTERIA:  -- whatever PPG's entitled to,

12  that is an offset.

13             THE COURT:  Right.

14             MR. LAGROTTERIA:  Okay?

15             Or all those other defenses there too.

16             The -- but the -- I guess the point here is that

17  that -- this stealth agreement may specifically say -- omit

18  issues about whether the monies are allocable to any sites in

19  particular.  I mean that's the kind of thing I would want to

20  make sure is in there because if I lose on the *in limine* and

21  this letter gets in, that hurts me.

22             THE COURT:  Okay.

23             Mr. Barr?

24             MR. BARR:  It -- the double-recovery issue is --

25  the other side of the accurate accounting rule under CERCLA.

1    And we need to know, obviously, what sites this agreement

2    applied to.

3                    THE COURT:  Right.

4                    MR. BARR:  Even if it applies to sites that -- even

5    if the agreement says it can apply to any sites that PPG

6    chooses, we still need to know that because it's their burden

7    to show that they've accounted for offsets accurately.

8                    THE COURT:  Right.

9                    MR. BARR:  Now, we want more than the three items

10   that the Court mentioned.

11                   THE COURT:  Okay.

12                   MR. BARR:  The recitals, the definitions, the

13   releases, and the confidentiality provision.  We don't think

14   any of that is unreasonable.  We asked for that.  We proposed

15   back in June -- June.  And oftentimes in the provisions that

16   are disclosed were defined terms.

17                   THE COURT:  So, wait, let me make sure I have it

18   correctly.  You want the -- not just the site and the payment

19   amount, but you want the recitals, the releases, definitions

20   and confidentiality provision.  Did I miss anything?

21                   MR. BARR:  No, I think you've got it.

22                   THE COURT:  Okay.

23                   MR. BARR:  The --

24                   THE COURT:  What would -- for example, what would

25   be the sort of information that you would see in the

1    recitals, whereas the parties want to resolve --

2              MR. BARR:  You know, which parties; you know, which

3    insurers exactly are involved.

4              THE COURT:  Wouldn't that be covered by the

5    releases?

6              MR. BARR:  Not necessarily.

7              THE COURT:  No?

8              MR. BARR:  That the -- the -- it may be a defined

9    term, and in the releases it would simply refer to the,

10   quote, insurance.  Quote/unquote.

11             THE COURT:  Why the confidentiality provision?

12             MR. BARR:  Well, that's been represented that

13   this -- you know, these can't be disclosed without a court

14   order.  We'd like to verify that.

15             THE COURT:  Okay.

16             MR. BARR:  The -- for example, the other reason,

17   many of the 33 agreements that have been produced, when they

18   were produced to us, we discovered that they provide that

19   once the insurer was notified and given a reasonable

20   opportunity to make its views known, disclosure could occur.

21   That's a whole lot simpler than, oh, no, this is like

22   Coca-Cola's formula.  You can't have that.

23             THE COURT:  Fair enough.

24             All right.

25             Mr. Papasavas, go ahead, I gather you want to

1   respond.

2            MR. PAPASAVAS:  Yes.  I don't think anything that

3   was -- that was just stated really changes our position,

4   other than the confidentiality provision, again, that -- that

5   is -- sounds like an issue that Rule 408 specifically would

6   prohibit.  You know, he wants to use it to -- to question the

7   credibility or contradict the statement being made by

8   counsel.  So he wants to do something that's not admissible

9   at trial, but do it before then for the same purpose, and I'm

10  sure he would raise it at some point.

11           The fact of the matter is these are -- the fact I'm

12  here, I think, is evidence that the client considers this to

13  be something of tremendous importance to their business

14  interests, that there are -- we have statements both by

15  plaintiff's counsel from me and Mr. Karasik, that there are

16  confidentiality provisions that these agreements.  I can't go

17  further than that, because I'm concerned about --

18           THE COURT:  Right.

19      (Simultaneous conversation)

20           MR. PAPASAVAS:  -- waiving --

21           THE COURT:  -- undoing the very protections you're

22  trying to vindicate.  I got it.

23           MR. PAPASAVAS:  Right.  And what is needed for the

24  government's purposes is what we've offered to provide.  I

25  guess there's one other issue as to the scope of the release.

1    And that's -- I think that's something that we would -- we

2    would prefer to be handled in a letter, again, rather than

3    the entire settlement agreement.  And the government would

4    have the information it needs.  I would imagine at that

5    point, they could, you know, pursue it by other means.

6             MR. BARR:  Your Honor, I don't know about any other

7    means.  We do have the hearsay and best-evidence rule issues.

8    And there may be other evidentiary issues out there with

9    respect to a counsel letter, reading a stipulation carefully

10   crafted as it might be.

11            To put in this context, there are about 135

12   insurers involved in the underlying insurance coverage cases.

13   Whether they're all covered by the 49 agreements total, we'll

14   work that out and check that with PPG.

15            The parties seeking to prevent disclosure always

16   have the burden as to why.  They haven't shown any

17   prejudice --

18            THE COURT:  Well, yes and no, though, because when

19   I -- when I do the balancing test under Rule 408, for

20   example, on the Ford Motor Company, that's made clear, that

21   the burden actually shifts in this context from the party

22   opposing the discovery, to the party seeking the discovery.

23            So right now, actually you bear the burden.

24            MR. BARR:  I understand that and I think we've

25   carried it amply.

 1                THE COURT:  Okay.

 2                MR. BARR:  And as far as what the government needs

 3     to defend itself under CERCLA, as experts as they may be

 4     under insurance law, I don't think they really have a good

 5     grasp on CERCLA.  So I don't think we're asking for anything

 6     unreasonable.  The insurers, the CNA insurers and AIG,

 7     they've -- they don't mention the discovery confidentiality

 8     order in this case, which, of course, is modeled on this

 9     District's -- which uses this District's model.  And we think

10     it provides ample protection, and it -- the agreements

11     themselves can't be used in a court proceeding or attached to

12     a motion for summary judgment, for example, without the

13     Court's direction.

14                And we think that's fine.  We're -- we're happy to

15     seek the Court's direction under those circumstances.

16                I was speaking to counsel a moment ago before

17     Your Honor came in, and if filing the documents under seal is

18     necessary, we're happy to do that.

19                But we -- you know, we think this is making it way

20     too complicated.  This is much ado about -- with all respect,

21     you know, very little.

22                THE COURT:  Well, I mean, look, I'm certainly

23     sensitive to the fact that AIG values the confidentiality

24     that it had bargained for when it entered into the agreement.

25     It's very possible, though I don't know for sure, that that

1   confidentiality may constitute some of the value of the

2   settlement agreement.  So I certainly don't take their

3   concerns lightly.

4          Is there anything else that you have, Mr. Barr?  On

5   this -- I mean, just on this issue.

6          MR. BARR:  No.  I think the simplest, cleanest,

7   easiest way to address the issue is to produce the agreement,

8   redacted as we've suggested, and subject to the

9   confidentiality order in this case.

10          THE COURT:  All right.  I have carefully considered

11   the parties' positions on this.  And under Rule 26(b)(1) of

12   the Federal Rules of Civil Procedure, quote, parties may

13   obtain discovery regarding any nonprivileged matter that is

14   relevant to any party's claim or defense."  Rule 26(b) 6 also

15   provides that "the Court may order discovery of any matter

16   relevant to the subject matter involved in the action.

17   Relevant information need not be admissible at the trial if

18   the discovery appears reasonably calculated to lead to the

19   discovery of admissible evidence."

20          Of course, as the parties in this case know full

21   well, the purpose of discovery is to uncover facts about the

22   claims and defenses set forth in the pleadings, and

23   therefore, the boundaries of relevance under Rule 26 will

24   depend on the context of each action.  See Salamone v.

25   Carter's Retail, 2011 WL 1458063 at *2 (D.N.J. April 14,

1    2011).  Courts, therefore, construe Rule 26 "broadly to

2    encompass any matter that bears on or that reasonably could

3    lead to other matters that could bear on any issue that is or

4    may be in the case."  See Oppenheimer Fund Inc. v. Sanders,

5    437 U.S. 340 at 351 (1978).

6         Normally, the party that resists discovery has the

7    burden to clarify and explain the objections that -- and to

8    support those objections.  See Halpin v. Barnegat Bay

9    Dredging, 2011 WL 2559678 at *10 (D.N.J. June 27, 2011).

10        The case law, however, recognized that there's

11   conflict between the broad scope of discovery under Rule 26

12   and the limitations under Fed. R. Evid. 408.  That's because

13   rule federal -- sorry -- Fed. R. Evid. 408 governs [as read]

14   the admissibility of settlement negotiations and provides

15   that under prohibited uses, evidence of the following is not

16   admissible on behalf of any party when offered to prove

17   liability for, invalidity of, or amount of a claim that was

18   disputed as to validity or amount or to impeach the prior

19   inconsistent statement or contradiction, (1) furnishing or

20   offering to -- or promising to furnish or accepting or

21   offering or promising to accept a valuable consideration in

22   compromising or attempting to compromise a claim; and (2)

23   conduct or statements made in compromise negotiations

24   regarding a claim except when offered in a criminal case and

25   the negotiations related to a claim by a public office or

 1  agency in the exercise of regulatory, investigative or

 2  enforcement authority.

 3          (B) Permitted uses.  This rule does not require

 4  exclusion if the evidence is offered for purposes not

 5  prohibited by Subdivision (a).

 6          This court has "recognized the inherent tension

 7  between Fed. R. Evid. 408, which prohibits the use of

 8  settlement discussions to prove liability and Rule 26 which

 9  permits liberal discovery."  See Ford Motor Company v.

10  Edgewood Properties, 257 F.R.D. 418 to 423 (D.N.J. 2009).

11  The Third Circuit has yet to resolve this tension.  See Ford

12  Motors, 257 F.R.D. at 242.

13          This court, however, has attempted to reconcile

14  "the two competing rationales behind the rules by requiring

15  the moving party to make a particularized showing that the

16  evidence sought is relevant and calculated to lead to the

17  discovery of admissible evidence."  Id. at 423 (quoting Lesal

18  Interiors, 153 F.R.D. at 562).  The effect of this, then, is

19  "to switch the burden of proof from the party in opposition

20  to the discovery, to the party seeking the information."

21  Lesal Interiors, 153 F.R.D. at 562.  Once the court is

22  satisfied that the movant has met the particularized showing

23  requirement, the court must balance the movant's asserted

24  interest and need for the documents against "the effects that

25  may flow from their discovery."  Id. at 562.

1          I've also reviewed in anticipation of today a

2     number of other cases regarding the scope of the

3     particularized showing in contexts in which settlement -- the

4     settlement agreement or communications and further thereto

5     had been at issue.

6          Considering those standards, I do find that certain

7     parts of the agreement as redacted should be produced because

8     the government has made a showing, a particularized showing

9     of need under Rule 26 when balanced against Rule 408 and

10    therefore will require certain provisions of that settlement

11    agreement to be produced pursuant to the discovery

12    confidentiality order under the attorneys' eyes only

13    provision.

14         To be clear, as I said earlier, I do not take

15    lightly AIG's concerns about the confidential nature of their

16    settlement negotiations.  I take counsel at their word that

17    there were confidentiality provisions and that it very well

18    may have been the case that good and valuable consideration

19    was made for those confidentiality protections as Mr. Karasik

20    points out on page 2 of his July 18th letter.  And so

21    certainly, then, the burden is on the government, as I said

22    earlier, to make that particularized showing.

23         Here, I find that the government has.  At the end

24    of the day, a significant issue in this case is going to be

25    whether the accounting -- the adequacy of the accounting

1    under CERCLA -- or put more colloquially, to ensure that

2    there is not a double recovery and that the United States and

3    the public fist are not being imposed upon to pay amounts to

4    which PPG has already been compensated or is not otherwise

5    entitled to.  I don't know how I could reasonably expect both

6    parties, not just the government, of course, and the Justice

7    Department, but both parties to reasonably calculate that

8    absent an idea of or a clear understanding of exactly what

9    was paid for these sites in which AIG was involved.

10   Otherwise, I'd be requiring the government and PPG to try to

11   reach some understanding -- or litigate, if they can't reach

12   an understanding -- of the amounts due and the sources of

13   those obligations in the dark because they have no clear

14   understanding as to what was previously paid to -- to PPG

15   vis-à-vis the AIG case.

16          Therefore, I do find that the government has

17   established the particularized showing requirement and will

18   require production from the settlement agreements of the

19   following information: the sites; the payment amounts; the

20   releases; the definitions, and the confidentiality provision.

21   I know the government had asked for as well the recitals.

22   I'm going to deny that without prejudice.  If it turns out in

23   the course of reviewing it, the government can come back and

24   make a more particularized showing as to exactly what it is

25   that they need that for, that's fine.  But it strikes me that

1    the core information that's needed here is going to be who

2    paid what and to be relieved of exactly what liability.  So

3    that, I think is fairly encompassed by those parts of the

4    settlement agreement that I'm ordering to be produced.

5              Of course, this is without prejudice to the right

6    of -- think, Mr. Barr had adequately -- had noted, if there

7    comes a time -- well, let me backtrack.  Whether this comes

8    in at trial is an issue for another day.  I think it may very

9    well be the case, for example, that AIG has a fair argument

10   that Rule 408 puts severe limitations on the scope and the

11   admiss- -- or the admissibility of this information.  But

12   obviously that's a -- that's a different standard than the

13   Rule 26 standard.  And that's, frankly, a fight for another

14   day.  So nothing in my ruling is in any way a comment on the

15   ultimate admissibility or any remedies that the parties may

16   pursue in the course of pursuing or opposing the

17   admissibility.  So, for example, Mr. Barr had at least held

18   open the possibility, if it came to it, of it being produced

19   under seal.  That's an issue for another day, and nothing in

20   my ruling is meant to comment on or affect the rights of any

21   party to seek that relief at the appropriate time.  Or,

22   frankly, of AIG to reintervene, to vindicate whatever rights

23   it thinks it has to confidentiality in terms of any public

24   disclosure of the -- the settlement agreement, or at least

25   those portions that I'm ordering be produced.

1           So, Mr. Papasavas, I don't know if you want to

2    stick around for the rest of this -- this hearing.  You're --

3    I leave it to you.  It's all going to be on the record.

4           Is there anything else that we need to address

5    today?

6           MR. PAPASAVAS:  Your Honor, I would only ask if

7    it's possible to reconsider a portion of your opinion which

8    relates to any of these settlement agreements being filed

9    under seal.

10          Our concern, again, is if these are --

11          THE COURT:  Oh, I am not saying they should be.

12      (Simultaneous conversation)

13          MR. PAPASAVAS:  -- attached as a motion to

14   compel --

15          THE COURT:  No, no, no.  You're right.  I am not

16   saying they should be.

17          All I'm saying is no -- all I'm -- all I'm

18   ordering --

19      (Simultaneous conversation)

20          MR. PAPASAVAS:  Well, no, no, if they are, any form

21   were to be presented to the Court, we would ask that they be

22   presented under seal.

23          THE COURT:  Yes.  No.  I am not even saying that

24   they -- they can't -- why don't we do this.

25          All I'm saying is that's an issue for another day.

```
 1   The only thing you're required to do now that I've ordered is
 2   to produce them -- or at least those parts -- why don't we do
 3   this.  Before any parts of those are pro- -- are even
 4   contemplated to be filed, they'll have to be done on at least
 5   10 days' notice to you so that you have the opportunity, if
 6   you then want to seek leave to intervene and pursue some
 7   additional remedy, you have that opportunity to do so.  Is
 8   that fair?  I am not certainly not and nor did I intend to
 9   authorize or suggest that I was authorizing --
10              MR. PAPASAVAS:  Yes --
11              THE COURT:  -- the filing of these documents.
12              MR. PAPASAVAS:  And I am not -- I am not suggesting
13   that they should be filed.
14              THE COURT:  Right.
15              MR. PAPASAVAS:  But the way things proceed often,
16   sometimes notice doesn't necessarily get to where it should
17   be.  And if there was an instruction that to the extent
18   any -- any of these agreements were filed as part of any
19   motion or presented in any way, that they -- they are done
20   under seal.
21              THE COURT:  Yes.
22              MR. PAPASAVAS:  Then --
23       (Simultaneous conversation)
24              THE COURT:  Of course, because that would be
25   consistent in any event.
```

```
 1              MR. PAPASAVAS:  -- then they --
 2              THE COURT:  By ordering it be produced under
 3    attorneys' eyes only, I believe in any event, it would flow
 4    from that, that it would be filed under seal, if it were to
 5    be filed at all.
 6              MR. PAPASAVAS:  It doesn't -- the order doesn't say
 7    that.
 8              MR. BARR:  The discovery confidentiality order
 9    specifically provides that material deemed confidential or
10    attorneys' eyes only is to be submitted --
11              THE COURT:  Right.
12              MR. BARR:  -- pursuant to the Court's direction.
13    So that presupposes getting direction from the Court.
14              THE COURT:  Okay.
15              MR. BARR:  Before it's filed.
16              MR. PAPASAVAS:  And all I'm asking is that it be
17    slightly amended so that it's if anything is filed, it's done
18    under seal without having to wait for that direction or --
19              THE COURT:  Any objection from you, Mr. Barr, as to
20    that request?
21              MR. BARR:  No, Your Honor.
22              THE COURT:  Mr. Lagrotteria?
23              MR. LAGROTTERIA:  No.
24              THE COURT:  Okay.  So we're -- and I will also
25    require that before it's filed, AIG be given 10 days' notice.
```

1              MR. PAPASAVAS:  Okay.  Thank you very much,

2    Your Honor.

3              THE COURT:  All right.

4              MR. BARR:  Your Honor, just one nitpick, if I

5    may --

6              THE COURT:  Yes.

7              MR. BARR:  -- that is if there are headings,

8    paragraph headings in the AIG and the other agreements, that

9    those be disclosed as well so at least we know the subject

10   matter of the paragraph.

11             THE COURT:  Mr. Papasavas?

12             MR. PAPASAVAS:  This is a fishing expedition.

13   He's -- he's going to get what I think he needs.

14             THE COURT:  Yeah, I'm going to deny Mr. Barr's

15   request.  I think we've covered in some detail now exactly

16   what it is the government needs and why.  To add additional

17   headings would be to go beyond the scope of the order,

18   require an entirely separate balancing analysis between

19   Rule 408 and Rule 26 that has not been previously raised and

20   for which there's been no showing of a particularized need in

21   any event.  So I'm going to deny that.

22             And thank you, Mr. Papasavas.

23             MR. PAPASAVAS:  Thank you, Your Honor.

24             THE COURT:  All right.

25             PLAINTIFF'S ATTORNEY:  Your Honor?

1            THE COURT:  Now, that takes it to -- yeah, I'm

2   sorry.

3            PLAINTIFF'S ATTORNEY:  Just before we move on, just

4   to be clear, that ruling is solely relevant to the AIG?

5            THE COURT:  Yes.

6            PLAINTIFF'S ATTORNEY:  Agreement, not the other

7   carriers.

8            THE COURT:  No.  We're going to take up the Kanaris

9   ruling now.  -- or -- Kanaris letter now.  Sorry.

10            PLAINTIFF'S ATTORNEY:  Thank you.

11            THE COURT:  All right.  Mr. Barr, I take it you've

12   seen Ms. Blankinship's letter?

13            MR. BARR:  Yes, and I think that essentially

14   repeats what Mr. -- what Ms. Blankinship offered up back in

15   June.

16            THE COURT:  Why would my ruling on this be any

17   different than what I just ruled as to the AIG parties?

18            MR. BARR:  I see no logical reason for it to

19   differ.

20            THE COURT:  Mr. -- does plaintiff's counsel have a

21   position on this?

22            MR. THOMAS:  No, Your Honor.

23            THE COURT:  All right.  Then I'm going to make a

24   similar ruling as to the Kanaris parties in terms of the

25   scope of their production and the limitations thereon.

 1   They'll be produced pursuant to a attorneys' eyes only, and

 2   if they are to be filed, would be filed under seal with 10

 3   days' notice to the Kanaris -- Fisher Kanaris firm.

 4          MR. BARR:  Your Honor, the attorneys' eyes only,

 5   you'll recall that was not to be construed literally, but

 6   includes experts and staff.

 7          THE COURT:  Agents.  Yes.  Yeah.

 8          Okay.  That's resolved.

 9          That takes us to -- thank you, again,

10   Mr. Papasavas.

11          All right.  Am I correct, now that takes us to the

12   work product issue?  No?  What -- am I missing something?

13   Mr. Lagrotteria, it looks like -- it looks like I'm missing

14   something.

15          MR. LAGROTTERIA:  No, no, I just -- I think it's

16   been briefed, but, yeah.

17          MR. BARR:  If I can just complete the thought on

18   the motion to compel.

19          THE COURT:  Yeah.

20          MR. BARR:  That all in context of the motion to

21   compel.  The parties are working toward agreements on the

22   mechanics for the productions of the insurance company

23   discovery documents.

24          THE COURT:  Okay.

25          MR. BARR:  And so we discuss that in our joint --

 1              THE COURT:  Yes.

 2              MR. BARR:  July 17th letter.  We don't need to go

 3    into great depth on that right now other than to advise

 4    Your Honor that we're making progress on that.

 5              THE COURT:  All right.

 6              MR. BARR:  And we'll --

 7              THE COURT:  This is separate from the Mill Saurk

 8    [phonetic] report issue.

 9              MR. BARR:  Yes.

10              THE COURT:  Okay.

11              MR. BARR:  This deals just with our motion to

12    compel, which is to gain access to those.  And I think it

13    would be appropriate for the Court to order or grant our

14    order for access, because --

15              THE COURT:  Access for what?

16              MR. BARR:  These document repositories subject to

17    our working out --

18              THE COURT:  Okay, wait, I'm con- -- okay.  Go

19    ahead.  Explain to me --

20              MR. BARR:  I will.

21              THE COURT:  I'm sorry.  Right now Mill Saurk the

22    Mill Saurk thing and completely off and separate -- this is

23    totally separate.

24              MR. BARR:  Correct.

25              THE COURT:  Okay.

```
 1              MR. BARR:  The Mill Saurk report is the subject of
 2    PPG's motion for a protective order.
 3              THE COURT:  Right.  We'll come back to that.
 4              MR. BARR:  Okay.
 5              The reason a court order would be very helpful at
 6    this point is that the scheduling order is keyed off of the
 7    date on which the Court issues its order.  In other words,
 8    240 days from that date, fact discovery ends, et cetera,
 9    et cetera, et cetera.
10              THE COURT:  Right.  Okay.  So you want me to do an
11    order that says what exactly, Mr. Barr?  I'm sorry.
12              MR. BARR:  Well, what -- we submitted a proposed
13    order --
14              THE COURT:  As part of the July 17th letter?
15              MR. BARR:  No.  No.  This was way back when we
16    filed our motion to compel.  It is part of Document 57.  And
17    it --
18              THE COURT:  Is it an exhibit?  Because all I have
19    the brief and then exhibits.
20              MR. BARR:  It is attached to the motion itself,
21    Document 57.
22              THE COURT:  Oh, okay.  All right.  Hold on.
23              MR. BARR:  I fully recognize it would have to be
24    modified in light of subsequent proceedings.
25              THE COURT:  Okay.  Hold on.
```

```
 1              MR. LAGROTTERIA:  I'm quite frankly a little bit

 2    lost, if you could just help me here.  I apologize.

 3              PLAINTIFF'S ATTORNEY:  -- the recent discussions

 4    and where we are.

 5              MR. LAGROTTERIA:  Yeah, you're talking about the

 6    3400 boxes.  Is that what you're talking about now?

 7              MR. BARR:  That's -- yeah, and the -- and the

 8    Evanston --

 9              MR. LAGROTTERIA:  Okay.

10              MR. BARR:  -- 50 -- 70 --

11              THE COURT:  So do you know what he's talking about?

12              MR. LAGROTTERIA:  Well, just generally, I -- quite

13    frankly, the order I -- I don't have it in front of me to

14    look at, in the order -- or maybe we should talk about where

15    we are.

16              THE COURT:  Can we -- let's take a 10-minute break,

17    because I want to pull up a copy of this order and the -- the

18    problem I've got is -- is it's -- I'm looking at ECF --

19    Docket Entry 57.  I've got your brief --

20              MR. BARR:  Page 4.

21              THE COURT:  Of the brief?

22              MR. BARR:  No, of the motion itself.  We attached

23    it to the motion.

24              THE COURT:  But what I have -- the motion is

25    attachments, brief, and then a series of 10 exhibits.
```

 1              MR. BARR:  Right.  This is completely before all

 2    that.

 3              THE COURT:  I am not -- I am not seeing it.  Are

 4    you seeing it?

 5              Do you have a copy of it?

 6              MR. BARR:  I do.

 7              THE COURT:  Well, why don't we do this?  Let's --

 8    let's take two minutes.  We'll make a copy for us, a copy for

 9    the plaintiff, and then we're all working off of the same

10    page.  Okay?  We'll go off the record.

11          (Recess:  2:29 P.M. to 2:38 P.M.)

12              THE COURT:  All right.  We're back on the record in

13    PPG versus United States.

14              So, Mr. Barr, did you have anything else you wanted

15    to add to this?

16              MR. BARR:  No.  I did want to say that in light of

17    the clarification on attorneys' eye's only, paragraph 3 is no

18    longer needed.

19              THE COURT:  Okay.

20              So, Mr. Lagrotteria, what's your response to 1 and

21    2?

22              MR. LAGROTTERIA:  Well, the -- as Mr. Barr kind of

23    discussed before we broke, we -- we're working out a protocol

24    for this --

25              THE COURT:  Yeah.

1              MR. LAGROTTERIA:  -- production.  And I think he'll

2    tell you that we're -- you know, things are working in the

3    right direction.  So I don't know that we should be -- I

4    would suggest we figure out the protocol and then issue --

5    find out what order is most appropriate.

6              I mean, this is a March order that quite frankly

7    is --

8              THE COURT:  How long do you folks think you --

9    what's left to resolve with regard to the protocol?

10             MR. BARR:  Well, there are details as far as the --

11   the terms of the clawback agreement that PPG would like.

12             THE COURT:  Okay.

13             MR. BARR:  You know, the terms of the sequence in

14   which events are going to take place.  The insurers want to

15   review -- some insurers want to review their documents --

16             THE COURT:  Okay.

17             MR. BARR:  -- collections.  I think it would be a

18   good idea to put in a one-month deadline for us to wrap these

19   details up, as far as the --

20             THE COURT:  I don't think that's unfair.

21             What's plaintiff's position?

22             PLAINTIFF'S ATTORNEY:  Just to clarify why we think

23   it's a good idea.  The protocol involves notice provisions to

24   insurers --

25             THE COURT:  Yeah.

1          PLAINTIFF'S ATTORNEY:  -- some of whom, Evanston

2    and associate, couldn't be here today.

3          THE COURT:  Right.

4          PLAINTIFF'S ATTORNEY:  Also privilege log

5    considerations.

6          Notice provisions, when -- if and when confidential

7    documents are found in Pittsburgh that is not PPG's privilege

8    but insurers', and consequently to that, what PPG is to do

9    with those documents, notifying the insurer before we produce

10   them to the government, et cetera.

11         THE COURT:  Right.

12         PLAINTIFF'S ATTORNEY:  So I think if we submit a

13   form of order with a joint letter, that the Court could

14   perhaps attach the protocol to the order indicating the

15   parties shall proceed as the agreed-to --

16         THE COURT:  Right.

17         MR. HUSIK:  -- protocol states --

18         THE COURT:  So we'd have both the deadlines and the

19   protocol --

20         MR. HUSIK:  Correct.

21         THE COURT:  All in one document.

22         MR. HUSIK:  It would be much more clarity and also

23   notice to the insurers all of whom -- there are none here

24   now.  So --

25         THE COURT:  Right.

1          MR. HUSIK:  -- it might make sense as far as

2    deadline for submitting that -- that is fine with us.

3          THE COURT:  All right.  So why don't we do this,

4    then?  Within 30 days you folks will submit to me a proposed

5    protocol as well as deadlines for production.  I do agree.  I

6    mean, I -- I know there's been a lot of discovery disputes in

7    this case, but I think counsel have handled them remarkably

8    well, given the complexities of the litigation and

9    particularly the discovery, and have worked together quite

10   well.  So if -- as -- if coming out of that protocol, there

11   are still lingering disputes, you'll highlight them in that

12   submission, and then we'll reconvene.  And that way we have a

13   deadline, everybody's moving forward, but at the same time, I

14   do like the idea of having a protocol in place with

15   deadlines, because, look, the deadlines are meaningless until

16   the protocol's in place anyway.  Okay?

17          All right.  Where does that take us to, Mill Saurk?

18   Do we need to resolve the Mill Saurk issue?  Or are you folks

19   still making progress on that?

20          MR. LAGROTTERIA:  Well, it's been briefed,

21   Your Honor, and --

22          THE COURT:  Yeah.

23          MR. LAGROTTERIA:  -- you know, our view is that --

24          THE COURT:  And then some.

25          MR. LAGROTTERIA:  -- and then some.  You're right.

1    I'm responsible for the "then some," I think.

2            The -- Your Honor, I still believe that this is --

3    we agree with your ruling that it's work product.  We do not

4    believe that the government has shown a substantial need.

5    And, again, Judge, we're talking about a production of 3,000

6    boxes of documents that we've already showed that there are a

7    number of instances where the Mill Saurk information that's

8    been redacted is, in fact, obtainable by the government

9    elsewhere and has been already produced.  And I -- I would be

10   shocked if there's not additional information in those 3,000

11   boxes that would similarly satisfy that, without having to go

12   through the whole ruling on the redaction issue, and that

13   is -- that's where I stand on it, Judge.  I mean -- and I

14   don't mean to just kick the can down the road, but maybe that

15   is the best answer, and we could come back and revisit this

16   issue at some point when the documents -- discovery's over.

17           THE COURT:  I suspect Mr. Barr is going to have a

18   slightly different position.

19           MR. LAGROTTERIA:  I think you're right.

20           MR. BARR:  Just slightly, Your Honor.

21           The attempt to make a showing in their July 17th

22   letter that we have no substantial need for the Mill Saurk

23   report is speculation and generalized references to discovery

24   already had on the same subjects.  Now, just because it's on

25   the same subject, doesn't mean it is a duplicate of the

 1    information.  It -- or they don't address whether it

 2    supplements, contradicts, or duplicates.

 3            So we think we've made a sufficient showing of

 4    substantial need, in great part, because everyone associated

 5    with the report is dead.  All the people that Mr. Mill Saurk

 6    spoke to, Mr. Mill Saurk, himself, the report is -- provides

 7    evidence as to the origin of the documents that are attached

 8    to it.

 9            So I think the only issue for the Court at this

10    point is the redactions and whether those two are ordinary

11    work product.

12            THE COURT:  Are we -- and are we all in agreement

13    now, because there was some back-and-forth and it --

14    culminating in the August 5th letter from PPG.  My focus now

15    is solely on the part 2 -- the redactions themselves.  Right?

16            MR. LAGROTTERIA:  Yes, Your Honor.

17            THE COURT:  Okay.  All right.  I'm ready to rule.

18    I've reviewed all of these.  So I guess, perhaps is the

19    easiest way to reference these, go by the PPG page?  Right?

20    All right.

21            So let me deal with the first one, which is the

22    redactions on page PPGNPR 614.  I find that this is --

23    obviously -- and I ruled on this largely at the June 17th

24    hearing in terms of the overall scope of the Mill Saurk

25    report constituting work product.  But I am also of course

 1   mindful that under Rule 26(b)(3) there are essentially "two

 2   tiers of protection: first, work prepared in anticipation of

 3   litigation by an attorney or his agent, which is discoverable

 4   only upon a showing of need and hardship; second, core or

 5   opinion work product that encompasses mental impressions,

 6   conclusions, opinions or legal theories of an attorney or

 7   other representative of a party concerning the litigation,

 8   which are generally afforded near-absolute protection from

 9   discovery." See In re Cendant Corporation, 343 F.3d at 658

10   to 636 (3d Cir. 2003) (quoting United States v. Nobles, 422

11   U.S. 225, 238-239 (1975)).

12           Keeping that in mind, that there are two distinct

13   levels of protection under Rule 26(b)(3), with respect to the

14   documents in dispute, I find as follows.

15           Page PPGNPR 614, this will remain redacted as this

16   is core attorney work product and therefore, as the Court

17   noted, entitled to near-absolute protection.  And I -- based

18   on my review of the parties' submissions and my familiarity

19   with the case -- do not find that the government has met the

20   extraordinarily high standard to get around core work

21   product.

22           With regard to the first redaction on page 616,

23   this is going to stay redacted for several reasons.  One, I

24   am not even sure, as I sit here, of the possible relevance,

25   but in any event, it's also clear to me that the government

1    cannot show hardship or need insofar as I'm satisfied that

2    this material is available from multiple other sources that

3    either is already in the government's possession or in

4    reasonable short order will be in the federal government's

5    possession.

6           With regard to the second redaction, I'm going to

7    require that this be produced to the government pursuant to

8    the terms of the confidentiality order.  One, I think it's

9    clear that this is not attorney work product.  Two, while I

10   am not sure of the relevance at this point, given the broad

11   scope of discovery and the broad scope of the discovery

12   necessary in this case, I am concerned that if it's not

13   produced, the government is not going to be able to get it

14   from another source and therefore will order that to be

15   produced.

16          With respect to 617, this will remain redacted

17   insofar as the government cannot show or has not shown

18   substantial need or hardship, insofar as this is all

19   information that is already within the government's knowledge

20   or, in fact, in at least one instance a matter of public

21   record.

22          With regard to page 621, the formula, I'm going

23   to -- the handwritten calculation, I'm going to require that

24   to be produced.  I know that there have already been a

25   series -- I'm sure, no shortage of calculations that have

 1   already been produced in this case.  But this handwritten

 2   calculation I am not sure has been any showing that there's

 3   been produced in other contexts, at least with the same

 4   clarity that exists in this actual production.  Therefore, I

 5   am going to require that that be produced by PPG.

 6           With regard to the second item on PPGNPR 621, I

 7   find this to be classic core or opinion work product and

 8   therefore will not be produced.

 9           With respect to 624, 625, 627 -- yes, and 627,

10   these are to be produced.  I find that the government has

11   established a substantial hardship and a showing of need for

12   this information, some of which appears to be empirical and

13   handwritten annotations that I am not satisfied the

14   government will be able to obtain from another source.

15           With regard to page 631, I'm going to allow that to

16   remain redacted even though it is general work product.

17   Again, I am not sure of the relevance of this, but even if it

18   is relevant, the government already has or will get this from

19   the same source in the form of the real estate sales

20   agreement, and therefore the government can't show

21   substantial hardship.

22           That takes us to PPGNPR 634.  I'm going to require

23   that this be produced simply because I can't discern -- I

24   find that the government has shown hardship and need, but I

25   can't discern an alternative source.

1           With regard to the final item, which is PPGNPR 637,

2    I'm going to order that not be produced.  That will remain

3    redacted because that is all a matter of public record and

4    readily available to the government.

5           So that resolves, I think, the redaction issue.

6           MR. LAGROTTERIA:  Still attorneys' eyes only.

7           THE COURT:  Yes, of course.

8           MR. LAGROTTERIA:  Okay.  Okay.

9           THE COURT:  Okay.  So now, what's left?

10          MR. LAGROTTERIA:  Nothing -- oh, Your Honor.

11          THE COURT:  Oh, new?

12          MR. LAGROTTERIA:  Well, there are some new issues

13   that we're trying to work on.

14          THE COURT:  Okay.

15          MR. LAGROTTERIA:  But we haven't --

16          THE COURT:  Hold on.  Before we transition to that,

17   Mr. Lagrotteria, is that -- are we done with the sort of old

18   business section of this, Mr. Barr?

19          MR. BARR:  Yes, we are.

20          THE COURT:  Okay.

21          So what's new?

22          MR. LAGROTTERIA:  Well, we have -- we have an issue

23   with the ESI privilege log, Your Honor.  We've --

24          THE COURT:  The privilege log.

25          MR. LAGROTTERIA:  Yes.

```
 1                THE COURT:  Okay.

 2                MR. LAGROTTERIA:  We -- and I -- quite frankly, I

 3     think it'd probably be best if we submit something on this,

 4     not that we want you to go through items.  I am not saying --

 5     suggesting that.

 6                But we have --

 7                THE COURT:  I appreciate that, Mr. Lagrotteria.  I

 8     really do.  What is that, about 2 and a half inches?

 9                Go ahead.

10                MR. LAGROTTERIA:  The issue really is the -- the

11     threshold issue is our privilege log complies with Rule 26.

12     The issue, then, is --

13                THE COURT:  When you say ESI privilege log, you

14     just mean things that are being withheld or redacted from the

15     ESI production on the basis of privilege.

16                MR. LAGROTTERIA:  Correct.

17                THE COURT:  Okay.

18                MR. LAGROTTERIA:  And it's lengthy.  I mean, there

19     are -- there are 9,000 separate entries.  I mean, we're

20     talking about legal --

21                THE COURT:  Privilege entries or entries on ESI?

22                MR. LAGROTTERIA:  Privilege entries.

23                THE COURT:  Okay.

24                MR. LAGROTTERIA:  Your Honor, this is -- but

25     just -- as you know from prior submissions, this -- these
```

 1   issues have been in the legal environment, regulatory and

 2   courts, whatever, since the mid-80s.

 3           THE COURT:  Right.

 4           MR. LAGROTTERIA:  So it's -- there's a lot of

 5   attorney-client materials that have been developed over these

 6   several decades.

 7           THE COURT:  Right.

 8           MR. LAGROTTERIA:  So I know that number is shocking

 9   to you, but it is --

10           THE COURT:  It's not shocking.  But I'll be honest

11   with you, it makes me think about whether we should be

12   appointing a special master.

13           MR. LAGROTTERIA:  Well, we could talk about that,

14   Your Honor.  But what we have here is we have a threshold

15   issue, though, where the government does -- our document --

16   our privilege log complies with the rules, federal rules,

17   what we -- what it says and what it provides the government

18   in terms of information.

19           The -- the government does not want to talk about

20   specifically entries that they have problems with, but

21   instead wants to literally go through every single entry and

22   wants a detailed explanation as to the entries.

23           MR. BARR:  Your Honor --

24           THE COURT:  Hold on.  Hold on.  Let him finish, and

25   then I'll be happy to hear you, Mr. Barr.

 1              MR. LAGROTTERIA:  That is -- and I think that

 2  that's -- that's the threshold issue that's problematic.

 3  If -- if Mr. Barr wants to --

 4              THE COURT:  Is regarding the log, its -- the

 5  adequacy of the log itself?

 6              MR. LAGROTTERIA:  Yes.  And to sit and go through

 7  every single one of them.

 8              So we started out by suggesting going through 4700.

 9  And then it just is overwhelming, Judge.  I don't think

10  that's required by the rules.

11              THE COURT:  Wait, so --

12              MR. LAGROTTERIA:  It has --

13              THE COURT:  So, wait.  So -- all right.  So you've

14  got your log.

15              MR. LAGROTTERIA:  Yes.

16              THE COURT:  You've provided that to the government.

17              MR. LAGROTTERIA:  Correct.

18              THE COURT:  And what you're saying the government

19  wants to do is go through each one.

20              MR. LAGROTTERIA:  Mm-hmm.

21              THE COURT:  As opposed to what?  As opposed to sort

22  of categorizing or --

23              MR. LAGROTTERIA:  Well, typically -- I mean,

24  these -- as Your Honor knows, if someone objects to a

25  privilege log that's otherwise in compliance with the rules,

 1   then you -- you ask or inquire or challenge certain

 2   particular items.

 3              THE COURT:  Right.

 4              MR. LAGROTTERIA:  Not every single item on there --

 5   you know, Joe Lagrotteria sends a letter to counsel to PPG

 6   about, you know, status of litigation, I mean, that's pretty

 7   clear that we shouldn't have to waste our time proving what

 8   that's about.

 9              THE COURT:  Yeah.

10              MR. LAGROTTERIA:  And why that's privileged.

11              THE COURT:  Yeah.

12              MR. LAGROTTERIA:  Now, there are other ways that

13   this could be accomplished that I've been involved in; I'm

14   sure Your Honor has and Mr. Barr.  If he -- Mr. Barr comes up

15   with some type of search term that we can do further paring

16   down of the privilege log -- we're not -- we're not looking

17   to not cooperate.  But on the other hand, it -- we're not

18   going to sit down, Your Honor, and go through 9,000 entries

19   to explain to Mr. Barr what the basis here was and

20   particularly with some -- so many of them are just so

21   patently obvious.

22              THE COURT:  Right.  Right.

23              MR. LAGROTTERIA:  That's -- but this is an issue I

24   think that we need to tee up with Your Honor rather than just

25   kind of talk to you about it and --

```
 1              PLAINTIFF'S ATTORNEY:  And just to add a little

 2    more, we've had three versions of our log.  Our first ESI log

 3    was in January.

 4              THE COURT:  Okay.

 5              PLAINTIFF'S ATTORNEY:  We've had two iterations

 6    since then.  We've added columns to the log to show --

 7              THE COURT:  So give me -- give me an overview of

 8    the columns.

 9         (Simultaneous conversation)

10              THE COURT:  Obviously, you're going to have a

11    document.

12              PLAINTIFF'S ATTORNEY:  Correct.  I'll go through

13    each one.  The document or email's creation or sent date.

14              THE COURT:  Hold on, hold on, hold on.

15              MR. BARR:  Excuse me, Your Honor?

16              THE COURT:  Yeah.

17              MR. BARR:  Would you like to see a copy of the

18    latest version?

19              THE COURT:  Does anybody mind if I see a copy of

20    that?

21              PLAINTIFF'S ATTORNEY:  We brought one for you

22    also --

23              THE COURT:  Sounds like I'm going to see it either

24    way.  So why don't -- somebody give me it, if you've got a

25    spare copy.
```

1              MR. HUSIK:  I think ours is actually printed in a

2     bigger -- easier to do.

3              MR. BARR:  Well, they've produced -- this is in --

4     believe it or not, this is in 4.5 Calibri font.

5              THE COURT:  I didn't know there was a Calibri font.

6              MR. BARR:  We didn't either.

7              THE COURT:  Okay.  So -- all right.  So -- oh, my.

8     Okay.  I can get through this.

9              MR. BARR:  Your Honor -- Your Honor, this is the

10    government's grievance.  Rather than have Mr. Lagrotteria

11    tell you what we think, I think I'd rather do it.

12             THE COURT:  No, go ahead.  Let me hear.

13             MR. BARR:  There have been three editions, and

14    between January and now there are 113 fewer entries on this

15    log than they were in January.

16             THE COURT:  Okay.

17             MR. BARR:  The additional column that they're

18    referring to, the "subject" column looks like

19    computer-generated metadata.

20             THE COURT:  Wait, wait, wait.  I'm sorry.  Let me

21    catch up with you here.  I'm seeing this obviously here for

22    the first time.

23             So I've got a privilege item, I got a date created,

24    a date sent, subject file name, author, recipient, CC, BCC,

25    document type, the privilege being asserted, and the

1   privilege -- description.

2          Okay.  This -- this -- it hits all of the

3   categories required for a log.

4          Go ahead.

5          MR. BARR:  But it doesn't provide real information

6   for most of the entries.  It doesn't tell us -- for example,

7   let me just give you some --

8          THE COURT:  Give me an example.

9          MR. BARR:  -- statistics.  Okay.  An example.

10         THE COURT:  Yeah, I --

11         MR. BARR:  Even better.

12         THE COURT:  I am not smart enough to deal with

13  statistics.  Give me a specific example.

14         MR. BARR:  Okay.

15         MR. LAGROTTERIA:  Your Honor, could we --

16         MR. BARR:  The --

17         MR. LAGROTTERIA:  -- we gave you our copy.

18         THE COURT:  Oh, you have given me the -- copy back.

19  And then if you want -- if you want to look on, you come up

20  here.

21         MALE SPEAKER:  -- up there.

22         THE COURT:  Yeah.  So, okay, so we're on -- which

23  entry are you going to take me to?

24         MR. BARR:  Well, let me -- let me find my -- if the

25  Court looks at Entry 326.

 1                THE COURT:  Okay.  Hold on.

 2                MR. LAGROTTERIA:  What's that, Lew?

 3                PLAINTIFF'S ATTORNEY:  326?

 4                MR. BARR:  Right.

 5                THE COURT:  Okay.

 6                MR. BARR:  Now, this is a document, there's no date

 7    created, no date sent.  The subject slash file name is table

 8    Roman 2 PDF.

 9                MALE SPEAKER:  Right.

10                MR. BARR:  The author is shown as C. O'Connell.

11    They provided a list of personnel.  Mr. O'Connell is not on

12    that list.  And we find that there are a numerous other

13    individuals who are identified as either author or recipient

14    that are not included on the -- the key that they gave us.

15                THE COURT:  Okay.

16                MR. BARR:  We have no idea what kind of

17    information's in the table.  We don't know what subjects it

18    is.  We don't know who Mr. O'Connell is.  We don't --

19                THE COURT:  Well, why wouldn't it be the

20    sufficient, at least in the first instance --

21                MR. BARR:  We don't know who the recipients are --

22                THE COURT:  -- for them to give you a more

23    comprehensive list as to who the people are.

24                Hold on, Mr. Lagrotteria.

25                MR. BARR:  Well, that only solves one of the

```
 1    problems.

 2               MR. LAGROTTERIA:  We've never been asked for that.

 3               MR. BARR:  There are --

 4               THE COURT:  That's all right.  Let's just get --

 5               MR. BARR:  There are four -- over 4,000 entries

 6    with no recipient indicated.  This is one of them.

 7               We have no idea what aspect of the consent orders

 8    with New Jersey, the information relates to.

 9               THE COURT:  Wait, but, for example, let me just use

10    your three points --

11         (Simultaneous conversation)

12               MR. BARR:  Those are legal conclusions, if I may.

13               THE COURT:  What's a legal conclusion?  Oh, in the

14    description?

15               MR. BARR:  Yeah, in the privilege log description.

16               THE COURT:  All right.  Well, hold on.

17               So, for example, when I look at 326, I guess this

18    isn't necessarily a safe assumption, because the authors,

19    wouldn't be part of 325?  And similarly, wouldn't 324 be an

20    attachment to 332?  Is that -- is that a --

21               MR. BARR:  Well, that's not clear to us.

22               THE COURT:  Well, no, you're right, that could be

23    clearer.  Without a doubt, that could be clearer.

24               MR. LAGROTTERIA:  Judge --

25               THE COURT:  Yeah.
```

1          MR. LAGROTTERIA:  -- but this is an exercise we

2   want do with Mr. Barr and not go through 9,000 entries.

3          MR. BARR:  Well --

4          MR. LAGROTTERIA:  He never raised this issue.  And

5   that's the point I'm making.  That's a threshold issue.  We

6   need to sit and have Mr. Barr say, Joe, this one, tell me

7   about this.  Not, let's go through 9,000 of them.

8          MR. BARR:  No, we --

9          THE COURT:  That's my point.

10         MR. BARR:  Your Honor, the fact of the matter, this

11  is an overwhelmingly deficient log.  I can give the Court any

12  number of other examples where we don't know what information

13  is being referenced, what kind.  We don't want the substance

14  of it.  But we need to know what it's about.

15         The description is one legal conclusion after

16  another, some of them concatenated.

17         THE COURT:  Some of them what?  I'm sorry.

18         MR. BARR:  The first -- the first thing we asked

19  them to do and they agreed to have a meet-and-confer on the

20  14th, last week, we told them, let's focus first on the

21  entries which refer to -- that contain the phrase "providing

22  information necessary," because that phrase is not otherwise

23  explained in most of the instances in which it's used.  And

24  it's used over 4200 times.

25         So we have been put in what we believe is an

1    untenable position, and we have agreed to Your Honor's

2    suggestion of 502.  PPG refuses to discuss 502 because they

3    said we need to meet and confer.  So we said, okay, let's

4    meet and confer.  Now, they're not so keen on it because

5    they're going to have to answer our questions.  Now, the

6    issue is more than a year old, and, I'll tell you why.  In

7    our --

8              THE COURT:  Why doesn't it -- how is this issue

9    over a year old?

10             MR. BARR:  Because in our -- in our document

11   production requests, we -- it asked for -- if you assert

12   privilege as to a certain document, provide the following

13   information, which essentially particularized what is

14   requested or required by 26(b)(5).  And PPG did not object to

15   that instruction.  In fact, they copied it in their own

16   requests for production.

17             Not only that, the parties have entered into an ESI

18   production protocol in July of 2013.  And the Court doesn't

19   have that because PPG advised that it didn't need to be filed

20   with the Court.

21             In that protocol, it says the parties in producing

22   a log of privileged information will comply with the

23   instructions in the parties' request for production.  They

24   have not done that.

25             THE COURT:  Well, the problem with that is --

1          (Simultaneous conversation)

2              MR. BARR:  -- and they have --

3          (Simultaneous conversation)

4              THE COURT:  -- you can -- the other --

5          (Simultaneous conversation)

6              MR. BARR:  -- three times.

7              THE COURT:  Then you -- that lends itself, the way

8     you put it, to a construction -- the requesting or demanding

9     party can be as patently unreasonable.  I'm certainly not

10    suggesting the government here was.  I am not suggesting for

11    a moment.

12             But that's so open-ended, the other side can be

13    patently unreasonable on what they want and require a

14    specificity to the point where the party invoking the

15    privilege actually waives it by complying with the other

16    side's request, and under your interpretation, that's simply

17    honoring the agreement to accede to the other side's request.

18    And that's just mere acquiescence.

19             MR. BARR:  No, we didn't do that.  We're not

20    saying -- we weren't unreasonable in what we requested.  We

21    hewed to the line of 26(b)(5).

22             But more than that, not only did they not object.

23    That would be one thing.  But they included the very same,

24    word-for-word instruction in their request.  And we didn't

25    object to that either.

 1              THE COURT:  Okay.

 2              MR. LAGROTTERIA:  Nor have they produced a log.

 3              MR. BARR:  And -- and -- you know, the third

 4    instance in this ESI protocol agreement, they ratified the

 5    prior agreement to follow the instruction.

 6              Now, we've been around and around for the last

 7    seven months with three editions of this ESI privilege log.

 8    And, you know, we're caught between a rock and a hard place.

 9    502 would be fine with us, there would be no prejudice to

10    PPG.  We gave them a detailed proposal the day after the

11    April 21st hearing.  We would return to them any documents --

12    I mean, 502, it greatly narrows what we're interested in.  I

13    mean, that's the way it operates, at least in my experience

14    and I'm sure in the Court's.

15              Now, anything that we don't -- we're not interested

16    in, that goes by the boards.  Anything that we reach

17    agreement on with PPG, that gets produced.  Or if there are

18    remaining disputes, we bring those few to the Court's

19    attention.

20              Everything else that isn't pro- -- that they don't

21    agree to or that the Court doesn't order, gets returned.  And

22    we'll go so far as to agree to destroying our notes regarding

23    the returned -- or working notes, regarding the return

24    documents.  So we get -- we propose two DVDs, one for me, one

25    for Ms. Bell.  We review them.  We wouldn't copy the contents

1   onto any government computer system.  And we could in --

2   efficiently get through this mass of almost 10,000 documents.

3            Almost no progress has been made since January.

4            So as I said, when we said let's talk about 502,

5   they said, no, we've got to have a meet-and-confer.  And as

6   we examined this carefully, we saw that we had what we think

7   are legitimate questions as to almost every entry.

8            Now, to the extent that we don't need to discuss an

9   entry, let's say there are some on there that are adequate,

10  we'll skip those.  We don't need to -- you know, belabor --

11      (Simultaneous conversation)

12           THE COURT:  But how do I know at this point -- do I

13  know whether that skipping is 5 entries or 900- -- 9,000

14  entries?

15           MR. BARR:  I guarantee you, it's not 9,000.  I

16  guarantee it's not 5.

17           THE COURT:  But I guess what --

18      (Simultaneous conversation)

19           MR. BARR:  But it is -- it is an insignificant

20  number based on our analysis so far.

21           THE COURT:  Of the ones you don't care about?  Or

22  the ones that are adequate?

23           MR. BARR:  The ones that are adequate --

24           THE COURT:  Okay.

25           MR. BARR:  -- would be an insignificant number.

 1          THE COURT:  Okay.  So -- why is it -- putting aside

 2   502(d), which I'll ask Mr. Lagrotteria about in a moment,

 3   because I'm sure -- I know I've raised with you folks before,

 4   that my position now is as it was then, which I think it may

 5   make a lot sense, but I am not going to force it on either

 6   party.

 7          MR. BARR:  Then we're left, the only option we

 8   think that's viable is to pursue meet-and-confer and on as

 9   many entries on their log as we think is necessary.

10          THE COURT:  Well -- all right.  And that sort of --

11   maybe that dovetails into what my question's going to be,

12   which is does it -- I certainly understand there's a lot of

13   information at issue here, potentially a lot of information

14   at issue here.  But there's also been an extraordinary amount

15   of information that's either in the -- been produced between

16   the parties or is in the process of being produced between

17   the parties.

18          Are you telling me, Mr. Barr, that as you sit here

19   now, you have no way to prioritize within the 9,900-plus

20   entries on the log what really matters to the government and

21   what is less significant to the government, maybe without

22   prejudice to the right later to seek relief as to those which

23   are less significant, but at least some way to sort of

24   approach this in -- whether it's in categories of documents

25   or some other manner of prioritization?

```
 1              MR. BARR:  We tried to do that.  We tried to do it

 2   a couple of ways.  And we're -- we're flexible on how we

 3   approach that.

 4              One, we tried looking at these privilege

 5   description columns, column, where it said provided

 6   information necessary.  The Court will notice that that

 7   phrase appears starting on page 1 over and over and over and

 8   over again.

 9              THE COURT:  Right.

10              MR. BARR:  We need to know what kind of information

11   we're talking about.

12              THE COURT:  For the providing information

13   necessary?  I mean, you already know what the subject, who

14   the authors and the recipients are.

15              MR. BARR:  Not necessarily.  I -- I --

16              THE COURT:  Well, that can be cured.  That can be

17   cured.  If what you're saying is we know that one of the

18   recipients is W. Shout [phonetic], but we don't know who

19   W. Shout is.

20              MR. BARR:  We also don't know who the recipient

21   was -- there is no recipients shown for over 4,000 of the

22   entries.

23              THE COURT:  But there's probably not one indicated.

24   I mean, look --

25              MR. LAGROTTERIA:  Because not be -- it could be a
```

 1    memo to file.  I mean --

 2                THE COURT:  Yeah, I mean they can't make stuff up.

 3                Now, if you want to depose -- later if you want to

 4    depose people on that, you know, you can.  I mean, you know,

 5    I mean, it's a possibility, if you want to depose R. Twist

 6    regarding Number 5 and Number 6, if it was that important as

 7    to the recipient, you could, but if there's not a recipient

 8    designated, then there's not a recipient.  If it's a memo to

 9    the file, for example, or just a -- you know, something that

10    says, you know, written by R. Twist -- yeah, R. Twist.  And

11    these are attachments.  Every one of these seems to be

12    attachments.

13                MR. BARR:  Which raises another question, were the

14    attachments either for the purpose of securing legal advice?

15    Were they prepared earlier in time and by whom?

16                THE COURT:  Well, there are dates on the

17    attachments.  There's creation dates.

18                MR. BARR:  Sometimes they are, and sometimes

19    they're prepared two, three years earlier than the date sent.

20                THE COURT:  Okay.

21                MR. BARR:  Which -- it's very difficult for me to

22    convey to Your Honor --

23                THE COURT:  No, I understand --

24                MR. BARR:  -- the number of questions.  And many of

25    these entries have multiple problems.

 1              THE COURT:  Let me turn to you, Mr. Lagrotteria.

 2   What's your position?

 3              MR. LAGROTTERIA:  As I started to tell Your Honor

 4   earlier, we -- this log complies with federal rules.  And

 5   that was our obligation, that's what we did.

 6              Now, if you're -- the way it normally works is if

 7   there's a question, inquiries, the other side, it challenges

 8   or asks or inquires about the various entries, that's what we

 9   thought we were going to do.

10              But instead, Mr. Barr says -- you heard him say,

11   essentially he objects to every single one or a very

12   insignificant amount are unobjectionable.

13              So I don't know whether Your Honor wants us to make

14   some kind of joint submission on this or whether you want me

15   to tell you whether I want 502 or a special master, I'd

16   prefer a special master, because with all due respect, I just

17   don't want to -- there -- I've been involved in this stuff.

18   I know there are very confidential information in here that's

19   lawyer-client, no one would dispute, and I don't want to give

20   it to the other side and have them say, oh, we're not going

21   to look at it.

22              That's not what -- and by the way, I don't think

23   that 502 can be forced upon me.  I think it's to be by

24   agreement.

25              So I would -- if you want -- if Your Honor wants to

```
 1   approach it through special master, that's fine with us.

 2             MR. BARR:  Your Honor --

 3             MR. LAGROTTERIA:  But --

 4             THE COURT:  Hold on, hold on.

 5             MR. LAGROTTERIA:  A discovery master review.

 6             THE COURT:  Yeah.  Mr. Barr, if I required -- if

 7   I -- you're telling me, if I require the plaintiff to do two

 8   things to supplement their log, one is, give a complete

 9   understanding as best they can as to who each of the authors

10   or individuals, recipients, is.

11             MS. BELL:  And, Your Honor, if I could just speak,

12   we have done that, and to the extent there are people

13   missing, it would be helpful if --

14             THE COURT:  Yeah, he would identify them and you --

15   okay.

16             And then second, if there is, for example,

17   consistent with I think it was 323 before that we were

18   talking about, if there is -- to the extent there are any of

19   these documents that relate to or were part of a prior

20   privilege log entry, so, for example, if an attachment is an

21   attachment -- say, 326 actually was an attachment to the 325,

22   if the log was amended to make that clearer, would that

23   resolve your concerns, at least in the first instance so that

24   you could then sit down and have a meet-and-confer with

25   Mr. Lagrotteria that doesn't require going through all
```

 1  9,967-some-odd entries?

 2           MR. BARR:  I don't think so.

 3           THE COURT:  All right.

 4           MR. BARR:  The reason is we have no information as

 5  to the nature of the information provided, for example, or

 6  nature of the -- what is discussed in the reports, and what

 7  the basis for the privilege claims are.  It's not

 8  self-evident as you go through these and look at them

 9  closely.

10           THE COURT:  Well, here's my concern, though.

11           MR. BARR:  I can -- I can -- okay.

12           THE COURT:  My concern is simply this.  I

13  understand your argument.  However, when I look at the -- at

14  least on -- at least on a first instance, on a superficial

15  level without having seen the underlying documents myself,

16  when I look at the privilege log, I see all of the data that

17  is normally expected on a privilege log to perfect the

18  privilege.  So you have a subject.  You have a date created,

19  a date sent.  You have an author, recipient, where available,

20  I have -- I have to assume, at least in the first instance,

21  again, not having seen the documents, that to the extent

22  there is no recipient, to the extent there is no CC or BCC,

23  it's because that information is not apparent from the face

24  of the document.  You have the nature of the privilege being

25  asserted, whether it's work product, client --

 1    attorney-client privilege or both.  And then a privilege log

 2    description.

 3              I certainly can understand that -- that the party

 4    who is assessing the privilege, in other words, not the party

 5    that invoked the privilege, would like more of the

 6    description.  But the purpose of that description is to put

 7    you on fair notice in conjunction with the other information

 8    as to whether you want to challenge the privilege.  I can't

 9    say, again, without having seen the underlying documents,

10    that any of these descriptions is per se deficient,

11    particularly when taken in conjunction with the other

12    information.  And, in fact, the concern I have is to require

13    the plaintiff to provide more information would start to

14    put -- perhaps run them up against a situation where there --

15    they're risking crossing the line into waiving privilege.

16              MR. BARR:  Well --

17              THE COURT:  So if the -- hold on.  Hold on.

18              MR. BARR:  Okay.

19              THE COURT:  If you want to -- if you want to

20    challenge this, I'm certainly -- certainly not going to tell

21    you that you can't.  But then at that point, I really have no

22    choice, but I think, particularly given the volume here and

23    the fact that the government wants to pursue virtually all of

24    these, but, two, seriously consider referring it to a special

25    master.  I don't really see another way.

 1            MR. BARR:  Well, we do, and that's 502.

 2            THE COURT:  Right, but, again --

 3            MR. BARR:  -- safeguards attendant to it.

 4            THE COURT:  I'm -- and if -- look, if the plaintiff

 5  wanted to -- if they wanted to agree to it, they're certainly

 6  acutely aware of it.  They don't -- I'm -- even if I could

 7  force it on them -- and I am not sure that I can -- I am not

 8  going to.  I'm simply not going to force a party to turn over

 9  privileged documents.  I always -- I think I may have been

10  the first one to bring it up in this case.  If not, I've

11  certainly brought it up *sua sponte* in other cases as a

12  suggestion.  But I am not going to require it.

13            MR. BARR:  It's unfortunate, and we respectfully

14  disagree with that.

15            THE COURT:  Fair enough.

16            MR. BARR:  But it's the Court's prerogative.  We

17  want to emphasize that, yeah, you can put down all the

18  necessary columns.  But if the contents in the fields are not

19  meaningful, then we don't have -- it's not providing

20  information in a manner that will enable us to assess the

21  privilege.  And that's what the rule requires.  It has to be

22  done in a manner that will enable us to assess the privilege.

23            THE COURT:  Right.  So let's -- there's a couple of

24  ways you could proceed at this point.  Right?  Because I am

25  not sure yet that it's not sufficient to allow you to assess.

1          Now, one possibility is you do a representative

2     sampling with each other and find out -- telephone

3     conference?

4          All right.  Okay.

5          You folks sit down, take another couple of weeks,

6     go back and say, pick -- even if it's a random sampling, pick

7     25, all right?  If it turns out that the description is

8     manifestly insufficient, then we revisit the issue.  I don't

9     know, without looking at the documents, which I'm certainly

10    not going to do today, I don't know that these -- at least,

11    seemingly sufficient descriptions are insufficient.  In fact,

12    I -- I have the opportunity in my job to review a lot of

13    different privilege logs, and, again, on the face of it,

14    because so much of it turns on the underlying document, this

15    does not strike me as deficient.

16         But the Option 2 is I appoint a mediator, the

17    parties will be expected to pay equally for the mediator, but

18    the mediator would have the authority to recommend shifting

19    of costs if one side or the other's position is manifestly

20    unreasonable.

21         I really -- other than those two options, I don't

22    know what else we can do.

23         So Option 1 is random sampling.  Option 2 is

24    special master.

25         Frankly -- if I said mediator, I'm sorry.  I meant

1   special master.

2          Frankly, I have to think that where this is going,

3   a special master is all but inevitable.  And then the special

4   master would have the authority and the parties would of

5   course have the right to interpose their objections to the

6   special -- or responses to the special master's report.  And

7   the special master would have the authority to at least

8   recommend shifting costs differently than a 50-50 split

9   depending on whether one party's position was manifestly

10  unreasonable.

11         MR. LAGROTTERIA:  That is -- if we can't work out

12  the alternative of really trying to figure out sampling or --

13         THE COURT:  Yeah.

14         MR. LAGROTTERIA:  -- Mr. Barr giving me

15  information, that's the way we would want to go, Your Honor.

16         THE COURT:  I don't know what else there is that we

17  could do.

18         Mr. Barr?

19         MR. BARR:  We're not inclined to go along with a

20  special master.  In fact, --

21         THE COURT:  Well, so what you're saying is

22  essentially is then, it's either Rule 502(d) or not.

23         MR. BARR:  No.

24         THE COURT:  So what's the "or"?

25         MR. BARR:  502 or a legitimate meet-and-confer

1   where we can ask questions that otherwise --

2            THE COURT:  But through 9,967 individualized

3   documents?

4            MR. BARR:  Probably not that many.  There were some

5   where it's the same type of document.  And if we know it's

6   the one, we'll know it for all of them.

7            THE COURT:  Okay.

8            MR. BARR:  There's a lot of repetition.

9            THE COURT:  Hold on.  Let's talk this through.

10  Here's what -- here's what I'm amenable to doing.  Give the

11  parties -- if we can work out -- look, normally the last

12  thing I'm going to do -- I'm loathe to get in the middle of

13  telling -- especially particularly good lawyers such as

14  yourselves, instruction on how to meet and confer or even get

15  involved in that.  But in this case, before we appoint a

16  special master, if there's a way that we can work out or the

17  parties can work out some reasonably agreeable methodology to

18  try and take another crack at meeting and conferring on this,

19  that is not -- that (A) is going to be productive, but (B) is

20  not going to involve going through 9,9 -- I keep saying,

21  9,960- --

22            MR. BARR:  68.

23            THE COURT:  What is it?

24            MR. BARR:  68.

25            THE COURT:  Okay.  9,968 separate documents,

 1   because that's not going to fly either.  If there's a way to

 2   do that, I'm happy to take another stab at that and reconvene

 3   in a month.  Parties can work that out, great.  If you can't

 4   work that out, then I'm going to impose a special master.

 5           PLAINTIFF'S ATTORNEY:  And our only request would

 6   be -- happy to do that, but when we had a call two weeks ago,

 7   Mr. Barr sat and said to Your Honor, we're challenging all

 8   the entries that say information required, so -- a list of

 9   those, have your tech people run a list and we'll start

10   with --

11           THE COURT:  A list of what?  I'm sorry.

12           PLAINTIFF'S ATTORNEY:  We asked for a list of the

13   4,200 -- however many entries had that language in it, so we

14   can meet and confer.

15           THE COURT:  Oh.

16           PLAINTIFF'S ATTORNEY:  Mr. Barr said, no, have your

17   IT staff run the search and generate a list and have the

18   first 500 ready or I'm going to go one by one.  We may stip

19   some, but we'll see when we do it.

20           That -- and we objected to that procedure.  And we

21   didn't do that -- once Your Honor -- if we're going to have a

22   sampling of documents, we should not need to be interrogated

23   on the spot without advance notice of which precise documents

24   we're talking about.

25           THE COURT:  So why don't we do this.  What if, as

1   part of the parties' meet-and-confer, you focus on the first

2   50 entries or a hundred entries on the privilege log that has

3   the language "provide information necessary regarding."

4              And I want us to be realistic about what we can

5   accomplish at least in the first -- a first round of this

6   meet-and-confer.

7              MR. BARR:  That's what we were attempting to do,

8   Your Honor.

9              THE COURT:  Okay.  Well, here we are, so let's see

10  if we can't do that.

11             So what if you did -- what exactly would you do,

12  though?  You would basically, what, pull those and then

13  explain to them --

14             PLAINTIFF'S ATTORNEY:  If we have advance notice,

15  we'll pull them and take a look at the them, and then

16  Mr. Barr raise -- tell us his problems or he'll tell us in

17  advance what the problem is or what he thinks his problem is,

18  we'll pull the document and respond to it.

19             THE COURT:  All right.  A month, you should be able

20  to get through a hundred.  No?

21             MR. BARR:  A lot more than that, I would think.

22             THE COURT:  All right.  Well --

23             MR. LAGROTTERIA:  Well --

24             THE COURT:  Let's do with a hundred.

25             MR. BARR:  Okay.

1              THE COURT:  Okay?

2              So by -- I hope somebody's taking good notes.  So

3    by -- well, I also want to be cognizant of we're in that

4    vacation season, but why don't we figure that by

5    September 25th --

6         (Simultaneous conversation)

7              THE COURT:  -- how --

8              MR. LAGROTTERIA:  Judge, could you add a week to

9    that, because I want -- I don't have prepaid vacation plans,

10   but --

11             THE COURT:  That's fine.

12             MR. LAGROTTERIA:  -- but I would want to play hooky

13   next week somewhat, so maybe if you could add a week to that.

14             THE COURT:  All right.  So how about this, though?

15   By October 2d, you folks will have met and conferred on the

16   first 100 entries dealing with providing information

17   necessary regarding.  All right.

18             There's two other things that we're going to do in

19   conjunction with that.  One is if there are any individuals

20   listed as authors, recipients, CCs that are missing, parties

21   will meet and confer, and the defense -- the plaintiff will

22   supply that information to the plaintiff -- defense, I mean,

23   to fill in my missing gaps.

24             MR. LAGROTTERIA:  We did that at the end of May,

25   but we'll --

```
 1                THE COURT:  Okay.

 2                MR. LAGROTTERIA:  -- there's any, we'll do it

 3    again.

 4                THE COURT:  And then we'll see where we are in or

 5    around the first week of October.

 6                PLAINTIFF'S ATTORNEY:  So, Your Honor, if we do a

 7    joint submission, a letter --

 8                THE COURT:  No, let's just meet.  We'll do a phone

 9    conference.  I know you're in D.C., if you want to come up.

10                MR. BARR:  No, I think for that, I think a phone

11    conference --

12                THE COURT:  Okay.

13                MR. BARR:  -- adequate.

14                I do have another commitment on the 1st and the 2d

15    in San Francisco.

16                THE COURT:  Fine.  I'll be happy to accommodate

17    you.

18                MR. BARR:  But I think other than that, we'll --

19    with that advice, I think we'll work out our discussions on

20    the phone with counsel.

21                THE COURT:  Okay.  So then what if I get you folks,

22    we, say, have a conference, say, about a week later or so.

23    October -- the week of October 6th?  Or the 13th for a phone

24    conference?

25                MR. BARR:  That's fine with us.
```

 1              THE COURT:  Okay.

 2              MR. LAGROTTERIA:  Whatever's good for Your Honor --

 3              THE COURT:  All right.

 4              MR. LAGROTTERIA:  -- will work.

 5              THE COURT:  All right.  Is there anything else we

 6  need to do on the record at this point?

 7              MR. BARR:  I don't think so, Your Honor.

 8              THE COURT:  All right.  So --

 9              MR. LAGROTTERIA:  We are -- we are progressing on

10  other fronts, Judge.

11              THE COURT:  Look, I -- as I've said, this is a

12  complicated case and with a lot of complicated discovery

13  issues.  I think you folks have done a terrific job of

14  working together, notwithstanding the complexity of the case.

15  And I certainly appreciate that.

16              All right.  We'll get you date -- hold on.  We'll

17  go off the record.  I'll get you folks a date.

18                  (Conclusion of proceedings at 3:24 P.M.)

19

20

21

22

23

24

25

```
 1                        Certification
 2        I, SARA L. KERN, Transcriptionist, do hereby certify
 3   that the 81 pages contained herein constitute a full, true,
 4   and accurate transcript from the official electronic
 5   recording of the proceedings had in the above-entitled
 6   matter; that research was performed on the spelling of proper
 7   names and utilizing the information provided, but that in
 8   many cases the spellings were educated guesses; that the
 9   transcript was prepared by me or under my direction and was
10   done to the best of my skill and ability.
11        I further certify that I am in no way related to any of
12   the parties hereto nor am I in any way interested in the
13   outcome hereof.
14
15
16
17
18   S/ Sara L. Kern               28th of August, 2014
19   _____      _____
     Signature of Approved Transcriber        Date
20
21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     901 Route 23 South, Center Suite 3
23   Pompton Plains, NJ 07444
     (973) 237-6080
24
25
```