```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY

PPG INDUSTRIES, INC.,            .
                                 .
        Plaintiff,               .
                                 . Case No. 12-cv-03526
vs.                              .
                                 . Newark, New Jersey
UNITED STATES OF AMERICA, et     . January 7, 2016
al.,                             .
                                 .
        Defendants.              .
```

```
                 TRANSCRIPT OF HEARING
         BY THE HONORABLE MICHAEL A. HAMMER
            UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiff:      JOSEPH F. LAGROTTERIA, ESQ.
                        LeClairRyan
                        One Riverfront Plaza
                        1037 Raymond Boulevard, 16th Floor
                        Newark, NJ 07102
                        (973) 491-3600
                        Email:
                        Joseph.lagrotteria@leclairryan.com

                        ADAM GRANDIN HUSIK, ESQ.
                        LeClairRyan
                        One Riverfront Plaza
                        1037 Raymond Boulevard, 16th Floor
                        Newark, NJ 07102
                        (973) 491-3317
                        Email: Adam@husik.com

                        DOROTHY MELLO LAGUZZA, ESQ.
                        LeClairRyan
                        One Riverfront Plaza
                        1037 Raymond Boulevard
                        Sixteenth Floor
                        Newark, New Jersey 07102
                        (973) 491-3383
                        email:
                        Dorothy.laguzza@leclairryan.com

```
 1
     For the Defendants:     LEWIS MARSHAL BARR, ESQ.
 2                           U.S. Department of Justice
                             Environment & Natural Resources
 3                           Division
                             P.O. Box 7611
 4                           Washington, DC 20044
                             (202) 514-9645
 5                           Email: Lewis.barr@usdoj.gov

 6                           Also present: Sue Chen

 7   Audio Operator:

 8   Transcription Service:     KING TRANSCRIPTION SERVICES
                                3 South Corporate Drive, Suite 203
 9                              Riverdale, NJ  07457
                                (973) 237-6080
10
     Proceedings recorded by electronic sound recording; transcript
11   produced by transcription service.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1               (Commencement of proceedings at 2:44 P.M.)

2

3          THE COURT:  All right.  We're on the record in PPG

4    Industries versus United States.

5               So, folks, let me sort of give you the order of

6    what we're going to do today.  We're first going to deal with

7    the motion by the United States to -- to be -- essentially to

8    revisit my ruling on the 30(b)(6) deposition issue.  I still

9    have to unfortunately -- unfortunately in the sense that I

10   haven't gotten it done yet and I feel bad about that -- but

11   still have to review the insurance agreements.  I have just

12   one or two brief questions about that, and then we're going

13   to talk about what else there is.

14              So why don't we start with appearances, beginning

15   with PPG.

16          MR. LAGROTTERIA:  Thank you, Your Honor, Joe

17   Lagrotteria of LeClairRyan on behalf of plaintiff PPG

18   Industries.

19          MR. HUSIK:  Good afternoon, Your Honor, Adam Husik

20   from LeClairRyan also for PPG.

21          MS. LAGUZZA:  Dorothy Laguzza, LeClairRyan on

22   behalf of PPG.

23          MR. BARR:  Good afternoon, Your Honor, Lew Bart for

24   the United States.

25          MS. CHEN:  And Sue Chen, for the United States.

1          THE COURT:  All right.  Good afternoon, everyone.

2          All right.  So let's start with the motion by the

3     government to modify -- for me to modify my April 16th order.

4     And to be clear, at the time, what the government sought

5     essentially was a Rule 30(b)(6) deposition from PPG to

6     discuss activity on the sites that PPG acquired from NPR for

7     period leading up to PPG's occupation of the sites in 1954.

8          Is that correct, Mr. Barr?

9          MR. BARR:  Yes, it is correct.

10         THE COURT:  And the -- what I had essentially held,

11    because if I remember correctly from that hearing, PPG's

12    argument was, Judge, we know as much about what happened

13    there as the government does, and essentially that there

14    is -- the only way essentially that we would have somebody --

15    we didn't have somebody competent to testify under

16    Rule 30(b)(6), because they would essentially be looking at

17    the same discovery that the government is looking at.

18         And so what I did was I -- to some extent agreed,

19    but in trying to also -- or in recognition of the

20    government's Rule 26 discovery rights, essentially allowed

21    contention interrogatories to try to at least allow some

22    limited discovery while recognizing that PPG did not occupy

23    the site and it wasn't a situation where it was a --

24    successor corporation or a subsidiary corporation to PPG.

25         Now, Mr. Barr, what you tell me essentially is that

 1  that has been inadequate.  And it's one thing -- and this is

 2  my -- I guess my first question to you -- it is one thing to

 3  say, Judge, it's inherently inadequate and so nothing that

 4  you give us, even had PPG given us everything possible under

 5  the sun in response to those contention interrogatories, it

 6  would be inadequate.  It's a separate thing to say

 7  essentially we're dissatisfied with the response that we've

 8  gotten from PPG, and as a result we want the deposition,

 9  because I can deal with the latter, although I'm not sure

10  what else there is, but we can talk about that.  But if it's

11  the former, that is something that would seem to, then,

12  counsel in favor of reconsidering the order.

13          So -- so which is it?

14          MR. BARR:  Well, we were put in a very difficult

15  position on April 2014, because the contention

16  interrogatories had not been submitted and responded to.  So

17  we didn't know at that time.

18          It has proven to be -- at least in this case, that

19  there -- that we're doomed to failure, because we wouldn't be

20  precise enough, given the limited number of

21  interrogatories --

22          THE COURT:  Okay.

23          MR. BARR:  I beg your pardon.

24          THE COURT:  No, it's -- okay.

25          MR. BARR:  And given PPG's approach to essentially

1    respond to those contention interrogatories by making

2    arguments; in other words, restating the allegations in their

3    complaint in slightly different terms and in effect arguing

4    in their contention interrogatories and again in their

5    opposition brief that the documents support their

6    allegations.

7         What their opposition demonstrates is the need to

8    question a witness, not argue back and forth with lawyers,

9    but to question a witness who testifies on behalf of the

10   corporation, what is it in this document that you think

11   supports this allegation.  And also --

12        THE COURT:  But isn't that inevitably asking for

13   argument anyway?  Didn't --

14        MR. BARR:  I don't -- I don't believe so.  Because

15   it allows us to follow up in the deposition, the spontaneity

16   of the deposition format, to follow up with questions on

17   their responses and to show them other parts of the document

18   that they haven't quoted and to show them other documents

19   that they haven't cited and ask them what about that.

20        So what they -- what PPG has done here in their

21   opposition is make merits arguments again.  The Court's not

22   in a position and should not try to resolve the conflicts

23   between what they say the documents mean and what the

24   government says the documents mean.

25        So I think that's a -- I think I've answered

1    Your Honor's question.

2            THE COURT:  But at the end of the day -- look,

3    normally, you know, when I think of a 30(b)(6) deposition, it

4    strikes me that usually what you're looking for -- and

5    numerous courts have -- have addressed this, some good

6    examples, what is a corporation's, say, document retention

7    policy, what is a corporation's policy for dealing with

8    unproductive employees, things like that.  And so even though

9    the particular deponent doesn't necessarily have firsthand

10   knowledge about the factual matters, they are nonetheless

11   factual matters on which that person, as an appropriate

12   representative of the corporation, can be educated and

13   prepared to testify.

14           This is qualitatively different, though, because

15   you're really ask is -- what you're really asking is for PPG

16   to designate somebody to look at the -- who maybe is

17   unfamiliar as anybody else with the underlying material, to

18   look at all of those documents and be prepared essentially to

19   say -- to basically give a legal argument as to why these

20   documents, which aren't PPG's all, support PPG's position.

21           So when you say that all you got in response

22   essentially was legal argument, it's strikes me that that's

23   exactly what you would reasonably expect to get here.  I'm

24   just --

25           MR. BARR:  No, I don't think that's right,

1   Your Honor.

2            THE COURT:  Tell me why.

3            MR. BARR:  Okay.  What we're looking for are the

4   factual contentions.  What the facts mean, that's for the

5   lawyers to argue.  But the factual contentions, did something

6   happen?  Did someone do something?  That's -- those are

7   facts.

8            THE COURT:  Mm-hmm.

9            MR. BARR:  And that's what we're after.

10           And maybe the documents address an issue, but

11  counsel has characterized the documents in certain way.

12  We're trying to pierce those characterizations, trying to get

13  behind the arguments and look at the documents themselves and

14  say, what about this?

15           THE COURT:  All right.  Let me interrupt you,

16  though, because this is where sort of -- I understand that

17  argument, but where it breaks down for me is this.  It would

18  be one thing if -- if you were having a PPG representative

19  or -- have a PPG testify about what happened here in a matter

20  involving PPG and why did PPG do X?  You know, why is PPG's

21  policy X?  Or why did PPG carry out its policy of doing X in

22  this particular way in this situation?

23           That's not what you're looking for here.  What

24  you're looking for here is a PPG representative to explain

25  why this conduct on the site occurred or position was taken

1  on this site years before PPG was on the site.  In other

2  words, why did NRC -- or NPR, rather, do X on the site in 19-

3  say, 50.

4      MR. BARR:  Your Honor, if PPG had not brought these

5  allegations --

6      THE COURT:  All right --

7      MR. BARR:  -- about that time period, we wouldn't

8  be here.  But they did.  And they are in a position, they

9  must be held to account to explain the factual basis for

10  their allegations.  If they stand by those allegations today,

11  they need to -- their obligations under the discovery rules

12  fully include a witness to explain the factual basis.

13      THE COURT:  Well, yes and no.  I mean, it depends

14  on -- look, if there is a competent factual witness to

15  explain the basis, yes.  But the government here does not

16  have a right to have PPG essentially manufacture one just to

17  fill the slot in the absence of a truly competent witness.

18      Here, you have -- because -- hold on.  Let me just

19  think this through.

20      Why isn't enough enough where PPG essentially has

21  made certain allegations about pre-1954 conduct at the site?

22  Why isn't -- isn't it enough?  And as I understand, at least,

23  PPG has produced or the government otherwise has had equal

24  access to a lot of the documents that underlie those

25  allegations.  So, for example, testimony of former NPR

1  employees and other individuals from the 1980s litigation and

2  the 1990s litigation, about activities at the site and

3  related documents.  If that's what PPG is essentially relying

4  on to support its pre-1954 allegations, why isn't it simply,

5  then, a matter -- not simply, but why isn't a matter of the

6  government, for example, saying, that's not enough.  That's

7  not enough for PPG to have met its burden of proving by a

8  preponderance of the evidence that those -- that conduct

9  actually happened.

10           Instead, what you essentially want is a 30(b)(6)

11  witness to explain why as a legal matter, those materials do

12  meet the preponderance standard.  Isn't that what you're

13  looking for?

14           MR. BARR:  I don't think so, Your Honor.  A couple

15  of strands that I'd like to untangle there.  First, I'm not

16  looking for legal contentions.  We looked at the documents

17  that they've cited, and we looked at a lot of other

18  documents, and we are myself mystified as to how they believe

19  those documents they've cited support their allegations.

20  The -- the cardinal essence, the essence of Rule 30(b)(6) is

21  that I don't need a witness with firsthand knowledge, which I

22  understand that you to be expressing as a competent witness.

23  The essence of 30(b)(6) is, yes, you must manufacture a

24  witness.  You must educate a witness based on the information

25  reasonably available to the entity to provide testimony.

1           We're willing to do that in turn.  But PPG is the

2    one that started this clam bake.  So they're obligated to do

3    it as well.

4           THE COURT:  Except that the information still has

5    to be within the knowledge base of the corporation.

6           MR. BARR:  The knowledge base of the corporation is

7    defined as including, quote, other sources.  If they have the

8    information to make these contentions in their brief, in

9    their interrogatory responses, in their allegations in the

10   complaint, they have the information to respond to 30(b)(6)

11   deposition notice.

12          They -- we've cited cases which say it doesn't

13   matter whether, you know, the form of discovery that's

14   sought, they have to use the same sources of information, and

15   it's --

16          THE COURT:  What happens where --

17          MR. BARR:  The follow-up questions --

18          THE COURT:  Sorry.  What happens where it's here --

19       (Simultaneous conversation)

20          THE COURT:  -- but let's say you have the 30(b)(6)

21   deposition go forward.  What happens if the witnesses say --

22   and I don't know if this would ever happen -- the witness

23   says I looked at the documents and on the advice of the

24   lawyers, we came to the conclusion that this supports the

25   allegation.

1          And frankly, then you're going to say, well, you

2    know, what was the substance of the conversation, and they're

3    going to say, well, that's privileged.

4          MR. BARR:  Oh, well, I don't think you can do that,

5    Your Honor.

6          That -- that's an inadequate response to a 30(b)(6)

7    deposition question.  That's improper.  So I think that's the

8    long and the short of it.  If that's what happens, we'll --

9    we'll be back here.  I mean, I know this is no fun for the

10   Court.

11         THE COURT:  No, no, it's no --

12         MR. BARR:  It's no picnic for us either.

13         THE COURT:  No, no.  That's -- I'm really just

14   trying to think it through, because this has -- look, most

15   30(b)(6) -- most 30(b)(6) issues, at least as far as I know

16   are, usually the dispute isn't whether the company can

17   produce a witness to testify competently about matters within

18   the corporate knowledge.  Usually, that's not the dispute,

19   because usually the company is an actor involved in the

20   factual issues for which the discovery's being sought.  And

21   there have even been courts that have said, for example,

22   Southern District of New York dealt with this, successor

23   companies, you -- you can be required to produce a 30(b)(6)

24   for a subsidiary.  You can be required to produce a 30(b)(6)

25   for on behalf of a successor corporation, because presumably,

1  that corporate identity continues whether it's with the

2  predecessor or the subsidiary, and therefore, you can impute

3  knowledge of those matters to the corporation and therefore

4  the corporate representative under 30(b)(6).

5          This is a very different situation, though, at

6  least as I see it.  This is a situation where the parties

7  have -- and part of the inherent in 30(b)(6) as I understand

8  it too is still the recognition that the corporation has

9  either superior knowledge of the matter sought to be

10  discovered or superior access to that information.

11          This strikes me -- hold on -- I do want to hear

12  what you have to say, but hear me out first, if you will.

13          This strikes me as a little bit different.  This

14  strikes me as essentially there's a pool of information and

15  on one side of that -- and the information is, for example,

16  the depositions from the 1980s, the depositions from -- the

17  testimony from the 1990s, the documents, a lot of things that

18  you identified in your brief and on one side of that pool --

19  and it's all matters that occur before either of the parties

20  in here -- well, at least from the PPG was on the site.  And

21  both parties have that information.  So on one side is PPG

22  and on the other side is the government.  And what you take

23  from that, much like in any, say, civil or criminal matter is

24  the attorneys and the parties look at that and say, this is

25  what we can reasonably allege, this is what we can reasonably

1   argue to the finder of fact off of that.  And they either

2   accept that or they reject that.

3           What you are seeking to do, then, is essentially

4   have PPG explain why when they argue that those documents

5   support their CERCLA claims, why that provides evidence and

6   meets the legal requirements for their CERCLA claims and the

7   other claims, how they can possibly sustain that.  And

8   essentially, what you're saying is what is the basis of your

9   legal argument?

10          MR. BARR:  Well, no, we're trying to understand

11  what they see in these documents that they believe supports

12  their claims.

13          THE COURT:  Right.

14          MR. BARR:  We're not asking for their legal

15  contentions or ask them to make legal arguments or, you know,

16  resolve the ultimate issues.

17          But we need to pursue this.  And it -- this is not

18  a situation and 30(b)(6) is not limited to a situation where

19  someone has superior knowledge, I think is the phrase

20  Your Honor used.

21          PPG made these allegations.  It stands by those

22  allegations to this day.  And the -- their allegations frame

23  and our counterclaim frames the proper scope of discovery

24  under Rule 26, and at the very same time, Rule 30(b)(6).

25          So there is nothing untoward about asking PPG about

1    their factual allegations and information that they believe

2    supports it and information that we believe undermines it.

3    That's really the long and the short of it.  It has nothing

4    to do -- the cases which deal with whether a subsidiary could

5    be made to provide the information or a corporate parent

6    could obtain the information from a corporate subsidiary,

7    beyond broad principles, those cases are not apposite.

8           I think that the dearth of authority -- and we have

9    cited cases, Your Honor, that someone who makes allegations

10   or iss- -- makes denials in the pleadings, that's a proper

11   scope -- that's a proper subject for 30(b)(6) depositions.

12   And I have taken and defended many a 30(b)(6) deposition

13   which cover the gamut of issues in CERCLA litigation.

14   They're not narrowly focused depositions, by any means.

15          So we believe that this -- that denying us the

16   opportunity to question a witness on these factual issues

17   would be a grave injustice and abridging our -- the

18   government 's fundamental discovery rights.

19          I hope I've answered the Court's questions.

20          THE COURT:  You have.  No.  You have.

21          All right.  Who's going to take the lead?

22   Mr. Lagrotteria?

23          MR. LAGROTTERIA:  Yes, Your Honor.

24          THE COURT:  All right.  So how about that

25   argument -- that last argument by Mr. Barr, essentially,

1   look, the plaintiff is a master of their pleadings.  You put

2   this issue into play.  And while nobody expects the PPG

3   witness, 30(b)(6) witness to have firsthand or even

4   necessarily secondhand knowledge of the facts about the

5   pre-1954 activities at the site, it's not -- it's certainly

6   within the scope of Rule 30(b)(6) to have a corporate

7   designee explain PPG's position, even if it involves looking

8   at the very same documents that the government has looked at.

9            MR. LAGROTTERIA:  Your Honor, one thing I want to

10  make very, very clear -- and it's set forth on pages 7 to 19

11  in our brief, when the government asked us for their

12  supplemental interrogatories, Your Honor had ordered them

13  that they could have 10.  They asked us to do 12 and we say

14  fine.  They asked for Bates numbers.  They didn't even ask

15  for a narrative.  We gave them Bates numbers and a narrative.

16            And then in the brief -- and they recently -- after

17  elapse of time, had a problem with it and the deficiency of

18  those responses.

19            Then they make this motion.

20            In our brief, we set forth for you, from those

21  pages 7 to 19, specific references and narratives from the

22  documents that we relied on in answers to interrogatory.  And

23  every single one of those documents and the lion's share of

24  the pre-1954 documents are the government's documents.  Their

25  memos.  They were chemical boards, et cetera, who made this

 1   decision that chrome is a vital material for the war, that

 2   this is what we're going to do in terms of supplying chrome

 3   ore to these manufacturers.  This is how the labor's going to

 4   work.  This is how the process is going to work.  This is how

 5   this material is going to be stored.

 6             It's their documents.  So they want to -- they

 7   turn -- this is turning 30(b)(6) on its head.  They want to

 8   make us produce a 30(b)(6) witness to interpret their

 9   documents.

10             Now, Your Honor hit on it.  I mean, this is not --

11   this certainly -- this is subject to discovery and legal

12   argument and motions.

13             But what Mr. Barr didn't tell you about what his

14   various experiences and what he did in this case and we have

15   done is we've each -- each have named historic document

16   experts who look for these documents and interpret them.

17   He -- he's used these experts in other cases.

18             That's who -- that's who he can cross-examine.

19   It's like, hey, wait a minute.  You say that this 1930 --

20   1941 document about chrome from World War II says this.  But

21   what about paragraph here?  He can cross-examine the

22   witnesses like that -- the expert on that.  And that I'll do

23   the same to his witness.  And then you or whoever hears this

24   case will decide what that document means.

25             But for us to have to produce -- I've never heard

1   of this -- a corporate designee to interpret the government's

2   memos for an entity that they weren't even involved with, I

3   can't think of anything more remote, Your Honor.

4            That's -- that's the problem here.

5            I do not disagree that the adequacy of those

6   documents should be tested and what they say or don't say.

7   The question is the forum or the manner in which they're

8   tested.  I have my allegations based upon the government's

9   documents.  They have their interpretation of their

10  documents.

11           But the question is what are the proofs that go

12  along with it, that have to go along with that?  And it's not

13  a 30(b)(6) witness from a different company that had nothing

14  to do with the government when the government generated the

15  memos and did its activity at the site.

16           THE COURT:  So, wait.  So are you, though, arguing

17  a witness competency argument?  Or are you making essentially

18  a duplication or undue burden argument?

19           MR. LAGROTTERIA:  Well, Your Honor, it's all the --

20  all mixed together, because he's talking about a huge amount

21  of documents we would have to educate a witness on, again,

22  most of them government documents, that we'd have to educate

23  a witness on.  So there's not -- there's a burden element of

24  that.  There's no question about that.  And there's also

25  just -- I -- quite frankly, it's almost like what's the

 1   testimony worth?  And why should a corporation have to

 2   des- -- and be bound by that their -- their designated

 3   witness's interpretation of the government's documents from

 4   70 years ago.

 5           THE COURT:  Well, because isn't -- I think -- and I

 6   don't mean to make the government's arguments for it, though,

 7   but I think what Mr. Barr would say is because we're not

 8   looking for necessarily -- we can -- we can deduce the plain

 9   text of the documents is the plain text of the documents.

10           What we need the 30(b)(6) deposition for is the

11   factual issue of how PPG is interpreting those documents, and

12   more specifically, interpreting those documents in a manner

13   that supports their allegations.

14           MR. LAGROTTERIA:  And that is primarily a legal

15   analysis, one done by experts that Mr. Barr uses in looking

16   at documents.  And ultimately the arbiter of that is the

17   trier of fact.

18           THE COURT:  Tell me more.  I've not heard frankly

19   in the past about what historical document experts are.

20   What -- what is that?

21           MR. LAGROTTERIA:  Well, they're -- Mr. Barr has

22   used them in many cases.  I have a designated expert who has

23   done similar such testimony --

24           THE COURT:  What do they do?

25           MR. LAGROTTERIA:  They look at the historical

1   documentation and events surrounding them, and they interpret

2   what those documents mean or could mean for the trier of

3   fact.  And of course there's the different positions --

4           THE COURT:  Oh, sure, yeah.

5           MR. LAGROTTERIA:  And then the trier of fact says,

6   you know what?  I don't think the document says that, or it

7   says kind of that but it -- not really or, yeah, you're

8   right.  I think that's what the documents say.

9           THE COURT:  But if these experts -- because

10  obviously here what we're dealing with in CERCLA, not even

11  CERCLA because it wasn't CERCLA in 1954, but I guess,

12  chemical experts of some sort, is part of their expertise

13  understanding the state of the chemical industry in, say,

14  1954 or --

15          MR. LAGROTTERIA:  Well, our expert is a historic

16  person who also has a -- started a large engineering firm and

17  is well-versed in the science.

18          THE COURT:  Okay.

19          MR. LAGROTTERIA:  And I assume Mr. Barr's

20  historical witness is not just someone who's going to read

21  documents but has both historic and technical background to

22  talk about the chemical processes and, you know, the residue

23  that's at issue here, et cetera.

24          THE COURT:  Right.

25          MR. LAGROTTERIA:  Based upon, you know, the

1    historic documents.

2         So it's -- that's the way these cases go.

3         I mean -- and quite frankly, I think that

4    ultimately the -- these 30(b)(6) depositions, we have

5    produced 30(b)(6) witness and Mr. Barr and -- has talked to

6    him, has never -- had no qualms about -- with the preparation

7    of that witness for the post '54 period.  No question about

8    that.

9         But the problem here -- and I think it's a -- it's

10   at the core of this whole thing, Judge.  There are a lot of

11   issues we've briefed and -- they're -- the government boards,

12   agencies, created these documents and memos and what they

13   wanted NPR to do.  Now, they want us to testify for it --

14   the -- a corporate designee for what the government chemical

15   boards mandated NPR do.

16        I -- that's -- that's well beyond any -- any

17   30(b)(6) requirements.  It's an element of proof in the case

18   for -- you know, for sure and then we'll deal with it with

19   the appropriate manner.  And -- but, you know, there'll be

20   motion practice if it doesn't satisfy the legal standards.

21        I really -- you know, the -- it's -- I don't know

22   what else to tell you, Judge.  I mean, I've never seen a case

23   where a corporation has to testify as to not only a different

24   corporation, but the government's conduct.  And these

25   documents, by the way, Judge, were in the government's

1    archives.  These were not documents -- the government-related

2    documents I'm referring to -- these were not documents

3    sitting in PPG's doc- -- files.  These are in the national

4    archives.  We searched all over to pull these out.  They

5    were -- they were their documents.

6              THE COURT:  Okay.

7              MR. LAGROTTERIA:  Thank you.

8              THE COURT:  Mr. Barr, you want to respond?

9              MR. BARR:  Yes, there were several things there.

10              We would have a lot more documents relating to the

11    pre-'54 period, had PPG not systemically purged their files

12    shortly after CERCLA was enacted in 1980.

13              So aside from that, it's irrelevant where the

14    documents that PPG obtained came from.  The "other sources"

15    language in Rule 30(b)(6) amply covers the national archives

16    and the Library of Congress.  And the British Museum, if --

17              THE COURT:  Wait.  Tell -- I'm sorry.  Tell me that

18    again.

19              MR. BARR:  30(b)(6) has language that they have to

20    use information reasonably available to the corporation and I

21    believe the language and other sources.

22              THE COURT:  Right.

23              MR. BARR:  Now, experts.

24              THE COURT:  Yeah, go ahead, tell me.  I'm -- I had

25    not known of historical document experts before, at least in

1    the CERCLA context.

2             MR. BARR:  Well, there really isn't such a thing as

3    a historical document expert.  There are historians.  And I

4    have worked with historians.  And we have an historian in

5    this case.

6             PPG has not designated an historian.  It has no

7    competent witness to testify as to the history of the period

8    1909 to 1964 or any other period.  There -- the person I

9    think they have in mind has been precluded by a district

10   court from testifying on matters of history, and we will seek

11   to preclude that testimony here as well.

12            Now, as far as the statute goes, it's a strict

13   liability statute.

14            THE COURT:  Sure.

15            MR. BARR:  Whether they were good, bad, or

16   indifferent in -- at any time is immaterial.

17            It's also retroactive, so that CERCLA didn't have

18   to exist in 1954 or 1909, for that matter.  It exists now.

19            THE COURT:  Right.

20            MR. BARR:  And it's -- it reaches back.

21            THE COURT:  Right.

22            MR. BARR:  That was settled in the early '80s soon

23   after the enactment of CERCLA.

24            And PPG is perfectly right on one count, and that

25   is these depositions are necessary for purposes of

1    dispositive motions to understand precisely where PPG thinks

2    its evidence lies so that we can address it in our motion

3    because we think their case is baseless.  We want to explore

4    that.  We want to be sure we understand it so that when we

5    make our motion, we're not sandbagged in their opposition

6    brief.

7              THE COURT:  Okay.  Two thoughts about that, though.

8    Right?  One is if you really -- I guess I question whether

9    the deposition is going to move the needle closer to no

10   genuine issue of material fact because even if you had a -- a

11   corporate designee for PPG, it's probably a safe bet that

12   they're going to testify that particular documents mean

13   particular things in a way that supports PPG's position,

14   because it's going to be -- that person is going to be

15   reviewing the documents that they neither wrote nor received

16   nor did PPG itself write or receive in anticipation of the

17   deposition, after they've already been -- well, forget the

18   "after."  But -- but I just don't know how -- and then PPG

19   essentially -- or the government, rather, is going to

20   presumably disagree with PPG's read on the documents.  I mean

21   a lot of these documents, at least from what I've seen -- and

22   obviously, I haven't really gone through the documents at

23   all.  But from what -- from what little I've seen, the

24   documents aren't necessarily often that subjective.  They are

25   contemporaneously created notes, notices, and memos --

1          MR. BARR:  They're also out of context.

2          THE COURT:  Pardon?

3          MR. BARR:  They're also out of context.

4          THE COURT:  Well, yeah, but, it -- the context

5    itself, though, may be the subject of considerable dispute.

6          My point is, is the deposition really likely to

7    move the needle closer to dispelling any genuine issue of

8    material fact?  Or is it just going to be basically be a

9    reiteration of the parties' varied positions based on the

10   discovery that was exchanged years ago?

11         MR. BARR:  No, it will absolutely move the needle,

12   and here's why.  On motions, there are page limits, there are

13   time pressures.  With a deposition, there is a -- a period

14   where you have adequate time to prepare, which we'll get to

15   in a moment.  And there's an opportunity to follow up.

16         Now, if what we're going to get from the witness is

17   counsel's more detailed arguments, we'd like to know that

18   now.  It enables us to file a better motion.  And it -- it

19   prevents PPG from continuing to dance around and, you know,

20   make arguments that aren't rooted in the substance of the

21   documents themselves.

22         THE COURT:  I have to tell you, I can't help wonder

23   as I listen to this, essentially if you could reduce all of

24   your questions to this PPG designee down to one, it would

25   essentially be, Why don't you agree with our reading of the

 1    documents?  Isn't that -- I mean --

 2            MR. BARR:  Well, I would never do that.

 3            THE COURT:  No, no, you wouldn't, but at sum,

 4    that's what it -- it strikes me that that is sort of the -- I

 5    can't help but wonder if that's really, at bottom, the

 6    purpose of the deposition.  I mean --

 7            MR. BARR:  I'm sorry, I can't agree with that.

 8    Because it's not a single question.  It's a meticulous.  It's

 9    a detailed analysis of the documents that they cite as well

10    as documents that they ignore.

11            THE COURT:  But -- to you want to ask, for

12    example -- look, I could understand this -- this line of

13    questioning, particularly the documents you ignored, you

14    know, so-and-so you considered this, and you reached this

15    conclusion, but you didn't consider X, Y, and Z.  If we were

16    talking about an expert, if -- if you were talking about

17    PPG's liability expert on CERCLA, that's plainly relevant.

18            But -- you --

19            MR. BARR:  There's -- there's --

20            THE COURT:  -- essentially want the 30(b)(6)

21    designee to almost stand in the shoes of a liability expert

22    and say, PPG's position is this, is it not?  And PPG didn't

23    consider this, did it?

24            I just -- I struggle to understand how that's

25    workable here.

|Hearing
|12-cv-03526, January 7, 2016

1          MR. BARR:  Well, maybe this will help.   Experts are

2   not put in the witness chair to provide legal opinions.

3   That's for the lawyers to argue.   That's the judge's job.

4          THE COURT:  Right.

5          MR. BARR:  Pardon me.

6          It is kicking this can down the road until the

7   experts testify a year from now or so, or more, that's not

8   the answer.   These are factual contentions.   They should have

9   a factual witness.   They made these al- -- factual

10   allegations.   And I'll let them explain them based upon the

11   documents that they cited and explain them in light of the

12   documents that they've ignored.

13          THE COURT:  You're talking about contentions that

14   were made in the pleadings, or contentions that were made in

15   their answers to interrogatories?   Because obviously, you're

16   to -- if you haven't already, you want to -- you're going to

17   depose the person who answered or persons who answered the

18   interrogatories.

19          MR. BARR:  There was no signatory to the

20   interrogatory answers.   Maybe Mr. Terrell [phonetic] did.   If

21   so, then he's been their go -to designee, and we continue our

22   conversation with him.

23          Presumably, his understanding of the documents

24   would be, you know, for those purposes.   He'd be able to look

25   at those documents again for these purposes.

Hearing
12-cv-03526, January 7, 2016

1        THE COURT:  Okay.  Who's Mr. Terrell?

2        MR. BARR:  He's -- he was designated by PPG.  He

3    was the witness back in April of 2015, testifying on the

4    post-1954 --

5        THE COURT:  Okay.

6        MR. BARR:  -- time period on some of the subject

7    matters.  And we are scheduled to -- to question him again on

8    additional subject matters next week.

9        THE COURT:  Okay.  All right.

10       All right.  Anything else on this -- I want to --

11       MR. BARR:  Yes.

12       THE COURT:  Go ahead.

13       MR. BARR:  The Court's disposition on this matter

14   is going to have a profound impact on the case schedule,

15   regardless of which way the Court rules.  If the Court were

16   to grant our motion, we'd need more time to prepare.

17       THE COURT:  Sure.

18       MR. BARR:  As to the pre-'55 time period.

19       If the Court denies our motion, we've made no

20   secret of the fact that we are going to need to have Judge

21   Arleo look this over.  And we say that with all respect.

22       THE COURT:  Absolutely.  I don't -- I completely

23   understand.

24       MR. BARR:  So one way or the other, we're going to

25   need to address scheduling issues.

|Hearing
|12-cv-03526, January 7, 2016

 1              THE COURT:  All right.  Okay.  Fair enough.

 2              MR. LAGROTTERIA:  I just have one other point,

 3  Your Honor.

 4              THE COURT:  Go ahead.

 5              MR. LAGROTTERIA:  Mr. Barr mentioned the historical

 6  context of these documents.  Am I supposed to educate a 30(b)

 7  C -- 30(b)(6) PPG witness on the historical aspects of this,

 8  in addition to the documents themselves that the government

 9  drafted?  That just is -- further explains the problem.

10              That's all I have.

11              THE COURT:  All right.  I'm going to take that

12  under advisement, but I can tell you that we're going to get

13  a resolution out on that within a week.  I just want to look

14  at it a little bit more and -- okay.

15              And I still have the insurance agreements in front

16  of me that I need to -- by the way, there were eight.  Right?

17              MR. BARR:  That's correct, Your Honor.

18              THE COURT:  Okay.  Not eleven.  Eight.

19              Okay.  Okay.  What else do we need to talk about?

20  There were a couple of potential issues on which the parties

21  said, well, this may become an issue later, but I'll be

22  honest with you, here's my concern.  We've got to get past

23  the point with we're still reserving the right to raise

24  issues later.  And I think both sides agree with that.

25  You're certainly both nodding your heads.  So if there are

Hearing
12-cv-03526, January 7, 2016

1   still issues, what I would offer is -- so there's -- right

2   now, there's two issues out there.  Obviously, the one that

3   we just -- the parties' just argued.  And then there's the

4   insurance agreements.  Is there anything else that we need to

5   address?

6           Let me start with the plaintiff.

7           MR. LAGROTTERIA:  Well, there's the issue of the

8   30(b)(6) -- amended 30(b)(6) notice that PPG served on the

9   government.  We were here, I guess it was in August -- and

10  had a meet-and-confer, and we thought we had an agreement of

11  Mr. Husik and I, we met with Mr. Barr, on what his objections

12  were to our 30(b)(6) notice.  But when we did amend it, I

13  guess there was not a meeting of the minds.  Mr. Barr had

14  some additional or reiterated objections.

15          And they're set forth in our letter, but there's --

16  there's -- I mean, he objects to the use of terms like World

17  War I period, World War II period or if we -- the documents

18  suggest that there was some work that was done on the chrome

19  allocation prior to the commencement of World War II, for

20  example, and after the years that we -- we know to be World

21  War II.  He's refused to produce a witness -- or -- I'm

22  sorry -- produced -- refused to prepare a witness, even, for

23  a 30(b)(6) deposition on those time frames.

24          MR. BARR:  That's not true, Your Honor.

25          MR. LAGROTTERIA:  Well, what -- what is your

1  position on the World War II period, for example?

2  MR. BARR:  Our 30(b)(6) witness will explain her

3  understanding of the beginning and end of World War II, as

4  commonly understood.

5  And the Korean war, they're --

6  THE COURT:  We're talking about the activities at

7  the site, just like how, for example, World War II ended --

8  MR. LAGROTTERIA:  No, no, the activities at the

9  site during this time frame.

10  THE COURT:  Oh, okay.

11  MR. BARR:  I'm sorry.  I'm sorry, Judge, I wasn't

12  clear.

13  THE COURT:  Well, I've kind of read a book or two

14  about that, myself --

15  (Simultaneous conversation)

16  MR. BARR:  So, no, we haven't refused to provide a

17  witness.

18  THE COURT:  This sounds to me like a very ripe

19  opportunity for the parties to meet and confer on that.

20  MR. LAGROTTERIA:  Ms. Laguzza may --

21  THE COURT:  Go ahead, Ms. Laguzza.

22  MS. LAGUZZA:  Mr. Husik and I were on the

23  meet-and-confer with the government.  On November 17th, I

24  believe.  Is that --

25  MR. HUSIK:  It's more recent.

1          THE COURT:  Thereabouts.  Go ahead.

2          MS. LAGUZZA:  In which our amended 30(b)(6) notice

3   set forth specific time frames that we would be asking the

4   witness questions about.  Those time frames abridge the World

5   War I era, World War II era and the Korean War era.  So they

6   were a little bit more expanded than the actual --

7          MR. LAGROTTERIA:  -- the bomb.

8          MS. LAGUZZA:  The first bomb to the last gunshot

9   for --

10          THE COURT:  Of World War -- okay.

11          MS. LAGUZZA:  -- of World War I and World War II.

12          THE COURT:  Or World War II.

13          MS. LAGUZZA:  And the Korean War, Cold War era.

14          Mr. Barr explained on that phone call that he was

15   not going to prepare a witness for the years that we defined

16   that we were going to ask about.

17          THE COURT:  Wait.  So sounds like he's certainly

18   going to -- there's no dispute he's going to prepare a

19   witness who's at least some of those years.  No?

20          MR. BARR:  Yes, Your Honor, that is true.

21          THE COURT:  Right.  That's what I thought, so --

22          MR. BARR:  And -- and we simply -- our notice to

23   the plaintiff was simply to let them know that we don't

24   accept their definitions of certain time periods.

25          THE COURT:  Of what?  When the wars occurred?

1           MR. BARR:  Exactly.  And they could have looked

2    up -- and does anybody use any the Encyclopedia Britannica

3    anymore?  They could have looked up when --

4           THE COURT:  I think it's -- that's also online.

5           MR. BARR:  You know, they could have looked up when

6    Nazi Germany invaded Poland.

7           THE COURT:  September 1, 1939.

8           So -- okay.

9           MR. BARR:  But they didn't do that.

10          THE COURT:  It doesn't -- this is not a fight.  I

11   mean --

12          MS. LAGUZZA:  No, it's not, but -- but he's

13   mischaracterizing what he said on the phone.

14          THE COURT:  I understand.  Here's what I see.  I

15   see a clarifying of positions by all lawyers trying to act in

16   good faith, and rather than waste time on what was a simply

17   misunderstanding, now that we have some degree of clarity,

18   what we're talking about essentially -- are we literally

19   talking from the assassination of Archduke Ferdinand to the

20   withdrawal of troops in -- out of -- out of Korea, or --

21          MS. LAGUZZA:  And a little bit before and a little

22   bit after.

23          THE COURT:  So what, say, 1912 when there was a

24   tension between the -- wasn't it the Queen of Spain and the

25   Russian Czar?  I -- we could go days.  We could get Ken

 1    Follett novels, whatever it takes, but I'm sure we could --

 2          (Simultaneous conversation) --

 3          MR. BARR:  And if they want to ask our witness

 4    questions that are contrary to historical fact, they -- the

 5    witness will address them.

 6          THE COURT:  But essentially what we're looking at

 7    is World War I, World War II, Korean War activities at the

 8    site.

 9          MS. LAGUZZA:  Correct.

10          MR. LAGROTTERIA:  Correct.

11          THE COURT:  Okay.  I don't -- I think we're good

12    there.  Right?  Right?

13          MR. BARR:  Sounds good.

14          THE COURT:  Even if it's a little pre-World War --

15    you know, so the run-up before --

16          MR. LAGROTTERIA:  Well, that was his objection, the

17    run-up before and -- after.

18          MR. HUSIK:  Winding down.

19          MR. LAGROTTERIA:  Winding down.

20          MR. BARR:  Well, we don't know what they mean when

21    they say run-up --

22          THE COURT:  Is your concern --

23          MR. BARR:  But the years they gave us bear no

24    relation to the general understanding.

25          THE COURT:  Okay.  I think I see what the -- the

1   concern is, if I understand correctly, you don't want your

2   folks -- your witness to be sitting there prepared to talk

3   about August whatever it was, 1914, and they ask -- PPG asks

4   a question about 1913.

5           Is that it?

6           MR. BARR:  Exactly.

7           THE COURT:  Okay.

8           Number one, in the scheme of things, given the time

9   frame we're talking about, that's relatively small potatoes.

10          Number two, that could be clarified by

11  essentially -- giving him a heads-up not necessarily the

12  exact question, but what the time frame is.  So if your --

13          MS. LAGUZZA:  We gave him that, Your Honor.

14          THE COURT:  Okay.  So here's the --

15          MS. LAGUZZA:  We gave him the time frame that we

16  would be asking about.

17          THE COURT:  -- here's what we're going to do.  Hold

18  on.

19          Here's what we're going to do, so -- because we

20  don't need to fight about this, we are so close to resolving

21  this.

22          Can we give instead of approximately the beginning

23  of World War II, can we give approximately 1912, for example?

24          MS. LAGUZZA:  We did, Your Honor, in our notice.

25          THE COURT:  Oh, okay.  And they said what

Hearing
12-cv-03526, January 7, 2016

1    equivalent --

2        (Simultaneous conversation)

3            THE COURT:  Let's just use dates.

4        (Simultaneous conversation)

5            THE COURT:  Okay.

6            MR. BARR:  What -- what we said was those -- that

7    define- -- that definitions were not correct.

8            World War I, I don't think we had a problem with.

9            THE COURT:  World War II?

10           MR. BARR:  It was --

11           THE COURT:  I thought that was even easier, from a

12   date standpoint.  But maybe I'm wrong.

13           MR. BARR:  It was World War II that they greatly

14   expanded.

15           And then they had this concoction call Korean War

16   slash Cold War.

17           THE COURT:  I can -- we'll just use dates.  We

18   don't need to assign definitions to them.  Just use dates.

19           Okay.  What else?

20           MR. BARR:  Okay.  Your Honor, we have --

21   November 23d was the date on which all the documents were to

22   be produced by the parties.

23           THE COURT:  Right.  Subject to the insurance

24   agreements issue that I have to resolve.

25           MR. BARR:  Right.  And subject to PPG's advice that

1   there were a few documents that were going to be late.

2            THE COURT:  Right.

3            MR. BARR:  And we said -- and they indicated that

4   the documents would be a week or two late.  And we said, we

5   don't see a problem with that.

6            It turns out as of a couple of days ago, we're

7   told, well, we've got some more documents that we would be

8   producing on a response action and response cost

9   documentation issues.  We don't know how much is coming.  We

10  don't know when they're going to be delivered to us.

11           What we do know is that between November 11th and

12  December 8th, they produced 171,000 additional pages of

13  documents.

14           THE COURT:  Uh-huh.

15           MR. BARR:  And I'll be honest with you.  We haven't

16  absorbed or even gone through all of those documents.  And

17  now we find out there's more coming.

18           THE COURT:  Right.

19           MR. BARR:  So that's -- that's another thing.

20           We have another dispute, and I need to explore this

21  with PPG, the invoices and the records of payments that they

22  produced as far as the cost documentation is concerned, are

23  replete with hundreds of different --

24           THE COURT:  Okay.  Sorry, go ahead.

25           MR. BARR:  These documents are replete with

1    hundreds of different cost center numbers, account codes,

2    acronyms, account numbers.  There are just hundreds of them.

3            We've asked PPG is there some --

4            THE COURT:  Code or index?

5            MR. BARR:  Index or key or explanative reference

6    document.

7            THE COURT:  Yeah.

8            MR. BARR:  And they say there is no such thing.

9            Apparently, all these codes and --

10           THE COURT:  But these are PPG documents.

11           MR. BARR:  Right.  All these codes and acronyms are

12   somehow in the PPG collective consciousness.

13           THE COURT:  Uh-huh.

14           MR. BARR:  I don't think so.  That's a dubious

15   claim.

16           Now, that is -- in addition to that, we have the

17   contractors, and there are dozens of response action

18   contractors that PPG has hired --

19           THE COURT:  Over the years or?

20           MR. BARR:  -- within -- within the period that they

21   appear to be claiming costs.

22           THE COURT:  Okay.

23           MR. BARR:  They have their own code -- project code

24   numbers.  They have their own shorthand notations.

25           THE COURT:  Which is probably, we're thinking --

1    you're thinking, different than the codes in the records that

2    you were just describing.

3              MR. BARR:  We need to somehow correlate them.

4              The reason that this is important is not all of the

5    sites that are described on these documents are sites that

6    are relevant in this litigation.  PPG is responsible for many

7    more sites than is implicated in this lawsuit.

8              And second, a lot of the documents appear to relate

9    to different kinds of contaminants, contaminants other than

10   chromium.  We need to be able to understand what actions

11   relate to chromium and what relate to chlorinated solvents.

12             THE COURT:  Right.

13             MR. BARR:  Which relate to asbestos, et cetera,

14   et cetera.  And we also need these codes to help us

15   understand -- were various response actions necessary and

16   consistent with what's known as the national contingency

17   plan.

18             THE COURT:  Yup.

19             MR. BARR:  They said, well, you can ask the

20   witness.  It is going to take a long time.

21             So we're going to need to go back to them and I'm

22   willing to do this, but we will need to talk about what can

23   we get our hands on before the deposition, which might

24   shorten the deposition or make it more efficient.

25             THE COURT:  And you're talking specifically, again,

1   for example, the codes to understand the documents you're

2   looking at.

3           MR. BARR:  Right.

4           Now, beyond that, let me just kick off the other

5   categories of cost documentation I still -- I think we're

6   still wrestling with, just to make a record of it and don't

7   expect the Court to be able to resolve the issues.  We're

8   still disputing with PPG production of past forecasts

9   regarding cleanup costs versus the actuals over the period

10  that they're claiming.

11          The -- we've asked for future cost estimates and

12  projections that exist.  They've said, well, expert

13  testimony.

14          Maybe.  But to the extent that these estimates and

15  projections have been made in the past, they should be

16  produced.  It's within the --

17          THE COURT:  I'm sorry, made to who, though?

18          MR. BARR:  Provided to PPG.

19          THE COURT:  But their own consultants?

20          MR. BARR:  Either within the company or by their

21  consultants, yes.

22          THE COURT:  Okay.

23          MR. BARR:  Just -- just the way their response

24  action reports and plans have been submitted by their

25  consultants and have been produced by PPG.

1            In the joint letter, there were four categories of

2   documents that were indicated that PPG --

3            THE COURT:  This is, like, Fourth of July

4   fireworks, you know how the Fourth of July, the firework goes

5   off and then it explodes, and then there's like four things

6   that shoot off of that and then four things that shoot off of

7   that?

8            That's what paper discovery in this case has been

9   like.  Hasn't it?

10           MR. BARR:  No, not really.

11           THE COURT:  No?  Well, it sure seems it in terms of

12  issues.

13           MR. BARR:  I can understand --

14           THE COURT:  Go ahead.

15           MR. BARR:  The impression.

16           They agreed to provide four categories, and we

17  enumerated those.  It's not clear that they've provided three

18  of the four.  And it's clear, as of a couple of days ago that

19  they have not provided the fourth kind, the fourth group.

20           THE COURT:  So they basically have gone three for

21  four on those four.  That they're --

22           MR. BARR:  Maybe.

23           THE COURT:  Okay.  At best, your position is

24  they've gone three for four.

25           MR. BARR:  Now, we need to clarify with them, and

1    that's something we will do.

2              THE COURT:  Okay.

3              MR. BARR:  But I just wanted to flag that for

4    Your Honor as something that's still within the -- our --

5    it's in our court.

6              THE COURT:  Okay.

7              MR. BARR:  No pun intended.

8              So these continuing issues, document production

9    issues, require -- it's another reason for revisiting the

10   case pretrial schedule.

11             THE COURT:  Fair enough.

12             MR. BARR:  It maybe that we provide Your Honor with

13   a joint submission as to a revised schedule, and I think one

14   of those deadlines would be a new document production

15   deadline, one that's not regarded as a mere suggestion.

16             THE COURT:  All right.  Let me turn to -- let's

17   talk about the codes first because -- look, you folks --

18   these are going to be long depositions if the government

19   reasonably can't look at the documents and understand what

20   the codes mean because they're going to have to get that

21   information.  What can we do about that?  Could we -- can you

22   folks come up with a key?

23             MR. HUSIK:  We're all for streamlining.  After the

24   issue came up in the fall --

25             THE COURT:  Yeah.

1          MR. HUSIK:  -- we -- the 17th, we went to PPG and

2   we asked them, what do you have?  Do you have anything like

3   this?

4          They gave us a handful -- not a lot, but a handful

5   of documents that do serve to translate -- I'm not an

6   accountant, I can't explain it, our witness can, but

7   translate codes from one account to another.  Their financial

8   systems changed over the years --

9          THE COURT:  Right.

10          MR. HUSIK:  -- things like that are going to have

11   to be explained by the witness because they've changed their

12   databases over the years.

13          To put it in context, we have produced --

14          THE COURT:  No, that, I understand.  But, look,

15   don't you agree if -- it's one thing -- it's one thing if the

16   government goes into the deposition understanding what the

17   codes are or at least what the acronyms mean and wants to

18   understand why certain things changed.  And that's one thing.

19          But if they've got to go in and go what does this

20   code stand for, what does this acronym stand for and then,

21   oh, so that is sort of like this, but why did it change, that

22   deposition is going to be several times longer.

23          MR. HUSIK:  Maybe I could suggest this as a

24   practical suggestion.  What we explained to Mr. Barr, the

25   document you want --

1              THE COURT:  Yeah.

2         (Simultaneous conversation)

3              MR. HUSIK:  -- that doesn't exist, and we don't

4    have an obligation to produce voluminous listing of this.

5              He hasn't told us --

6              THE COURT:  Yes, you do.  You think -- I

7    respectfully, I disagree.  I think you probably do have an

8    obligation in one of two forms: either, one, as a practical

9    matter to produce it, or, two, to avoid doing a 30(b)(6)

10   deposition just on this issue, because that is an issue where

11   knowledge could reasonably imputed -- be imputed to a

12   30(b)(6) representative of PPG.  That's squarely within PPG's

13   wheelhouse.

14             MR. HUSIK:  To be able to do that, we need one

15   thing, though.  We need him to articulate to us, not every

16   single code, but what categories, what issues he has.  We've

17   produced approximately over 200,000-pages-plus documents,

18   invoices, proof of payments, general ledger sheets, extracts

19   from the accounting system.  We can't guess as to what codes

20   he has an issue with.  If it'll streamline depositions and

21   it's a reasonable request, I don't think we have an issue

22   with talking to PPG and --

23             THE COURT:  But is there a way that he can

24   intelligently do that?

25             MR. HUSIK:  Well --

1          THE COURT:  How does he know, for example -- if he

2    doesn't know what the code is or what the code stands for,

3    how does he know to ask you to know that that's significantly

4    important to warrant further explanation.

5          MR. HUSIK:  That's fair enough, if that'll save

6    hours of deposition, why not?  We're not opposed to that.  If

7    he gives us a listing of what he needs explanations on.

8          THE COURT:  No, no, but you -- my question is is it

9    reasonable to expect that he's going to be able to do that

10   and -- look, there's probably some subset you can look at and

11   figure out sort of intuitively, yeah, I need this.

12          That's not the question.

13          The question is when he sort of eliminates and says

14   that's not important, how does he know, if he doesn't know

15   what the codes are, that those aren't, in fact, important.

16          MR. HUSIK:  It's a fair point.  How can he frame a

17   question if he doesn't know what --

18          THE COURT:  Yeah.

19          MR. HUSIK:  That's fine.

20          But we still need to know what categories of

21   documents the issue is in.  Is it in the general ledger?  Is

22   it in the invoices?  Is it in the Ariba system that things

23   are pulled out from?  We'd be scratching our heads saying --

24          THE COURT:  Is there a way that can be narrowed

25   down that way?

1              MR. BARR:  The answer is all of the above.  I

2      didn't create their accounting system.  This is what we have

3      to live with and so do they.

4              THE COURT:  How many -- roughly how many pages of

5      documents are we talking about?

6              MR. BARR:  The cost accounting documents alone, we

7      estimate to be at least double of what Mr. Husik has, 400,

8      maybe 500,000 documents, which are approaching a million

9      pages at this point.

10             MR. HUSIK:  In total.

11             THE COURT:  Okay.  Maybe a better question is do we

12     have any idea how many different codes?

13             MR. BARR:  I think all together there are hundreds

14     of codes, and I'm using that term generically.

15             Now, hundreds doesn't seem to me to be awfully

16     onerous.

17             THE COURT:  I have no idea, maybe it is.  Maybe it

18     is, I don't know.

19             MR. BARR:  Given the stakes in this case.  But

20     someone -- I mean, people must know which codes to use.  They

21     must know which ones to type in --

22             THE COURT:  Well, if -- but here's the problem.

23             MR. BARR:  So --

24             THE COURT:  The fact that they know which codes to

25     use today doesn't necessarily bear any rational relationship

1    to the codes they used 20 or 30 years ago.

2              MR. BARR:  Well, we're not going back that far.

3              THE COURT:  We're not?

4              MR. HUSIK:  Seven years ago, it's changed.

5              MR. BARR:  They --

6              THE COURT:  Wait, how far back are we going in

7    total?

8              MR. BARR:  The documents that they've given us, as

9    we understand their claims, go back to 2004.

10             Now, if they're telling us they want a cost before

11   that, well, then we -- that's a different -- that's a horse

12   of a different color.

13             But we're talking about the codes and acronyms and

14   numbers that were -- that have been used over the last 11

15   years or so.  Somebody's got to know that.  It has got to be

16   recorded somewhere.  It's hard for me to conceive that

17   everyone simply knows these things.

18             THE COURT:  But they don't.  I mean, not

19   necessarily.  Why does --

20             MR. BARR:  Because they're recording them in the

21   invoices and the records of payment.

22             THE COURT:  I understand.  But -- okay.  Look,

23   though -- okay.

24

25             MR. HUSIK:  Can I just add one more data point,

|Hearing
|12-cv-03526, January 7, 2016

```
 1   Your Honor.
 2            THE COURT:  Hold on, though, before you -- you do,
 3   let me just ask, do we know whether the people creating, for
 4   example, the invoices, is it over this, say, 11 years, is it
 5   a small group of people, is it the same two or three people
 6   who are creating?  No?
 7            MR. LAGROTTERIA:  That's part of the issue.
 8            THE COURT:  It's always different people?
 9            MS. LAGUZZA:  Well, obviously, Your Honor, the
10   people creating the invoice are PPG's contractors.  They're
11   not PPG people.
12            THE COURT:  All right.
13            MS. LAGUZZA:  They're, you know, PPG contractors
14   that are --
15            THE COURT:  How big is the population of PPG
16   contractors?  These are all remediation contractors, I
17   assume.
18            MS. LAGUZZA:  Correct.  Environmental consultants,
19   remediation contractors.
20            MR. LAGROTTERIA:  Demolition contractors too,
21   building --
22            MS. LAGUZZA:  Managers, demolition contractors,
23   people on the --
24            THE COURT:  Does -- has anybody reached out to see
25   whether these are industrywide codes are ...
```

1          MS. LAGUZZA:  Well, I think some of the questions

2     Mr. Barr had questions on were, for instance, related to

3     generator ID number.  PPG applied for a hazardous waste

4     permit.  They were assigned an EPA "generator" number.  I

5     think some of that -- those types of things are intuitive on

6     the invoices.  I don't think somebody needs to explain what

7     they mean.

8          In terms of the general ledger accounts, I can see

9     how that could be confusing to look at.  It was confusing for

10    me to look at.

11         But, again, as Mr. Husik represented, we were told

12    that there is no such thing -- you know, there is no rote

13    Rosetta stone.  But to the extent that we can get those codes

14    explained on the general ledger itself, I think that itself

15    would be amenable task, at least at first --

16         THE COURT:  Yeah.

17         MS. LAGUZZA:  -- to see if perhaps where that gets

18    us and then go from there.

19         THE COURT:  Do you have any idea how long that will

20    take?

21         MS. LAGUZZA:  I can't imagine it would be that

22    long, depending on --

23         THE COURT:  What do you think about that, Mr. Barr?

24         MS. LAGUZZA:  -- the person's schedule.

25         THE COURT:  At least -- look, I want to at least

1   get this process started.

2           MR. BARR:  Right.  There are -- our estimate is

3   there are couple of dozen contractors, consultants.  I

4   haven't seen a commonality in their project codes, that you

5   choose a different set within PPG and even among some of

6   their consultants, they refer to different cost centers.

7   There are account codes --

8           THE COURT:  Sorry.  Before we go any further, what

9   is a cost center?

10          MR. BARR:  It's apparently where they cumulate the

11  costs that come in on the invoices and the credits that are

12  applied against those and the payments that are made of those

13  invoices.  It's a way of keeping track of money, and, you

14  know, money or -- you know, payables and --

15          THE COURT:  Okay.

16          MR. BARR:  And paid.

17          THE COURT:  Okay.

18          MR. BARR:  Now, I'm not an accountant either.  So

19  an accountant might blanch at my explanation, but that's my

20  best guess.

21          THE COURT:  Sure.

22          MR. BARR:  There are a number of different terms,

23  and we have identified them for PPG.  We can get their best

24  effort, it would certainly shorten the deposition.  And I

25  think it would be a big help.

1           THE COURT:  All right.  So --

2           MR. LAGROTTERIA:  Your Honor, we'll -- we can start

3    that process.

4           THE COURT:  Yeah, so what I'm hearing basically

5    from Mr. Barr are three categories: one, general ledger

6    entries; two, contractors' project codes; two [*sic*], term

7    that you previously identified for PPG.

8           MR. BARR:  That's more or less -- yes.

9           THE COURT:  All right.  All right.  I can't ask for

10   more than that, at least at this point.  And then we'll have

11   to -- I hate to do it, we'll have to revisit the issue, if

12   necessary.

13          MS. LAGUZZA:  Okay.

14          THE COURT:  Because, look, the facts will answer

15   what will essentially be PPG's going to come up with answers

16   for all of these, but that's just not realistic and it may

17   not be necessary.  If ultimately it is, it is.  But we

18   want -- I want to make sure if it is, then.

19          MR. BARR:  And I can identify -- I can send PPG a

20   list of what we understand to be the primary contractors.

21          THE COURT:  All to the better.  Terrific.

22          All right.

23          MR. LAGROTTERIA:  Projections, Judge, could I

24   address that issue?

25          THE COURT:  Yeah, please.

1          MR. LAGROTTERIA:  Only for the record, Mr. Barr

2    mentioned, I just want to explain.

3          THE COURT:  These are the -- cost projections?

4          MR. LAGROTTERIA:  And even the past --

5          THE COURT:  Oh, the past cleanup costs, yeah.

6          MR. LAGROTTERIA:  -- sort of, you know, the

7    projections versus actual costs.

8          THE COURT:  Yeah.

9          MR. LAGROTTERIA:  This is an ongoing process, as

10   you Your Honor is aware of.

11         But what happens is the following -- and this has

12   happened many times, there's an 80,000 square foot warehouse.

13   There's chrome underneath the subflooring.  So PPG has

14   contractors go in and based upon -- technical rights does

15   certain borings and gets a feel for where the chrome likely

16   exists under the flooring.  Right?

17         THE COURT:  Oh.

18         MR. LAGROTTERIA:  Then there's some

19   back-of-the-envelope, look, there's probably 120,000 tons of

20   soil under there.  That's based on these 30- or 50 --

21   sometimes 50-feet-spaced-out borings over an

22   85,000-square-foot warehouse.

23         So what happens, then, is the warehouse is knocked

24   down -- and you can see where I'm heading with this.  You

25   take the soil out and, guess what?  There was only 10,000

1    tons or there was 300,000 tons.

2              THE COURT:  Right.

3              MR. LAGROTTERIA:  So my point is this.  It's kind

4    of like a -- this case is about an allocation percentages,

5    and -- although Mr. Barr says it's baseless assuming there

6    was an allocation to the government, the costs are for what

7    actually are incurred.  So if -- and our engineers -- and

8    then the government can do the same thing, guesstimated that

9    it should be a hundred thousand tons under this building --

10             THE COURT:  Right.

11             MR. LAGROTTERIA:  -- based upon an investigation,

12   it turns out to be 200,000 tons actual cost, what difference

13   does it make that someone said, well, maybe a hundred

14   thousand tons.  And there's -- I mean, that's the future cost

15   issue.

16             Again, since you are stating it for the record --

17             THE COURT:  Yeah.

18             MR. LAGROTTERIA:  -- and I'm trying to work this

19   out with Mr. Barr, but that's -- that's the kind of the thing

20   we're talking about with this -- these estimates versus what

21   was actually incurred.

22             THE COURT:  What about -- that -- all right.

23   That's production of past cleanup cost estimates.  Same for

24   the future cost --

25             MR. LAGROTTERIA:  Same thing.  Yeah, same thing, we

|Hearing
|12-cv-03526, January 7, 2016

1   can -- you know -- we have a building out there today, for

2   example, and there's, you know, 150 samples in the flooring,

3   there's a guesstimate of what exists under the -- the

4   building hasn't been demolished yet.  You've got to get --

5   then -- then you go -- actually do the excavation, and try --

6           THE COURT:  Right.

7           MR. LAGROTTERIA:  -- and find out how much tonnage

8   is actually there.

9           So what's -- what's the value of producing any

10  information regarding projected costs until you know what the

11  actual costs are.

12          And this is a case about percentage allocation for

13  actual costs.  That, again, that's for the record, I mean,

14  Mr. Barr's --

15          THE COURT:  I'm just curious, before we get to

16  the -- before -- if, purely hypothetically, because it's the

17  first I'm really thinking on the issue, but certainly not

18  going to make any rulings today while the parties are

19  continuing to meet and confer, but if hypothetically, PPG

20  were to produce these, are we talking about a hundred

21  documents?  Are we talking about a thousand documents?  Other

22  than basically what you're saying is relevance, what's the --

23  what's PPG's objection?

24          MR. LAGROTTERIA:  I don't know offhand, Judge.

25          THE COURT:  All right.

1            MR. LAGROTTERIA:  I apologize.  I can't answer the

2   question, but I suspect that there's -- there could be very

3   little, or it could be a lot, but I mean, there could be all

4   kinds of -- you know, yeah, I think that this building's

5   going to have a hundred thousand tons under it.  But it

6   would -- it doesn't matter.

7            THE COURT:  All right.  What you're saying --

8        (Simultaneous conversation)

9            MR. LAGROTTERIA:  What matters is --

10        (Simultaneous conversation)

11            THE COURT:  -- you're basically making a

12   relevance --

13        (Simultaneous conversation)

14            MR. LAGROTTERIA:  -- was there, once they did

15   the -- the remediation.

16            THE COURT:  Right.  But you're not making a

17   privilege argument.

18            MR. LAGROTTERIA:  Well, I don't know --

19            THE COURT:  You'd be hard-pressed to make a

20   privilege argument.

21            MR. LAGROTTERIA:  No, Judge, I'm -- I can't -- I'm

22   not educated enough to know how to make that argument.  I

23   just want to talk conceptually, Mr. Barr raised the issue.

24   But I wanted to tell you, explain to you conceptually.

25            THE COURT:  I understand.

1           MR. LAGROTTERIA:   -- the issue.  That's --

2           MR. BARR:  The only thing I would say is we don't

3    know what's in these documents, is Lagrotteria calls them

4    guesstimates.  My guess is that they're paying for a lot more

5    than guesstimates.

6           THE COURT:  Yeah, but that doesn't answer the

7    question --

8        (Simultaneous conversation)

9           THE COURT:  -- why is it relevant?

10          MR. BARR:  Well, the reason it is relevant is --

11          THE COURT:  It's -- you've got to do better than we

12   don't know that it's not relevant.

13          MR. BARR:  We don't know.  I can envision and I

14   have seen documents which lay out the bases, the assumptions

15   that are being made for the projections.  If all the

16   estimates -- I mean all the projections -- excuse me --

17          THE COURT:  The bases.

18          MR. BARR:  If all the bases and assumptions are

19   still valid, then something's happened with the costs and

20   that needs to be explored.  There's an element of CERCLA

21   recovery under the NCP called reasonableness.

22          THE COURT:  Right.  Sure.

23          MR. BARR:  It also has to be reasonable.  And these

24   disparities between projections and actuals are informative

25   on the issue of reasonableness.

|Hearing
|12-cv-03526, January 7, 2016

1           THE COURT:  But --

2           MR. BARR:  So --

3           THE COURT:  Okay.

4           MR. BARR:  We'll revisit this, but when

5    Mr. Lagrotteria --

6       (Simultaneous conversation)

7           THE COURT:  Yeah.

8           MR. BARR:  -- I don't think we have to deal with

9    it, but we did want to raise this with the Court.  I think,

10   unless the Court has something else, where we'd like to leave

11   things is an order from the Court directing the parties to

12   make a joint submission on the new proposed pretrial schedule

13   for the reasons outlined.

14          THE COURT:  Yeah, no, I -- go ahead.

15          MR. LAGROTTERIA:  Well, I -- that's fine.  I assume

16   that it's going to be dictated.  That schedule, we'd have to

17   work with that a little based upon the decision and all that,

18   so I don't have a problem with Your Honor obviously --

19          THE COURT:  Well, look, there are certainly two

20   things I need to get you folks.  Right?  One is decision on

21   the 30(b)(6).  Two is decision on the insurance agreements.

22   It just makes sense to hold off on requiring you folks to

23   give me a revised schedule until (A) I do that, you folks

24   have a better lay of the land; (B) hopefully you'll also have

25   a better lay of the land based on the back-and-forth that we

|Hearing
|12-cv-03526, January 7, 2016

```
 1   just had, the production, for example, of general ledger
 2   entries, et cetera, the stuff for the codes, as well as
 3   resolution of the cost projections issue, if possible.
 4            MR. BARR:  That's exactly right, Judge.
 5            THE COURT:  Okay.
 6            MR. BARR:  I didn't mean issuing an order today.
 7            THE COURT:  Yeah, right, right, right.  Ultimately,
 8   though --
 9            MR. BARR:  -- with a --
10        (Simultaneous conversation)
11            MR. LAGROTTERIA:  Okay, I understand now.
12            MR. BARR:  Okay.
13        (Simultaneous conversation)
14            THE COURT:  Okay.  So what's the best way of doing
15   this?
16            MR. BARR:  And, Your Honor, I would suggest that we
17   put the depositions that have been previously scheduled, hold
18   those in abeyance.
19            THE COURT:  I'll leave that to you.  If you
20   folks -- if you folks can agree on that, that's --
21            MR. LAGROTTERIA:  Yeah, I mean -- I think -- well,
22   there are clearly depositions that have to go off.  Mr. Barr
23   and I talked a little bit about making some depositions that
24   could take place, and quite frankly, they're not biggies,
25   voluminous ones.
```

Hearing
12-cv-03526, January 7, 2016

1          THE COURT:  Right.

2          MR. LAGROTTERIA:  There may be some onesies and

3   twosies we can do.  I'm not sure.  We'll have to --

4          THE COURT:  I'll let -- yeah, you folks, if it's

5   only -- you folks aren't fighting about that, I'll go along.

6          MR. LAGROTTERIA:  But there are big ones that I

7   know -- we know have to go off.

8          THE COURT:  Okay.  So what I'll do is this, we will

9   get a ruling out on -- when we get the ruling on the later of

10  the subpoena issue and then the insurance settlement

11  agreement issue, I'll then give you folks from there, how

12  about, say, 21 days to get me a joint proposed schedule?  Or

13  do you need -- I know you're going to say, well, Judge, we

14  don't know when you're going to issue the rulings.

15         MR. BARR:  Well, they -- we also don't know what

16  will be necessary after the ruling.

17         MR. LAGROTTERIA:  Yeah, let's assume that

18  there's --

19      (Simultaneous conversation)

20         THE COURT:  Okay, okay --

21         MR. LAGROTTERIA:  -- there's appeal --

22      (Simultaneous conversation)

23         THE COURT:  So what I'll do is this, not under

24  schedule, but a status report within 21 days, and then you

25  could say, Judge, here's our schedule, we're good to go.

```
 1   Judge, not so good, here's what's going on.
 2           MR. LAGROTTERIA:  Right.  There's been an appeal
 3   filed, whatever, and --
 4           THE COURT:  Yes, okay, fine.
 5           MR. LAGROTTERIA:  That --
 6           THE COURT:  Fair enough.
 7           MR. LAGROTTERIA:  Okay.
 8           THE COURT:  Just -- yeah.  Good, that makes sense,
 9   all right -- did you write that part down?
10           FEMALE SPEAKER:  Yes.
11           THE COURT:  Anything else?
12           MR. LAGROTTERIA:  No, Your Honor, thank you very
13   much.
14           THE COURT:  All right.  Folks, it's always a
15   pleasure.  Really, it's interesting issues.  Mr. Barr, you
16   really didn't like that Fourth of July fireworks metaphor?
17           MR. BARR:  It didn't work for me, but --
18           THE COURT:  No, that's all right.  You know, you
19   win some, you lose some.
20           (Conclusion of proceedings at 3:58 P.M.)
21
22
23
24
25
```

```
|Hearing
|12-cv-03526, January 7, 2016                                    61
Certification
```

```
 1                          Certification

 2        I, SARA L. KERN, Transcriptionist, do hereby certify

 3   that the 61 pages contained herein constitute a full, true,

 4   and accurate transcript from the official electronic

 5   recording of the proceedings had in the above-entitled

 6   matter; that research was performed on the spelling of proper

 7   names and utilizing the information provided, but that in

 8   many cases the spellings were educated guesses; that the

 9   transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11        I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   s/ Sara L. Kern                  18th of January, 2016

19   _____     _____
     Signature of Approved Transcriber              Date

20

21

     Sara L. Kern, CET**D-338
22   King Transcription Services
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24

25
```