```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY

PPG INDUSTRIES INC.,            .
                                .
        Plaintiff,              .
                                .  Case No. 12-cv-03526
vs.                             .
                                .  Newark, New Jersey
UNITED STATES OF AMERICA, et    .  June 27, 2016
al.,                            .
                                .
        Defendants.             .
                                .


                   TRANSCRIPT OF TELECONFERENCE
              BEFORE THE HONORABLE MICHAEL A. HAMMER
                   UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      JOSEPH F. LAGROTTERIA, ESQ.
                        LeClairRyan
                        One Riverfront Plaza
                        1037 Raymond Boulevard, 16th Floor
                        Newark, NJ 07102
                        (973) 491-3600
                        Email:
                        Joseph.lagrotteria@leclairryan.com

                        ADAM GRANDIN HUSIK, ESQ.
                        LeClairRyan
                        One Riverfront Plaza
                        1037 Raymond Boulevard, 16th Floor
                        Newark, NJ 07102
                        (973) 491-3317
                        Email: Adam@husik.com
```

```
 1   For the Defendants:      LEWIS MARSHAL BARR, ESQ.
                              U.S. Department of Justice
 2                            Environment & Natural Resources
                              Division
 3                            P.O. Box 7611
                              Washington, DC 20044
 4                            (202) 514-9645
                              Email: Lewis.barr@usdoj.gov
 5
                              LISA MEGHAN BELL, ESQ.
 6                            U.S. Department of Justice
                              Environment & Natural Resources
 7                            Division
                              P.O. Box 7611
 8                            Washington, DC 20044

 9
     Audio Operator:
10
     Transcription Service:      KING TRANSCRIPTION SERVICES
11                               3 South Corporate Drive, Suite 203
                                 Riverdale, NJ  07457
12                               (973) 237-6080

13   Proceedings recorded by electronic sound recording (not all
     parties were discernible on the record); transcript produced
14   by transcription service.

15

16

17

18

19

20

21

22

23

24

25
```

1                                    I N D E X

2

3    Proceeding                                                    Page

4      Proceedings                                                4

5      The Court's ruling on record search issues                 16

6      The Court's ruling on Mr. Sorokowski's                     19
       spreadsheet
7
       The Court's ruling on litigation hold letters              26
8      production

9      The Court's ruling on unresolved dispute                   30
       deadlines

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Commencement of proceedings at 3:34 P.M.)

2

3          THE COURT:  All right.  We are on the record in PPG

4  Industries versus United States of America, Civil

5  No. 12-3526.

6          Can I have appearances, please, beginning with

7  plaintiff's counsel.

8          MR. LAGROTTERIA:  Joe Lagrotteria, from LeClairRyan

9  on behalf of PPG Industries.

10          MR. HUSIK:  And Adam Husik from LeClairRyan as

11  well.

12          MR. BARR:  Lew Barr for the United States.

13          MS. BELL:  Lisa Bell for the United States.

14          THE COURT:  All right.  I have reviewed the

15  parties' June 23d joint letter and attachments which raise a

16  number of issues from which both sides actually raised a

17  number of issues.

18          Have the parties, since submitting that last week,

19  made any progress with trying to resolve these various issues

20  through the meet-and-confer process?

21          MR. HUSIK:  Your Honor, this is Adam Husik for PPG.

22          We had a call -- the parties had a call a day or so

23  before that letter was submitted.  No headway was made at

24  that time, and we've been preparing for depositions that are

25  starting -- we're in D.C. today with the depositions.  So the

 1 | short answer is no, Your Honor.

 2 | THE COURT:  All right.  Let me deal first with the

 3 | issues that PPG has raised with regarding the deposition of

 4 | Andrew Sorokowski, as well as what it argues are production

 5 | deficiencies with -- by the government's production.

 6 | Here's -- and I want to hear what the parties have

 7 | to say, although, quite frankly, I'd be mildly surprised if

 8 | you had a whole lot to add to the fairly extensive

 9 | submission.

10 | But what I see is this.  What I see is an issue

11 | with Sorokowski's ability to respond to certain areas of

12 | inquiry by PPG.  Frankly, what it seems like is that

13 | Sorokowski essentially was the lead researcher and architect,

14 | if you will, of the procedure by which the government was

15 | going to gather and produce documents to PPG in this

16 | litigation.  It strikes me, though, that the issue appears to

17 | be that he was not necessarily as well qualified or well

18 | prepared as one might hope to testify about how that search

19 | and culling and gathering of responsive discovery was

20 | actually implemented.

21 | So, for example, there are areas, to be sure, where

22 | looking at the joint letter and the transcript where he

23 | clearly struggled to provide responsive information.  So, for

24 | example, on the issue of who issued litigation holds, how

25 | those were disseminated amongst the various federal agencies,

1   what was done to ensure compliance, the factual scope of the

2   litigation hold directives, were all areas that he clearly

3   struggled with.  I respectfully disagree with the government

4   to the extent the government argues that PPG should be able

5   to infer that from its privilege log.

6           Now, it also appears to me that what happened

7   was -- and this is, I think, to some degree,

8   understandable -- after Sorokowski developed the procedure as

9   the lead researcher -- and I think this is something that

10  Mr. Barr describes in the government's section of the letter,

11  Mr. Barr and Ms. Bell, it strikes me that what happened was

12  that government counsel worked closely with the researchers

13  to implement the procedure and search the records

14  accordingly, which is all part and parcel of discharging

15  their professional obligations.

16          But the issue seems to be, though, that

17  Mr. Sorokowski, for purposes of the 30(b)(6) deposition,

18  wasn't as familiar with those actual efforts among the

19  various researchers, as he should have been.  So I understand

20  PPG's issue with gaps in Sorokowski's testimony as a 30(b)(6)

21  witness.  Obviously, if Sorokowski were testifying solely in

22  his personal capacity, that would be a very different tory.

23  But he's not.  He was testifying as the 30(b)(6) witness.  He

24  was offered as such in response to the topics noticed by PPG,

25  and therefore, is presumed to have -- or have acquired

1    knowledge.

2            I understand PPG's issue with that.

3            But where I part company with PPG is I honestly

4    don't see how any of that gets them to the point where

5    additional written discovery is warranted for a couple of

6    reasons.  One, the only thing that's actually presented to me

7    is that somehow I should infer from Sorokowski's inability to

8    answer with a necessary degree of specificity on those

9    issues, that as a result, it is more likely than not that the

10   government has failed to produce otherwise discoverable

11   information.

12           So -- and this is an example -- I'm going to give

13   the parties an example of a logic step that PPG makes that I

14   don't think is necessarily meritorious.  PPG argues that

15   Sorokowski testified he did not review the historical records

16   that the government produced to PPG, and as a result,

17   Sorokowski, must have, it should follow, failed to consider

18   whether the government should have searched other record

19   locations.

20           That's not necessarily a leap in logic with which I

21   agree.  It certainly could be the case that Sorokowski was

22   more concerned at a metadata level with which areas a record

23   location should have been searched and that government

24   counsel with the individual researchers vetted out the actual

25   process by which those were searched.

|Teleconference
|12-cv-03526, June 27, 2016

1          That could very well happen independent of whether

2   Sorokowski actually reviewed the historical records culled

3   from each of those record locations, particularly where, as

4   here -- Mr. Barr, if you had to estimate, how -- what would

5   the size of the overall production by the government to date

6   in terms of document discovery in this case be?

7          MR. BARR:  Just shy of 40,000 pages.

8          THE COURT:  Okay.  Which is not -- look, it's far

9   from the biggest number that I've heard, but it's also hardly

10  inconceivable that Mr. Sorokowski wouldn't have reviewed each

11  and every such document.

12         So --

13         MR. BARR:  Your Honor, we would -- we would add

14  that he reviewed their complaint, and on the basis of

15  extensive conversation, he was well aware of what needed to

16  be searched for.

17         THE COURT:  Mm-hmm.  So -- so what I don't see is

18  any actual indication that there is some document or record

19  grouping that the government is sitting on that PPG has been

20  deprived of that would meet the Rule 26 standard.  Nor do I

21  see any indication that allowing new written discovery would

22  get this case any closer to revealing admissible evidence,

23  and in a case that is already north of 4 years old, I am --

24  will tell you and we've had -- had more than our fair share

25  of discovery issues in this case, I don't see a whole lot to

1    be gained from going down a rabbit hole of discovery on

2    discovery.

3           So let me turn it over to PPG.  Tell me why that's

4    wrong.

5           MR. HUSIK:  Thank you, Your Honor, and to be clear,

6    we're not expecting any witness to be able to sit down and

7    say on X date, this researcher reviewed that.  You know,

8    these -- these record groups that we're talking about in the

9    National Archives have hundreds of thousands of cubic square

10   feet.  It's a huge amount of information.

11          But the one thing Mr. -- Mr. Sorokowski did

12   establish is that the parties do not, as Mr. Barr has argued,

13   have equal access to not only the record centers, there are

14   public and there are private components of those, and not to

15   mention classified and unclassified.  But he also confirmed

16   that the government researchers utilized finding aids.  We

17   refer in the letter to the SF-135 --

18          THE COURT:  Yeah.

19          MR. HUSIK:  -- and the SF-115 forms that our

20   researchers have been denied -- specifically denied access

21   to.  The web page that Mr. Barr put in the letter as to the

22   135 form is actually instruction sheets for how agencies are

23   fill the forms out -- public access.  These are thing that we

24   have been denied access to.

25          So what we did in our efforts from 2013 when the

1   government answered written discovery demands, we relied on

2   those certified demands to know where the government

3   searched, both in public and private sources.  We -- we

4   vetted that.  We used that information to compare it to our

5   research efforts and see if there's anywhere else that we

6   should go to, both via public access or via FOIA demands for

7   things that we can't access.  And we made FOIA requests, and

8   they've been -- for years now.

9           But at the deposition last week, what happened is

10  (A) we found out that the government has reviewed additional

11  record groups that were not disclosed in 2013, and Mr. Barr

12  handed over that two-page exhibit that we include in our

13  letter; it shows just a listing of numbers without

14  information as to what was searched in those groups, which,

15  again, can be voluminous, roomfuls.  So that, we argue,

16  should have warranted either being turned over to us months

17  ago, if not a year ago, but certainly amendments to their

18  written discovery responses, and at that time, before the

19  dep, we could evaluate, well, we didn't go to that record

20  group, maybe we should have.  We don't have access to that

21  group.  We need to seek access.

22          We simply -- we're operating in a vacuum in a large

23  sense because we don't know what the government has that we

24  can't even access the --

25          So we're not seeking to reopen discovery in its

1    entirely.  We're not seeking a delay in a year or anything

2    like that.  We just want to have the government follow the

3    obligation to (A) amend their discovery responses, and (B)

4    give us information about where they've searched.  And if

5    that's via written or via live testimony, whenever it needs

6    to be done, this is, as you know, a document-intensive case

7    about history, and we don't have access to a lot of the

8    history.

9          That's really what it boils down to, Your Honor.

10         THE COURT:  Okay.

11         MR. HUSIK:  We're not seeking -- we're not seeking

12   a long delay, but we just wanted the opportunity to challenge

13   these topics that were specifically noted.

14         You mentioned litigation hold.  There's also the

15   freeze issue, which he brought up but couldn't get any

16   clarity on.  These are important issues that go to

17   disposition of records from -- from decades ago.  And we

18   submit that we should be entitled to challenge, at least

19   probe into that as a noticed topic.

20         THE COURT:  All right.  Let's -- let's go through

21   that.

22         So the SF-135, these are the forms that would

23   reflect the transfers to the National Archives.  Right?

24         MR. BARR:  Yes, Your Honor, and they are publicly

25   available.  Sorokowski so testified.  And we have checked

1    with the National Archives, and they have confirmed it.  If

2    PPG had been denied access to the SF-135, they could have

3    told us about it.  We could have addressed it.

4              THE COURT:  All right.  Well, let's say PPG had

5    told you about it, what would happen then?

6              MR. BARR:  We could have called counsel for the

7    National Archives and made sure they had access to the 135.

8              THE COURT:  Okay.  All right.

9              So among other things, what -- has -- let me ask

10   this.  Let me turn back to PPG.

11             Are you still unable to access the SF-135s?

12             MR. HUSIK:  They're actually contained in the

13   federal record center, not the National Archives.

14             And that is accurate.  If Mr. Barr is willing to

15   help us in that regard, we certainly would be willing to take

16   that offer.

17             That -- that doesn't cure, though, the fact that we

18   need to know where they searched.

19             THE COURT:  Yeah, I understand that.

20        (Simultaneous conversation)

21             MR. HUSIK:  Just one quick point, Your Honor.

22             THE COURT:  Yeah.

23             MR. HUSIK:  Mr. Sorokowski also testified then the

24   researchers, who made copied documents from the archive

25   record centers, they recorded the source information; in

1    other words, the card catalog, the -- record group.  And it

2    is readily available --

3            None of that was produced to us in the case.  We

4    produced with all of our documents to the government so they

5    would know our research.

6            MR. BARR:  Your Honor, if I can address that

7    quickly.  To the extent in the -- written into -- handwritten

8    on the documents that we obtained from the archives and the

9    federal record centers, we provided it.  To the extent it

10   wasn't, we obviously could not provide it.

11           THE COURT:  But is there -- Mr. Barr, is there any

12   when -- I know there is the one -- there's the one -- I don't

13   even necessarily want to call it a spreadsheet that

14   Mr. Sorokowski himself maintained?  But that doesn't reflect,

15   as PPG points out, of the government research or the research

16   that the government conducted in responding to their demands,

17   because that was just -- as I -- near as I can tell, was not

18   necessarily an ad hoc list that Mr. Sorokowski himself

19   maintained, but it was never intended to be a master list for

20   all of the researchers.  Correct?

21           MR. BARR:  That -- that's correct, Your Honor.

22   That was something that I maintained track of.

23           And as far as the differences between what we

24   advised PPG about in 2013 and the list we provided to them on

25   the -- at -- Mr. Sorokowski's deposition, that two-page

1   document.  There are very few differences.  The differences

2   are trivial.  And most of those trivial differences are based

3   on information that PPG itself provided to the government in

4   its request for production.

5           I'm not going to get into the details, because it's

6   not worth it, but it's -- as far as the list of documents

7   that we provided, it was an effort to be as complete as we

8   could, and the differences were very small.

9           THE COURT:  Now, but there was at least -- if I

10  understood correctly, there was one -- at least one

11  organization that Mr. Sorokowski thought had been searched or

12  agency that was not on either the original list or the

13  amended that you served on them at the -- on the day of the

14  Sorokowski deposition.  Correct?

15          MR. HUSIK:  That's correct.

16          MR. BARR:  Um --

17          MR. HUSIK:  -- he testified to that.

18          MR. BARR:  -- I don't -- I don't really recall

19  which entity that was.

20          MR. HUSIK:  It was the record group EE -- I don't

21  have the number in my head, but there was a specific letter

22  group that, at least one, that he did recall that was on

23  either list, that's correct, Your Honor.

24          MR. BARR:  We can check that, Your Honor, but

25  that -- that's not consistent with my records.

1          MR. HUSIK:  But, again, Your Honor, just one minor

2    point, if I could add, when we're talking about a group, and

3    you probably saw in the transcript -- line questioning, where

4    he was asked:  How is the group selected?  How do you hone

5    down the 300,000 cubic feet to something manageable?  And was

6    anything found in the -- in that?

7          And he was not able to answer.  And to date, from

8    the two-page listing, we don't have any information

9    responding to those inquiries.

10         MR. BARR:  Actually, Your Honor, that's not

11   accurate.

12         And he had the complaint.  I made sure that they

13   studied it.  We discussed it in detail.  It indicated a

14   number of places where we needed to look.  We did look.  And

15   based on documents that PPG has produced to us, they were

16   looking in those same places, starting back in 2010.

17         So he had the complaint.  He had the guidance and

18   instructions of counsel.  So he wasn't operating in a vacuum.

19   I think PPG is leaving out a fair amount in their

20   description.

21         The finding aids he used in these indices, at least

22   with respect to the National Archives, the time periods, the

23   companies involved, the federal agencies involved, the

24   commodities involved.

25         So they -- the basis of the -- the bases for the

1  searches where we went and how we did -- narrowed things

2  down, was laid out with clarity.

3          MR. HUSIK:  It was not --  we disagree.

4          THE COURT:  All right.  Well --

5      (Simultaneous conversation)

6          MR. BARR:  -- transcript speaks for itself.

7          THE COURT:  On this -- on this issue, this what I'm

8  going to order.

9          One, I'm going to order the parties first to meet

10  and confer on the issue of the SF-115s, and the issue of the

11  SF-135s.

12          And then within a week, I'd ask Mr. Barr after that

13  to communicate with counsel for the relevant agencies.  I

14  don't know if it's a -- obviously, in addition to the

15  National Archives, if there are particular federal records

16  centers, but to communicate -- or agencies to communicate

17  with them to facilitate the production of the 115s -- or to

18  facilitate, rather, PPG's access to the SF-115s and 135s.

19  That's number one.

20          Number two, I am going to order that the government

21  produce another witness -- Mr. Sorokowski, because frankly --

22  and I don't certainly -- I'm certainly not second-guessing

23  Mr. Sorokowski's preparation.  It just -- it struck me that

24  the problem here wasn't necessarily in the work that he did,

25  but if it's true that he didn't speak with the other

1    researchers of review his own research notes or review their

2    research notes, I can understand then why he struggled to

3    testify as a Rule 30(b)(6) witness about the implementation

4    by others of his -- of his sort of the protocol that he

5    developed.

6              I will leave it to Mr. Barr determine whether that

7    is Mr. Sorokowski or another individual who would be the

8    witness.  But essentially the subject would be the ability to

9    describe the -- why the government -- what exact areas of

10   locations the government selected for that obtaining and

11   culling documents, and the criteria by which the government

12   narrowed its searches.  And then the issue of who issued the

13   litigation hold letters, how they were disseminated, which

14   agencies received those, and what the government did to

15   ensure compliance.

16             Finally --

17             MR. HUSIK:  Your Honor, if I may, all -- some of

18   these -- in the record freezes, which is separate from

19   litigation hold.

20             THE COURT:  Oh, I'm sorry, wait.  Say that and

21   slower, please.

22             MR. HUSIK:  I apologize.  The issue of litigation

23   records freezes.

24             THE COURT:  Right.  I'm sorry.  I had omitted that,

25   but you're right.

```
 1              Whether --
 2       (Simultaneous conversation)
 3              THE COURT:  Whether the government --
 4       (Simultaneous conversation)
 5              THE COURT:  Go ahead.
 6              MR. BARR:  I'm sorry, Your Honor.
 7              THE COURT:  Go ahead, Mr. Barr.
 8              MR. BARR:  I'm just going to say that I'm not sure
 9  litigation freezes for the same -- are different than holds.
10              MR. HUSIK:  I'm not sure either, Your Honor.  In
11  his testimony, he clearly said that he recalled instances of
12  a freeze.  I'm not sure what that is referring, but whatever
13  it is, we'd like to just probe into that.
14              THE COURT:  Yeah, I thought the freeze essentially
15  was when the agency records are transmitted to the federal
16  record center, which could be either part of -- part and
17  parcel of the litigation hold or something that's done
18  independent of the litigation hold.  I don't really know.
19  But he should be prepared to testify about what a freeze is
20  and whether there were any freezes instituted relevant to
21  this case.
22              Finally, there was an issue regarding -- and
23  honestly, I need some clarity from the parties on this --
24  there was an issue regarding the production of
25  Mr. Sorokowski's Microsoft Excel spreadsheet.  And at one
```

|Teleconference
|12-cv-03526, June 27, 2016

1   point, I could have sworn PPG said that they wanted it to be

2   produced.  I thought it had because I thought it was an

3   exhibit to the joint letter?

4             MR. HUSIK:  No, Your Honor, it has not been

5   produced.

6             THE COURT:  All right.

7             MR. HUSIK:  -- the litigation -- the privilege log

8   we saw from government -- attached?

9             MR. BARR:  Which listed the litigation hold

10  letters, and other related documentation.

11            Your Honor, on the subject of the litigation

12  holds --

13            THE COURT:  Wait, wait, wait, wait.  Before we --

14  before we go back to that, what's the government's position

15  regarding the production of the spreadsheet?

16            MR. BARR:  We regard it as unnecessary.  The

17  information that would be reflected on it would be -- would

18  reflect, you know, where we looked.  Since the -- PPG has

19  done its own research, it has access to the archives, for

20  example.  They don't need entry-level and file folder-level

21  detail.

22            THE COURT:  All right.  I'm going to order that

23  that be produced and here is why.  One, it's not as though

24  the government is claiming that it is some sort of work

25  product.  Two, I respectfully disagree with the government in

1    light of these issues that we've been discussing.  I think

2    it's highly relevant.  As I understand it, Mr. Sorokowski

3    created the Microsoft Excel spreadsheet to track what

4    government documents he was -- he sought to review, what he

5    actually reviewed, and what he was copied.  That would

6    presumably go to the core -- or at least provide real

7    elucidation or insight into at least why he, acting as the

8    government's lead researcher, determined that specific

9    documents or category of documents were relevant, were worthy

10   of review, and what were copied.

11          And in a case where -- or document production where

12   all parties agree is sufficiently voluminous that there has

13   to be some degree of prioritization, I think that the lead

14   researcher's prioritization is indeed relevant to these

15   issues that we've been discussing.

16          So I'm going to require that that be produced.

17          Mr. Barr, you wanted to speak to the litigation

18   hold issue.

19          MR. BARR:  Yes.  The -- as you know, the privilege

20   log reflects the litigation hold letters slash litigation

21   freeze, memoranda that we identified.  It is well established

22   that these kinds of memoranda and holds are privileged.

23          Is the Court ordering the production of those

24   litigation hold letters and memoranda?

25          THE COURT:  No.  No.  I'm not order- -- on the

1   litigation hold issue, I'm not ordering any additional

2   document production.

3        What I'm ordering, though -- and I don't think this

4   part is privileged -- is that he should be -- or some other

5   30(b)(6) representative should be prepared to testify about

6   the subjects for which the litigation hold was implemented,

7   who issued them, and how they were disseminated out to the

8   various agencies.

9        That's what I'm principally concerned.  I'm not

10  require- --

11        MR. HUSIK:  --

12      (Simultaneous conversation)

13        MR. BARR:  Does that -- does that include the

14  terms?  You know, the subject matters on which the material

15  was supposed to be retained?

16        MR. HUSIK:  Well, Your Honor, if I may, Sorokowski

17  referred to a one -- one- and two-page list of key words.

18        And I asked if those were the keywords used as far

19  as the ESI protocol in this case.  And he didn't know.

20        And we would submit that that's factual information

21  of the keywords that were used to look for documents.  That's

22  where it'll be in a card catalog, essentially.  That -- I

23  don't see any work product there.  And -- government's

24  production of that.

25        THE COURT:  I don't see how it could be work

1    product if -- if, for example, what was done was these are

2    the search terms, they were negotiated between and among the

3    parties.  They can't possibly be work product then.

4              MR. BARR:  Yeah, I -- we don't know if they were

5    the same thing.

6              THE COURT:  If they're not, though --

7              MR. BARR:  Well, the ES -- the ESI agreement

8    relates to an entirely different kettle of fish, because ESI

9    didn't exist in the historical context.

10             THE COURT:  Right.  I guess, though, maybe I was

11   mistaken.  Were -- so for the pre-ESI, those were not

12   digitized documents?

13             MR. BARR:  Well, they wouldn't be reflected in, I

14   believe, except in litigation, you know, production

15   databases.  They wouldn't be the kinds of emails and

16   electronic memoranda that are, you know, generated in the

17   billions today.

18             MR. HUSIK:  Let me just clarify what we're

19   referring to.  What I asked at deposition, Your Honor, was

20   whether or not the terms used by the research team, terms

21   like chromium and NPR and other keywords that we used for the

22   more modern emails, if those are the same words used to go

23   search the indices and find aids in the National Archives and

24   record centers.  This, again, goes to what they looked at and

25   what they looked for.

1    We just want to know what that list is.  We just

2  want to know what the government researchers were charged

3  with going to locate so we can assess the adequacy and where

4  they looked.

5    I'm not trying to make this complicated referring

6  to ESI.  We just trying to tell where they looked and what

7  they looked for.  And he identified a two-page listing that

8  refreshed his recollection.  And we just want that list.

9  That's all.

10    THE COURT:  So, then, why wouldn't he be able to --

11  without waiving -- because I'm sensitive to -- I'm sensitive

12  to the work product privilege to the extent that he were

13  asked to testify about specific research that he conducted at

14  the behest of Mr. Barr for the government's own litigation

15  strategy.

16    But as you've just pointed out, to the extent he's

17  conducting research in response to -- or conducting the

18  document preservation and litigation hold letter to be

19  constructed to ensure that the discovery that PPG is looking

20  for is preserved, I don't think that would be -- infringe on

21  work product.

22    Why wouldn't he be able to testify off of the list

23  that he's previously disclosed to PPG?  So in other words, if

24  the inquiry were is this the entire list, does this list

25  fairly and accurately represent all of the subjects for which

 1   lit holds were issued?  Yes.  If not, how did it deviate or

 2   what's the difference?

 3        Would that -- I don't see how that would

 4   necessarily -- would infringe on the attorney work product?

 5   In other words, he's already provided a two-page list.

 6        (Simultaneous conversation)

 7        THE COURT:  No, no.

 8        MR. HUSIK:  No, he's not.  He referred to it -- the

 9   first time we learned of it last week.  We're requesting that

10   list.  I apologize if I wasn't clear in that regard.  We

11   don't -- we don't have that listing.

12        THE COURT:  Well -- all right.  And this is -- this

13   is a list of all of the subjects for which the litigation

14   hold was to apply?

15        MR. HUSIK:  I believe -- actually, I believe the

16   list goes to what research they conducted.  I don't know

17   whether or not that relates to the litigation hold.

18        Now, he specifically referred to it in the research

19   efforts.  We had no information as to what litigation hold

20   directive was aimed to preserve.

21        THE COURT:  All right.  Now, I'm -- I have to

22   confess I'm really confused.

23        MR. HUSIK:  Let me -- let me try again.

24        THE COURT:  All right.

25        MR. HUSIK:  In connection with their research

1  efforts, not litigation holds, he referred to a two-page list

2  of keywords that were given out to the researchers, and they

3  were told to use that listing to try to find all of these

4  documents and determine where to go.

5          That was definitely -- in litigation holds.

6          The testimony about litigation holds, he simply had

7  no recollection whatsoever of what the context of the hold

8  was.  So we had no information on that.

9          It -- it's the research conducted by the government

10  that I was speaking to in regards to the two-page listing of

11  those terms, which we don't have.

12          THE COURT:  Okay.  So with regard to the litigation

13  hold, I would think, then, fair inquiry would be who issued

14  the litigation holds -- and I'm really now working off of the

15  joint letter -- who issued litigation holds?  When were they

16  issued relative to the notice of intent to sue on

17  December 21, 2011?  And who received the litigation hold

18  letters?

19          MR. HUSIK:  And what type of information was

20  instructed to be preserved.  Correct, Your Honor.

21          MR. BARR:  Your Honor, now counsel's trying to put

22  words in -- mouth.

23          THE COURT:  Yeah, I'm not -- I'm not -- I'm not

24  going to allow inquiry into the specific substance of the

25  litigation hold letters, certainly not off the top of my

```
 1   head, because that does raise potentially a work product

 2   issue that frankly I haven't researched.  And --

 3             MR. BARR:  Attorney-client.

 4             THE COURT:  Or attorney-client.  Yes.

 5             Now, look, that can be waived, but I would need

 6   much more of a showing here, and I don't have it here, to

 7   show that that should be waived.

 8             So I'm going to at least at this point allow

 9   limited inquiry into who, when, and where, but not the what

10   or the subject matter of the litigation hold letters.  If

11   there's still an issue with that at the deposition, you folks

12   can -- or following the deposition, you folks can let me

13   know.

14             MR. HUSIK:  Fair enough, Your Honor.

15             THE COURT:  All right.  Now, is -- is PPG

16   requesting this two-page letter?  Or the two-page list?

17             MR. HUSIK:  The listing of the search terms he

18   referred to, yes, Your Honor.

19             THE COURT:  Mr. Barr, what's your position?

20             MR. BARR:  I think we would -- we would need to

21   consider that.

22             THE COURT:  Yeah.

23             MR. BARR:  Because we think this is -- we think

24   this has become a tempest in a teapot, and help put it to

25   bed, so we may well waive the -- the work product privilege.
```

1          THE COURT:  I'll tell you -- I strongly advise you

2    to do -- to consider -- to consider the issue as you've said,

3    and here's why, because I think it's fair inquiry to the

4    extent that there's any deviation from the search terms.  And

5    I understand that the search terms govern ESI.  But the whole

6    of those search terms, though, probably is or should be a

7    pretty fair reflection of what that two-page list would be in

8    any event.  The mere fact that some of those -- there may be

9    certain issues on the -- for the ESI, and that the search

10   terms the parties negotiated that would go beyond what you

11   would see, for example, in the pure paper discovery, but to

12   the extent that there's a significant deviation, that may be

13   fair inquiry by PPG.

14          But it strikes me that this is something that the

15   parties should be able to meet and confer and resolve.

16          So you folks will do that and then let me know

17   within two weeks whether there's still an issue.  By way

18   of -- and I don't need an extensive letter.  I simply need a

19   short letter that says you need a phone conference, because

20   there's still on issue on that.  All right?

21          MR. HUSIK:  Fair enough, Your Honor, thank you.

22          THE COURT:  Okay.  I think now if I'm not mistaken,

23   though, that takes care of PPG's side of the issues.

24          MR. HUSIK:  Could we -- one issue that may

25   result -- actually.  We're here in D.C. today taking phase

1   two of the government's deposition on substantive issues as

2   far as history and documents that have been produced in this

3   case.  This is somewhat speculative, but in the event that

4   information comes out from the redeposition of last week and

5   there's a need to reexamine this witness as to additional

6   information, we just want to flag that potential issue that

7   may arise.

8           MR. BARR:  Yeah, speculative is -- well --

9       (Simultaneous conversation)

10          MR. HUSIK:  -- fact discovery end date and

11  Your Honor's firm deadlines is why I raise that right now.

12          THE COURT:  Well, duly noted, but I do think it's

13  pretty speculative.

14          Okay.  Let's turn to the issues regarding the P --

15  that the government has with PPG's production and PPG's

16  argument that the government did not comply with the Fifth

17  Amendment -- amended scheduling order.

18          I've got to tell you, though, Mr. Barr, when I look

19  at this and I see that of the -- one, two, three, four -- of

20  the nine deposition dates referred to, conservatively, six of

21  them are not only beyond the 30-day provision of the March --

22  I'm sorry, the May 19th order, but were actually -- actually

23  predated even the May 19th telephone conference.  Why would

24  I -- and given that the fact that the government is strongly

25  opposing any further extensions of fact discovery, a position

 1  that I happen to agree with, given that we're talking about a

 2  4-year-old case that's still in fact discovery, why are we

 3  still talking about these April and early-to-mid-May

 4  depositions?

 5          MR. BARR:  Well, the reason is the May 19 order did

 6  not exist when those April depositions were taken, for

 7  example.  Two, the next paragraph, which we read together

 8  with the paragraph regarding the 30-day provision, said in

 9  any event, bring it to your attention no later than

10  August 11.

11          Now, we don't know why that second provision should

12  be read out of this.

13          And, third, if I may, these are specific,

14  identifiable documents which were specifically described

15  during the deposition.  We don't know of any prejudice.  We

16  don't think it's going to be any delay in the overall

17  schedule.  Just saying, well, this is prejudicial and this is

18  untimely doesn't make it so.

19          MR. HUSIK:  If I -- respond briefly, they're not

20  all discrete requests.  We had a meet-and-confer this week,

21  and as pointed out in the joint letter, the items that we

22  could quickly take off the list, we did, and pointed to Bates

23  numbers and things we produced already.

24          There are certain new requests that are for --

25  well, in one instance, a report doesn't even exist that

1   Mr. Barr wants produced, and we're going to argue burden, a

2   listing of all the invoices in this case that relate to

3   certain POs, is something that -- definitely create, but it

4   is very voluminous and time to do.

5          But a lot of these things he's asking for, frankly,

6   we -- spend a lot of time looking at our million pages to see

7   if they exist under that or a different name.  And go to our

8   client, and it's going to take a matter of several weeks to

9   do this.

10         And the problem with the August date that he refers

11  to is that we have objections potentially to certain of these

12  items, and we don't want to come to Your Honor in August and

13  say, hey, discovery ended three months ago, and we -- what

14  are we going to do now?  That's why they're raising these

15  concerns now, because they're not all simple, here's the

16  contract you asked for, we're done with it.  These are

17  voluminous request --

18         MR. BARR:  Well, nothing like that gets resolved,

19  and this is, again, speculation.  But none of that gets

20  resolved by refusing to talk about these things.

21         THE COURT:  All right.

22         MR. HUSIK:  We're always willing to talk.  But

23  we're worried about timing.  That's all, Your Honor.

24         THE COURT:  All right.  This is what I'm going to

25  do.  A couple of things, one, let's go back to the May 19th

|Teleconference
|12-cv-03526, June 27, 2016

1    order.  I understand the government's position, but with all

2    due respect, I disagree with it.  The -- the provision

3    regarding the 30 days makes clear that any unresolved

4    disputes regarding the production of documents coming out of

5    the deposition, have to be submitted to me via joint letter

6    within 30 days of that deposition.

7            That, I think, makes it abundantly clear, if, for

8    example, on -- I don't know, say July 1, there's a dispute

9    and we get all the way to July 31st and it's not resolved

10   between and among the parties, no later than July 31st, I

11   have to get a letter; otherwise, it's waived.

12           That requirement does not read out the August 11th

13   deadline.  The August 11th deadline basically makes clear

14   that any such dispute -- so, for example, even if there's a

15   deposition on August 1, that has to be a dispute out of an

16   August 1 deposition has to be in front of me by August 11.

17   As we made clear, I think -- and I don't have the transcript

18   of the May 19th conference in front of me to -- you know, as

19   to be completely fair about it, but I distinctly recall in

20   have- -- being concerned that if we didn't put a final cap on

21   any such paper-related disputes, even though those that arise

22   as a result of depositions, that we were looking at discovery

23   disputes ad infinitum.  And given the procedural history of

24   this case, that's not an unfounded concern.

25           But that requirement is not coextensive or have the

1   unstated impact of extending the preceding paragraph that

2   says no later than 30 days after the deposition of such

3   witnesses.  What it says is that in any event, I can't get a

4   dispute after August 11th.

5           Having said that, it strikes me that from what

6   Mr. Barr has described that at least some substantial part of

7   the documents that the government seeks are specifically

8   identifiable and should be produced by PPG.

9           I understand there may be some burden incurred as a

10  result of that, and where I draw the line is to the extent

11  there's any such request that would require PPG to create a

12  new document, to the extent that it is subject to the 30-day

13  provision, I'm not going to require PPG to do that.

14          However, though, for the April 27th through -- when

15  did I get you folks' letter? through the May 13th

16  depositions, for any such documents that the government has

17  requested that are specifically identifiable, PPG shall

18  either produce those documents or certify that no such

19  document exists.

20          Going forward, to the extent that there is any such

21  dispute, the parties are reminded it has to be raised with

22  me, one, within 30 days of the deposition, but in any event,

23  no later than August 11.  So should you folks find yourselves

24  doing a deposition, say, on July 31 and there's a dispute,

25  essentially, the 30-day provision isn't what you're worried

1  about.  What you're worried about is that August 11th date.

2  It's almost like in basketball, the difference between the

3  shot clock and the game clock is the best analogy I can think

4  of.

5        Having said that, the government hasn't exhausted

6  the 30 days yet with regard to the May 25th, May 26th or

7  June 6th depositions, because this letter was filed on

8  June 23d, so those three depositions are within the 30-day

9  limit.

10       Are there -- are there any disputes arising out of

11  those that I haven't already addressed there that aren't

12  covered by what we've already discussed?

13       MR. BARR:  Your Honor, the May 25 and May 26

14  deposition issues -- issues, are discussed in the joint

15  submission.  I don't know if PPG attached it, but we can

16  certainly provide it to the Court.  It was in the June 22d

17  letter --

18       THE COURT:  These are -- this is about Mr. Terril's

19  testimony?

20       MR. BARR:  Yes, Mr. Terril testified on May 25 and

21  May 26.

22       THE COURT:  And Ms. Kappas June 6th.

23       MR. BARR:  That is correct.

24       THE COURT:  Right.

25       MR. BARR:  But we've not yet contacted PPG

|Teleconference
|12-cv-03526, June 27, 2016

1    regarding Ms. Kappas.  We --

2        (Simultaneous conversation)

3        MR. BARR:  We did raise some -- some broader issues

4    regarding Ms. Kappas, but we think it would be relatively

5    easy for PPG to answer those questions.

6        THE COURT:  What I did not understand or know

7    really -- I guess, know one way or the other from -- as

8    regards Mr. Terril's May 25th and May 26th testimony and

9    Ms. Kappas's June 6th testimony is whether the documents

10   requested are specific and identifiable or whether what

11   you're talking about are something that's more vague that's

12   going to require extensive searches to see if there's such

13   responsive documents or it's going to require PPG to create

14   documents.

15       MR. BARR:  Well, we understand the Court's views on

16   creation of new documents.  And we will look at the request

17   made as to the documents discussed or identified in the --

18   those two days of deposition, and Ms. Kappas, and we can

19   certainly discuss that with PPG.

20       THE COURT:  All right.

21       MR. HUSIK:  And your -- and Your Honor, I don't

22   know if you're able to give guidance at this point, but one

23   of the issues raised in Mr. Barr's letter is inquiring if

24   certain custodians, employees of PPG, if their ESI has been

25   collected or documents produced.

1          And we produced our ESI several years ago, frankly,

2    a lot of these issues could have been raised even before

3    deposition --

4        (Simultaneous conversation)

5          MR. HUSIK:  -- us to go and collect new custodians'

6    ESI and run search terms, that's not going to be a 30-,

7    60-day turnaround, as Your Honor probably knows.  And there

8    may need to be a ruling as to whether or not we should be

9    required to do that, as new people that are being identified.

10          MR. BARR:  Your Honor, we -- our -- the Court's as

11   a disadvantage, it doesn't have our June 22d letter.  But

12   that's not what we were talking about.  We're not talking

13   about ESI.

14          We inquired as to whether certain people in certain

15   positions had their records searched by PPG.  That's kind of

16   a yes or a no question.

17          THE COURT:  Well, I mean --

18          MR. HUSIK:  With that clarity as to hard-copy

19   documents, I think that exists, Your Honor --

20          THE COURT:  I'm sorry.  I can't -- I can't hear,

21   and therefore, I can't follow.

22          Look, this seems to be relatively simple, because

23   it really is almost the flip side of the issues that PPG

24   raised about what the government did to review its records.

25          So if the alternative is that the government does a

1   similar 30(b)(6) deposition on this issue, but if it can be

2   resolved through a couple of relatively simple

3   interrogatories or representations or a certification by PPG,

4   it strikes me that would be a lot of simpler.

5           MR. BARR:  Your Honor, may I suggest that

6   instead -- we would be happy to accept representations from

7   counsel in a written letter, and we wanted to suggest that

8   that be done with remaining issues pertaining to their

9   30(b)(6).  They're -- a lot of the gaps that they've alleged

10  can certainly be addressed a lot more --

11          THE COURT:  I know you raised that.  You certainly

12  had raised that in your letter.

13          MR. BARR:  I thought that it would be helpful to

14  exhaust that possibility before we go in to take another

15  deposition.

16          THE COURT:  What's PPG's response to that?

17          MR. HUSIK:  Yeah, I -- we thought we had resolution

18  on this point, but --

19          THE COURT:  Well, you do.  But -- but -- look, my

20  order is going to stand.  That's not to say, though, that if

21  the parties -- and the order's going to because I've already

22  ordered it and I'm not -- I've learned long ago, you don't

23  renegotiate your own orders, or you'll never get anything

24  done.

25              Having said that, if the parties, between

|Teleconference
|12-cv-03526, June 27, 2016                                          37

1   themselves, can build a better mousetrap, I'm certainly not

2   going to get in their way, but to make clear, my order on

3   that's going to stand.

4         Regarding Mr. Barr's proposal as to the United

5   States and what it is willing to accept, I'm going to let the

6   parties work that out.  If the government is still willing

7   to -- understanding my order as to its production obligations

8   and the 30(b)(6) is going to stand, if the government wants

9   to actually have a -- a formal representation in the form of

10  certification or testimonial evidence, I will allow that, be

11  it either a Rule 30(b) deposition or an interrogatory.  Or,

12  if the government's willing to take a written represent- --

13  representation by PPG counsel, I'll leave that to the

14  government.

15        MR. HUSIK:  We'll meet and confer, Your Honor.  For

16  PPG, in a spirit of cooperation, will say that if could

17  possibly eliminate a deposition, if we can have a letter

18  going back and forth clarifying some information that we're

19  trying to get, maybe it will obviate the need for a

20  deposition, but time can tell.  But we will try.  We'll meet

21  and confer -- at this point obviously.

22        THE COURT:  No.  No.  And the order's going to

23  stand.  Look, here's what we're going to do, because --

24  because, I'm serious, obviously, about the -- as you folks

25  all know, I'm serious about the deadline set forth in the

 1   fifth amended scheduling order, and that date's not going to

 2   change.

 3            If you folks can't resolve this, if there's still

 4   any lingering issues coming out of this, you folks are going

 5   to need to let me know by -- because I'm going to be out next

 6   week, folks, you need to let me know by the end of this

 7   week --

 8            MR. BARR:  Forgive me, Your Honor, I thought you

 9   said advise you within two weeks.

10            THE COURT:  I'm sorry.  That's right.

11            The problem is we have a July 8th deadline.

12            All right.  So this is what we're going to do.  I'm

13   going to extend that for just one week to July 15th.  You

14   folks are going to let me know by -- two weeks -- the 11th of

15   what remaining issues are.  So that's the three weeks.  And

16   then we're going to set up a phone conference, which we may

17   or may not need, but at least we'll have it in place, for

18   July 5th.  All right?

19            MR. BARR:  Very well, Your Honor.

20            MR. HUSIK:  And to be clear, if there's any

21   redeposition, to be done by July 15th as well as the

22   government's production of these documents?

23            THE COURT:  Yes.

24            MR. HUSIK:  Okay.

25            THE COURT:  Okay.  So you folks are going to let me

1   know by July 11th, and actually what we're going to do is

2   we're going to have a phone conference, then, the morning of

3   the 12th.

4            How are you folks for July 12th at 11 A.M.?

5            MR. BARR:  We think that's fine, Your Honor.

6            MR. HUSIK:  It's fine for PPG.

7            THE COURT:  All right.  We'll talk then, folks, if

8   necessary.  That depends on what you tell me by your joint

9   letter that you're going to get to me by close of business on

10  July 11th.

11           MR. HUSIK:  Perfect.  Thank you very much,

12  Your Honor.

13           THE COURT:  All right.  Have a good day.

14           MR. BARR:  Thank you Your Honor.

15            (Conclusion of proceedings at 4:28 P.M.)

16

17

18

19

20

21

22

23

24

25

1                            Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 40 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    S/ *Sara L. Kern*                    29th of June, 2016

19    _____    _____
      Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080
24

25