```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

PPG INDUSTRIES INC.,             .
                                 .
        Plaintiff,               .
                                 .  Case No. 12-cv-03526
vs.                              .
                                 .  Newark, New Jersey
UNITED STATES OF AMERICA, et     .  July 12, 2016
al.,                             .
                                 .
        Defendants.              .


                    TRANSCRIPT OF TELECONFERENCE
              BEFORE THE HONORABLE MICHAEL A. HAMMER
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:     ADAM GRANDIN HUSIK, ESQ.
                       LeClairRyan
                       One Riverfront Plaza
                       1037 Raymond Boulevard, 16th Floor
                       Newark, NJ 07102
                       (973) 491-3317
                       Email: Adam@husik.com

                       DOROTHY MELLO LAGUZZA, ESQ.
                       LeClairRyan
                       One Riverfront Plaza
                       1037 Raymond Boulevard
                       Sixteenth Floor
                       Newark, New Jersey 07102
                       (973) 491-3383
                       email:
                       Dorothy.laguzza@leclairryan.com

For the Defendants:    LEWIS MARSHAL BARR, ESQ.
                       U.S. Department of Justice
                       Environment & Natural Resources
                       Division
                       P.O. Box 7611
                       Washington, DC 20044
                       (202) 514-9645
                       Email: Lewis.barr@usdoj.gov
```

```
 1                              LISA MEGHAN BELL, ESQ.
                                U.S. Department of Justice
 2                              Environment & Natural Resources
                                Division
 3                              P.O. Box 7611
                                Washington, DC 20044
 4

 5
     Audio Operator:
 6
     Transcription Service:     KING TRANSCRIPTION SERVICES
 7                              3 South Corporate Drive, Suite 203
                                Riverdale, NJ  07457
 8                              (973) 237-6080

 9
     Proceedings recorded by electronic sound recording (not all
10   parties were discernible on the record); transcript produced
     by transcription service.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2

 3   Proceeding                                              Page

 4     Proceedings                                             4

 5     The Court's ruling on discovery dispute,               15
       documents matched to source form notes
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Commencement of proceedings at 10:58 A.M.)

2

3      THE COURT:  All right.  We are on the record in PPG
4 Industries versus United States, Civil No. 12-3526.  Can I
5 have appearances, please, beginning with plaintiff.

6      MR. HUSIK:  Good morning, Your Honor, Adam Husik
7 from LeClairRyan for plaintiff PPG Industries.

8      MS. LAGUZZA:  And Dorothy Laguzza on behalf of PPG
9 Industries.

10     MR. BARR:  Good morning, Your Honor, Lewis Barr for
11 the government, defendants and counterclaimants.

12     MS. BELL:  And Lisa Bell for the United States.

13     THE COURT:  All right.  Thank you.

14     So I have reviewed the parties' July 11th letter.
15 It seems to me that in the main, the discovery issues are
16 largely resolved except for one or two issues.

17     Let me see here.  All right.  So PPG is now
18 agreeing that another Rule 30(b)(6) deposition is not
19 necessary.  The government is not committing to the idea that
20 all fact depositions are done, because the government says
21 we've, within the last four months, have gotten some 124,000
22 pages of documents, and PPG may be in the process of
23 producing additional documents, presumably a reference to
24 the -- referenced in the July 11th letter at page 9 regarding
25 the post-deposition documents that PPG is determining whether

1   it has and has agreed to produce, if it does have.
2              Here is -- here is what I'm going to say on that.
3   If at this point, there is a need for another deposition, the
4   party seeking it, after conferring with the other side and if
5   an agreement can't be resolved, will make an application to
6   me explaining why there's good cause under Fed. R. Civ. P. 16
7   to take the deposition at this late date.  Obviously, if, for
8   example, the government gets a new document production, say,
9   two weeks from now and truly needs a deposition as a result
10  of that, that would probably constitute good cause.  But at
11  this point, I'm -- I'm not sure that anybody has really put
12  the issue squarely in front of me to resolve, and as PPG
13  points out, right now, we would just be speculating, because
14  we don't -- there's not a specific request, as I understand
15  it, to do a deposition.
16             Is that correct, Government?
17             MR. BARR:  Yes, Your Honor, that is correct.  I
18  would add one other issue, and that is PPG may go to these
19  other federal record centers that it's discussed, and it may
20  go to the Department of Energy records storage facility, and
21  it may produce documents from those locations.  And that may
22  be another reason that would prompt the need for a
23  deposition.
24             But we do agree with the Court's analysis that an
25  application would need to be made and good cause would need

1  to be shown.

2          THE COURT: All right. So --

3          MR. HUSIK: And that's our position. We agree,
4  Your Honor.

5          THE COURT: Okay. So that's easy enough.

6          Let's see. The parties have worked out the idea of
7  relying on representations of counsel and move other
8  discovery, at least at this point.

9          Am -- if I'm not mistaken, the remaining issue is
10 this government request 3(I) and government request 1(B), and
11 1(B) might not even be an issue. Or have I missed something
12 before we get to those two requests?

13         MR. HUSIK: Your Honor, this is Adam Husik for PPG.

14         Actually, we've resolved 3(I). That was the
15 request for appraisal documents that were previously on our
16 privilege log. We -- we met and conferred and considered it
17 further. We're going to produce any and all appraisals,
18 whether or not they're on the log or not, that are for the
19 relevant sites.

20         THE COURT: Okay.

21         MR. HUSIK: -- confidential under our protective
22 order, but we've resolved that issue.

23         THE COURT: Okay.

24         MR. BARR: And, Your Honor, I just wanted to
25 underscore one nuance of that, and that is the valuations and

|Teleconference
|12-cv-03526, July 12, 2016

7

```
 1  appraisals pertain not just to current values, but estimates
 2  and projections of future values.
 3              MR. HUSIK:  Well --
 4              MR. BARR:  These pertain to the economic benefits
 5  issue and the extent to which PPG will have actually incurred
 6  a cost within the meaning of CERCLA.
 7              MR. HUSIK:  Your Honor, this is Adam Husik.
 8              Which -- appraisals actually just discuss current
 9  value.  He hasn't seen them yet, but he doesn't know what
10  they go to, but nevertheless, we're producing them.  They're
11  current property or then-current property appraisals.  We
12  don't think they're relevant, but he can have them, frankly.
13              THE COURT:  All right.  So -- so PPG's going to
14  produce the valuations, and the valuations will say what they
15  say.
16              MR. HUSIK:  Correct.
17              THE COURT:  Okay.
18              MR. BARR:  Yes, Your Honor.
19              THE COURT:  All right.  Terrific.
20              What -- is there an issue at this point regarding
21  1(B)?  These are the emails referenced by Ms. Seuffert.
22              MR. HUSIK:  We believe it's one email, Your Honor,
23  they followed up with the witness.  And this is her email
24  from Dorothy Laguzza, who's on this call, counsel for PPG,
25  and Ms. Kulsul [phonetic], the PPG employee.  It was an email
```

1  during the course of litigation to respond to a discovery

2  request of Mr. Barr's.  It's a clearly privileged email.

3          We don't think it's an issue, however, because in

4  lieu of producing that privileged email, we're actually going

5  to be responding to Mr. Barr in his deposition follow-up

6  issues on a related subject with all the information that --

7  factual information in there, plus more.  The 2014 email, we

8  have more information since then, and it's going to be moot.

9  We're going to be giving them a narrative response that

10 addresses the issue.

11          THE COURT:  All right.  So why don't we agree to

12 this, then:  PPG will produce those documents.  If for some

13 reason there's still an issue regarding responsiveness -- I'm

14 not sure, based on what PPG's just represented, what that

15 would be, but if there is, and PPG wants -- I'm sorry -- and

16 the government wants to follow up, they can raise that under

17 the same Rule 16 standard.

18          MR. BARR:  Yes, Your Honor.

19          THE COURT:  All right.

20          MR. HUSIK:  Your Honor, there's one issue that we

21 may have -- I'm not sure we've gotten to it in the letter

22 yet.  I think it was before this point.  We raised the issue

23 with Mr. Barr last week, after receiving information from the

24 government, asking them to match up certain -- they're called

25 document source forms that log one of their researcher's

1  efforts.
2           We just want an exemplar of those to match up the
3  documents they had produced.  Mr. Barr has indicated that
4  everything the researchers gave the DOJ attorneys was
5  produced in this case.  We tried this last week, and we're
6  just not -- we're not able to match that up.
7           Mr. Barr represented that it may or may not be
8  possible for the DOJ to do that.  If it's not possible,
9  obviously, it's not possible.  But given the number of Bates
10 numbers that PPG has provided to the government, previously
11 produced documents, we think it's eminently fair just to have
12 the government either give us the Bates numbers of their
13 production that match up with these -- these notes of their
14 researcher or tell us that they can't do so.  And to date,
15 they've refused to do that.
16          THE COURT:  So is this what's covered under --
17          MR. BARR:  Your Honor, that --
18          THE COURT:  Hold on.  Let me just -- let me just
19 get myself sort of -- make sure that I understand the issue.
20          Is this what PPG raised on page 5 of the July 11th
21 order?  Under the "we also acknowledge" paragraph, the fourth
22 paragraph down?
23          MR. HUSIK:  Actually on page 7, Your Honor, we
24 refer to the -- well, it starts -- it starts --
25          THE COURT:  I see.

```
 1                MR. HUSIK:  -- at that page, correct.
 2                THE COURT:  Okay.
 3                MR. HUSIK:  But then on page 6 at the bottom,
 4   corroboration of DOJ source form information, that's what
 5   we're referring to.
 6                They attach -- they provided to us printouts of
 7   this researcher's search efforts or some of them.  And they
 8   don't match -- they don't give the Bates number for the
 9   corresponding U.S. production.
10                We're just trying to (A) confirm that these
11   documents were produced by the government, and (B) just tell
12   which ones they were, because we're not able to by the
13   references on the documents.
14                Mr. Barr indicated that they may not have the
15   ability technically to match that up.
16                Mr. Sorokowski testified that this researcher
17   actually printed the source information on the back of the
18   documents he copied, so -- our --
19                MR. BARR:  No, that's not exactly right.
20                THE COURT:  Wait, I'm sorry.  And I apologize --
21                MR. BARR:  He wasn't sure.
22                THE COURT:  Hold on.  Hold on.  Hold on, Mr. Barr,
23   I want to hear what you have to say, but -- and I apologize
24   for my obtuseness.
25                MR. BARR:  Okay.
```

```
 1                THE COURT:  I'm still trying to understand --
 2                MR. BARR:  No, I apologize for interrupting.
 3                THE COURT:  No, no, no.  That's okay.  That's all
 4   right.  I just -- before we get to sort of the argument side,
 5   I want to make sure I understand, so -- all right.
 6                So if I understand it correctly, Max Friedman
 7   [phonetic] was a DOG -- DOJ researcher.  He used certain what
 8   are called document source forms to log the records work that
 9   he did.  And he was alone in that regard.  Right?
10                MR. BARR:  That is correct.
11                THE COURT:  All right.  And the government -- and
12   I'm -- I'm literally -- if you haven't already figured out,
13   I'm just looking at pages 6 through 7 of the joint letter,
14   just to understand PPG's side, and then I want to understand
15   the government's side, because I'm still not sure I
16   understand this issue.
17                So -- so the government is basically saying, look,
18   whatever the researcher's pulled, whether it was at the
19   direction of the NARA or FRC, ultimately were produced to
20   PPG.  And --
21                MR. BARR:  Correct.
22                THE COURT:  Okay.  So what is it now that PPG
23   wants?  I mean, presumably, you have the documents.  I'm
24   assuming they're Bates-stamped.  Right?
25         (Simultaneous conversation)
```

```
 1              THE COURT:  You're trying to marry those up to --
 2         (Simultaneous conversation)
 3              MR. BARR:  But they were Bates-stamped --
 4              THE COURT:  Is P --
 5              MR. HUSIK:  Correct, Your Honor.  The documents
 6    produced by the government are Bates-stamped, and we are
 7    simply, for lack of a better word, just trying to do a
 8    sampling, a test -- just to ensure that the documents that
 9    Mr. Friedman has pulled were, in fact, produced to us.  It
10    really boils down to that.
11              THE COURT:  All right.  Mr. -- Mr. Barr, what's the
12    issue with that?
13              MR. BARR:  Well, the issue is the Bates numbers
14    were placed on the documents a number of months after the
15    source forms were filled out.
16              THE COURT:  Right.
17              MR. BARR:  Mr. Sorokowski testified that he was not
18    sure whether Mr. Friedman wrote this -- these handwritten
19    notes on the backs of documents for purposes of this case or
20    had simply done so in other cases.
21              And if we've represented multiple times that we've
22    produced every single piece of paper, why on earth is some
23    sort of matching or corroboration or confirmation necessary?
24              The other issue is the reason we say it's not
25    technically feasible, even to the extent that Mr. Friedman
```

1  wrote on the backs of documents or even on the front of
2  documents, the handwritten notations are not
3  computer-searchable through the OCR software.
4           THE COURT:  Right.
5           MR. BARR:  So for -- it's an exercise in futility,
6  and it's entirely unnecessary to put the government to the
7  exercise of trying to match up Mr. Friedman's source forms
8  with documents that there's no dispute, there's no evidence
9  of a dispute that the documents have been produced.
10          I mean what possible need is there for this
11 exercise?
12          THE COURT:  Well, let me turn that question over to
13 PPG, because I'm curious myself.  Why do you care, if you
14 have the documents and assuming the government is not
15 challenging authenticity, does it matter really whether it
16 was produced by Mr. Friedman or from some other source, it
17 was still ultimately a production by the government?
18          MR. HUSIK:  Absolutely, Your Honor.  And I want to
19 nuance that.  I want to make clear:  I'm not challenging the
20 government's representation that whatever they were provided
21 was, in fact, produced to us.  If counsel's saying that, I --
22 we trust them, and it's not -- it's not -- that's not the
23 issue.
24          The issue is there's nothing on these source forms
25 whether Mr. Friedman said, five pages copied, one page is

```
 1  copied, we don't know if anything was copied.
 2              But what this -- what the forms do say is they say
 3  that certain pages or certain locations may be relevant.
 4  There's -- there are notes about locations.  And it's not
 5  clear whether documents were produced from those locations.
 6              That -- maybe I didn't articulate it clearly.
 7  That's what we're getting at here.  It's not clear to us that
 8  all these materials were produced to us.  Not because they
 9  weren't given to Mr. Barr.  Please understand that.  But
10  rather that Mr. Friedman may have looking at locations, and
11  this is what we were trying to get at from the Sorokowski
12  deposition as to the government's efforts, but he may have
13  not opted to copy things from the location.
14              That's what we're trying to determine.
15              And of the 600-or-so pages they've produced to us,
16  we selected approximately 10 percent; I think it was 60 or 70
17  pages, a very small sampling.  Whether it's an exercise in
18  futility and cannot be done, I think Mr. Barr has answered
19  the question, which is what we asked last week for him to
20  tell us.  But that, Your Honor, is the reason why we're
21  asking, not to challenge the veracity of counsel's statement.
22  Just, we don't know what Mr. Friedman, in fact, copied, if
23  anything, that relates to his notes.
24              I hope that's -- it.
25              THE COURT:  Well --
```

1            MR. BARR:  Your Honor, if you need to hear from me,
2    I can address what Mr. Husik just said.
3            THE COURT:  No.  I'm satisfied as well that even if
4    somehow this were determinable -- and I'm not at all sure
5    that it is for the reasons that Mr. Barr outlined -- it
6    strikes me that notwithstanding that, it would be -- it would
7    still be inherently unreliable, and in any event, the -- the
8    additional burden, time, and expense involved in doing that,
9    even if it were, outweighs the putative benefit.
10           I understand PPG wants to ensure that it has
11   responsive documents for the relevant locations.  But,
12   obviously, PPG has had -- has vigorously taken discovery and
13   has the opportunity itself to marry up the documents to
14   specific locations.
15           Moreover, the government, as I understand it, has
16   already worked with the FRC and DOE to -- personnel to
17   arrange in-person inspections at locations, which may also
18   lend further insight into any particularly relevant documents
19   on a location-by-location basis.
20           So for those reasons, I'm going to -- to the extent
21   PPG made the request to require the government to essentially
22   collate the documents, the Friedman documents, I'm going to
23   respectfully deny that request.
24           Okay.  What is left?
25        (Simultaneous conversation)

1          MR. HUSIK:  I don't believe --

2       (Simultaneous conversation)

3          MR. BARR:  -- Your Honor.  That is all for us,

4  Your Honor.  I think we've said everything we needed to today

5  and our portion of the letter.

6          THE COURT:  All right.  So this is what I would

7  like us to do, then.  We need to figure out -- other than the

8  sort of wrapup or followup fact discovery that we've talked

9  about, what, if anything, is left by way of fact discovery?

10          MR. BARR:  Your Honor, we did want to touch on

11  the -- the possibility or the likelihood, whatever your

12  choice might be, that PPG will actually follow up and look at

13  these four federal record centers and the Department of

14  Energy records storage facility and attempt to gain copies of

15  documents there.

16          If they do, we want to be sure that the documents

17  that they obtain are produced to the government in a timely

18  fashion.

19          THE COURT:  Yeah, they -- I thought they were --

20       (Simultaneous conversation)

21          MR. BARR:  And what we propose --

22       (Simultaneous conversation)

23          THE COURT:  Didn't -- Mr. Husik, didn't PPG

24  represent in the letter that it would do that?

25          MR. HUSIK:  Of course, we will, Your Honor.  As

```
 1  soon as we get them, we'll produce them.
 2           THE COURT:  Yeah.
 3           MR. BARR:  Yeah, if we can -- we were just
 4  suggesting a concrete date, no later than 30 days before the
 5  expert reports are due.  But we're certainly happy --
 6           THE COURT:  I don't think that's unfair.  Do you
 7  Mr. Husik?
 8       (Simultaneous conversation)
 9           MR. BARR:  -- PPG and --
10       (Simultaneous conversation)
11           THE COURT:  I don't think 30 days is --
12       (Simultaneous conversation)
13           MR. HUSIK:  The only -- the only caveat would be
14  that Mr. Barr has indicated that certain DOE files may be
15  interspersed with confidential information, so if we have
16  to -- that, that then -- separated out.
17           But we're happy, frankly, with trying to meet that
18  deadline.  And for some reason, some issue with respect to it
19  arises, we can make an application under Rule 16, as Mr. Barr
20  would do on his side.  So I think that's fine.
21           THE COURT:  Why don't we do this?  Yeah, I think
22  that makes sense.
23           Look, obviously, if -- if we run into a situation
24  where, for example, DOE, there are certain documents that
25  need to be culled out that delays the production, presumably,
```

```
 1  that's going to affect PPG as well.  If that happens, then
 2  you folks will meet and confer, and if you need to, alter
 3  expert report deadlines, you can meet and confer on that.
 4  Obviously, it will be tailored to the delay in the production
 5  from the government agency.
 6           Now, on the issue of expert deadlines, we need
 7  expert deadlines, don't we?
 8           MR. HUSIK:  We do and -- Pretrial scheduling order,
 9  Your Honor.  I believe, October is the initial date for
10  reports.
11           THE COURT:  Hold on.  Let me -- we've had
12  several --
13           MR. BARR:  Yeah, primary expert reports are due
14  October 7th, Your Honor.
15           THE COURT:  All right. And -- all right.  So we
16  have that in place.  And I had forgotten, because we've -- a
17  lot has transpired since we entered that scheduling order and
18  now.
19           All right.  So if there's still an issue, you folks
20  will let me know.
21           And then does it make sense for us to talk right
22  around that date again, just as a regular status conference?
23           MR. HUSIK:  We think it does, Your Honor,
24  absolutely.
25           THE COURT:  If you have a better idea --
```

```
 1                 MR. BARR:  Yes, Your Honor.
 2                 THE COURT:  If you folks have a better idea, I'm
 3   all ears.
 4         (Simultaneous conversation)
 5                 MR. HUSIK:  -- and we appreciate a call.  That's
 6   absolutely fine.
 7                 THE COURT:  All right.  Let me do this, then, if
 8   there's nothing else -- is there anything else?  Otherwise,
 9   I'm going to put you folks on hold and we'll get you a date
10   right around that October 7th time frame.
11                 MR. BARR:  Okay, Your Honor, thank you.
12                 MR. HUSIK:  --
13                 THE COURT:  Terrific.  All right.  Hold, please.
14   Thank you very much, folks.
15                 MR. HUSIK:  Thank you.
16                 (Conclusion of proceedings at 11:21 A.M.)
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | Certification |
| 2 | I, SARA L. KERN, Transcriptionist, do hereby certify |
| 3 | that the 20 pages contained herein constitute a full, true, |
| 4 | and accurate transcript from the official electronic |
| 5 | recording of the proceedings had in the above-entitled |
| 6 | matter; that research was performed on the spelling of proper |
| 7 | names and utilizing the information provided, but that in |
| 8 | many cases the spellings were educated guesses; that the |
| 9 | transcript was prepared by me or under my direction and was |
| 10 | done to the best of my skill and ability. |
| 11 | I further certify that I am in no way related to any of |
| 12 | the parties hereto nor am I in any way interested in the |
| 13 | outcome hereof. |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | s/ *Sara L. Kern*          18th of July, 2016 |
| 19 | Signature of Approved Transcriber       Date |
| 20 | |
| 21 | |
| 22 | Sara L. Kern, CET**D-338<br>King Transcription Services<br>3 South Corporate Drive, Suite 203 |
| 23 | Riverdale, NJ  07457<br>(973) 237-6080 |
| 24 | |
| 25 | |