UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PPG INDUSTRIES, INC.,<br><br>　　　　Plaintiff,<br>　v.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF COMMERCE; WILBUR ROSS, in his official capacity as Secretary of Commerce; and UNITED STATES DEPARTMENT OF DEFENSE,<br><br>　　　　Defendants. | Case No. 2:12-CV-03526 |

**United States' Response to PPG's Supplemental Statement of Facts**

As authorized by Local Rule 56.1(a), the United States responds to PPG's Supplemental Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment, ECF No. 169-2 (PPG Supp. Stmt.) as follows:

1. The United States does not dispute the statements in the first two sentences of Paragraph 1, but notes that the Court specifically allowed motions to strike "if PPG still feels that there's a significant enough reliance on the expert and that the expert should be stricken . . . ." PPG Supp. Ex. 6, ECF

1

No. 170-2 at 12; *see id.* at 11.  The United States disputes the statement in the last sentence because it is a legal conclusion.

2. The United States disputes the statement in the first sentence of Paragraph 2 because PPG offers no evidence to support that statement.  *See* U.S. Stmt., ECF No. 152-1, ¶ 143.  In any event, the statement is vague for not specifying what community relations activities PPG means.  The United States does not dispute the statement in the second sentence, but states that it is immaterial because the document PPG cites pertains to residential sites under the 1990 Administrative Consent Order (1990 Order), which are not at dispute here.  PPG Supp. Ex. 18, ECF Nos. 170-14 & 170-15 at PPGNPR0071874, PPGNPR0071880-81; PPG Ex. 101, ECF No. 159-26 at PPGNPR0030006-07 (listing non-residential sites under the 1990 Order); First Amended Compl., ECF No. 16, ¶ 9 (listing sites at dispute).

3. The United States disputes the statement in the first sentence of Paragraph 3. PPG cites the report of Mr. Johnson, which, in turn, repeats that statement and cites a conversation with Richard Feinberg for support—without providing evidence of what was actually said in that conversation.  PPG Supp. Ex. 2, ECF No. 169-6 at 40.  In fact, the documents in this case show only very limited communication between PPG and Jersey City.  U.S. Ex. 5, ECF No. 152-8, Att. 2 (Kool Rebuttal) at 16.  Nor has PPG provided

evidence that any information it had given to Jersey City was also given to the community. The United States does not dispute the statements in the second and third sentences, but states that they are immaterial because the actions discussed relate to residential sites under the 1990 Order, which are not at dispute here. PPG Supp. Ex. 19, ECF No. 170-16, PPGNPR0638884 (providing that the proposed plan is for "Residential Sites"); First Amended Compl. ¶ 9; PPG Ex. 101, ECF No. 159-26 at PPGNPR0029977 (dating proposed plan to December 1989), PPGNPR0030006-07 (listing non-residential sites under the 1990 Order).

4. The United States disputes the statements in Paragraph 4 because there is no evidence that the draft remedial-investigation work plan PPG cites was ever finalized or implemented. Kool Rebuttal at 16-17. Instead, remedial-investigation work plans that were implemented do not mention community relations at all. *Id.* at 17; U.S. Ex. 5, ECF No. 152-8, Att. 1 (Kool Report) at 4-13.

5. The United States disputes the statements in Paragraph 5 because they are not supported by the "Chrome Updates" PPG cites. Those updates, covering the period from April 1996 to September 2009, do not invite the community to comment on the Sites or mention opportunities for doing so; they simply summarize "significant developments that *have occurred*" during the

covered period. *See, e.g.*, Chrome Update 33, December 2007 (emphasis added), *available at* http://www.state.nj.us/dep/srp/siteinfo/chrome/update34.htm. Though these updates are sent to the "Hudson County Chromate Waste Sites Mailing List," there is no information of who is on this mailing list and whether it included any members of the community affected by the Chromium Waste or the Sites. Finally, the updates predating December 2002 do not address the Sites at all.

6. The United States does not dispute the statements in Paragraph 6, but states that the document PPG cites does not pertain to public-participation provisions in the National Contingency Plan relating to site-specific investigations and selection of response actions. NJDEP Division of Science, Research and Environmental Health, http://www.state.nj.us/dep/dsr/chromium/crmorlift200702.pdf. Rather, the document refers to New Jersey's process for establishing state-wide chromium cleanup standards. *Id.*

7. The United States does not dispute Paragraph 7 to the extent the statements provide that a public-participation task force gave draft recommendations. But the United States notes that the draft recommendations apply to all sites subject to New Jersey's Technical Requirements for Site Remediation

(NJCA 7:26E).

http://www.nj.gov/dep/srp/community/notices/draft_task_force_recommendations.pdf.  They do not address specific sites contaminated by chromium, let alone the disputed Sites.  *See id.*

8. The United States does not dispute the statement in the first sentence of Paragraph 8, but states that the draft recommendations PPG cites do not have provisions for public review, input, participation, or comment on proposed remedial actions.  *See id.*; Kool Rebuttal at 19.  The United States does not dispute the statement in the second sentence.

9. The United States does not dispute the statements in Paragraph 9, but states that the 20/20 Chromium Policy PPG cites established state-wide soil-cleanup standards for chromium, and does not address the National Contingency Plan's public-participation process in making decisions about remedy selection and implementation for specific sites.  *See* Lisa P. Jackson, Commissioner of Jersey Department of Environmental Protection, Memorandum re Chromium Moratorium (Feb. 8, 2007) (Jackson Memo) at 2, *available at* http://www.state.nj.us/dep/dsr/chromium/crmorlift200702.pdf (last visited May 30, 2018).

10. The United States disputes the statements in Paragraph 10 because they are not supported by the website PPG cites.  As for PPG's claim that it must

5

remediate the Sites to the "most restrictive" standard, the 20/20 Chromium Policy PPG cites in Paragraph 9 contemplates complete removal of chromium contamination in some cases, rather than excavation of only 20 feet.  *See* Jackson Memo at 2.[1]

11. The United States disputes the statements in Paragraph 11 because the document PPG cites, PPG Supp. Ex. 21, ECF No. 170-18, does not show that the community actively participated in discussions about remedial alternatives and proposed plans.  To the contrary, the document states that "we need to roll out a communications plan to *inform* the community of the *decision* to excavate."  *Id.* at PPGNPR0274264 (emphases added).  And though the document mentions the "possibility" of a meeting with the Citizen Advisory Board, *id.*, there is no documentation that the meeting actually occurred.

12. The United States does not dispute that the 2009 Judgment requires the appointment of a Site Administrator, but disputes the remaining statements in Paragraph 12 because they are not supported by the 2009 Judgment, which PPG references.  The 2009 Judgment requires that the Site Administrator "[a]ttend and participate in community or public meetings to

---

[1] The United States notes that whether the Sites are zoned as residential under the Canal Crossing Redevelopment Plan is a separate matter from their classification as non-residential under the 1990 Order.

6

discuss proposed remedial measures at the PPG Sites[.]" PPG Ex. 102, ECF No. 159-27 at PPGNPR0610292. It does not require the Site Administrator to solicit public input or convey community concerns to the Chromium Cleanup Partnership, the state superior court, New Jersey, Jersey City, or PPG. *See id.* PPG also cites the slideshow from a November 2009 public meeting. PPG Supp. Ex. 27, ECF No. 170-24. The slideshow generally informs the community of decisions already made, rather than proposed decisions. *See id.* And though the slideshow mentions that the Site Administrator's responsibilities include "communicate with affected community, solicit input, and convey community concerns to the partnership," *id.* at PPGNPR0832462, it does not state that the Site Administrator actually did any of these things. *See* Kool Report at 4-15.

13. The United States does not dispute the statements in Paragraph 13, but states that the article that PPG cites focuses on the proposed settlement that resulted in the 2009 Judgement, and describes how the public may comment on that. *See* Ricardo Kaulessar, Public Unsettled on Chromium Settlement, The Hudson Reporter (Mar. 29, 2009), *available at* http://www.hudsonreporter.com/printer_friendly/2200840 (last visited May 30, 2018). In addition, PPG cites the transcript of an October 2010 status report with the superior court, during which the Site Administrator stated

that a full-excavation "has consistently been supported by the community." PPG Ex. 106, ECF No. 159-31 at PPGNPR0190397. But there is no discussion of whether the community had thought that "the cleanup might not be stringent enough, and there was a need for a more specific and defined cleanup plan that resulted in the remedy selected for the Sites," or any indication of whether that support resulted from public review of proposed decisions. PPG Supp. Stmt. ¶ 13.

14. The United States disputes the statement in Paragraph 14 because it is not supported by the document PPG cites. PPG Supp. Ex. 30, ECF No. 170-27. That document is an email of a 2010 discussion between PPG and its contractor about a plan to adopt a full-excavation approach and how that would impact the work at Site 114. It does not show that New Jersey's approval of the ultimate remedy was "influenced by public demand for excavation and removal." PPG Supp. Stmt. ¶ 14. And though the document refers to "direction . . . received," it does not clarify who issued the direction and there is no mention of the motivation or influence behind that direction. PPG Supp. Ex. 30, ECF No. 170-27 at PPGNPR0271959.

15. The United States does not dispute the statements in the first sentence of Paragraph 15 but states that the community outreach described by the Site Administrator does not include inviting the public to comment on proposed

response actions. PPG Supp. Ex. 39, ECF No. 170-36 at 4, 8, 10. Rather, they entail feedback on other issues such as cleanup schedule and health studies. PPG Supp. Ex. 39, ECF No. 170-36 at 11-12; http://www.chromiumcleanup.com/newsBriefsPast/newsbriefs2009q4.html (summarizing 11/23/2009 and 12/17/2009 meetings referenced in PPG Supp. Ex. 39). The United States does not dispute the statements in the second sentence, but states that the document PPG cites does not mention community outreach. PPG Supp. Ex. 41, ECF No. 170-38.

16. The United States does not dispute the statement in Paragraph 16 that on November 23, 2010, the Site Administrator submitted a remediation plan to Hudson County Superior Court. The United States disputes the statement that that plan was disseminated to the public because it is not supported by the document PPG cites. *See* www.nj.gov/dep/srp/siteinfo/chrome/ppg/garfield_ave_cleanup_plan_201011.pdf (last visited May 30, 2018). In fact, there is no indication that the public had any opportunity to review or comment on the remediation plan submitted to the court. *See id.*

                              Respectfully submitted,

Dated: June 7, 2018                       Jeffrey H. Wood
                                                *Acting Assistant Attorney General*

      */s/ Sue Chen*
      John E. Sullivan
      *Senior Trial Counsel*
      Sue Chen
      Tsuki Hoshijima
      *Trial Attorneys*
      U.S. Department of Justice
      Environment & Natural Resources Division
      Environmental Defense Section
      P.O. Box 7611
      Washington, D.C. 20044
      202.305.0283
      sue.chen@usdoj.gov