## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PPG INDUSTRIES, INC., <br><br>      Plaintiff, <br><br>v. <br><br>UNITED STATES OF AMERICA, et al., <br><br>      Defendants. | Civil Action No. <br> 2:12-cv-03526 (JV)(MAH) |

### PPG INDUSTRIES, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                              **LeClairRyan**
                              *A Virginia PLLC*
                              Joseph F. Lagrotteria, Esq.
                              One Riverfront Plaza
                              1037 Raymond Blvd., Sixteenth Floor
                              Newark, New Jersey 07102
                              (973) 491-3600
                              Attorneys for Plaintiff-Counterclaim
                              Defendant, PPG Industries, Inc.

                 By:   */s **Joseph F. Lagrotteria***
                        JOSEPH F. LAGROTTERIA

Dated: June 7, 2018

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

LEGAL ARGUMENT ................................................................................................2

    I.      PPG has met its burden and summary judgment is appropriate ...........2

    II.     The Government exercised a sustained and very real threat of seizure over the NPR Plant ..................................................................................4

    III.    The Government required NPR to modify its manufacturing process to increase the production of Chromium Chemicals despite a corresponding increase in the generation of a higher toxicity waste product ................................................................................................5

    IV.    FMC is still binding in the District of New Jersey ...............................8

    V.     PPG has established that the Government arranged for the disposal of waste at the Sites ...................................................................................9

CONCLUSION ...........................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*Niagara Mohawk Power Corp. v. Chevron USA, Inc.*,
   596 F.3d 112 (2d Cir. 2010) ................................................................................... 2

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ................................................................................................. 8

*United States v. Cornell-Dubilier Elecs., Inc.*,
   *supra*, 2014 WL 4978635 ...................................................................................... 2

## **PRELIMINARY STATEMENT**

PPG submits this reply memorandum in further support of its Motion for Summary Judgment (ECF No. 153) ("PPG Motion") and in response to the Government's opposition (ECF No. 167) ("Government Opposition"). As discussed in PPG's Motion and the within reply, the historical record provides ample support that the Government, pursuant to CERCLA, should be adjudged both an operator and arranger relative to the Sites at issue as well as liable under RCRA.

While the Government now promotes a narrative that it played only a nominal role in controlling and mandating changes at the chromium chemicals producers' facilities during the wartime eras at issue, its own documents confirm a different scenario – namely a consistent and sustained presence at and control over this relatively small industry, which operated a handful of manufacturing plants, and which undeniably played a vital role to the Government and its wartime allies. The control over NPR's manufacturing process, waste disposal and labor practices embody the precise elements which support a finding of Government liability.

PPG does not seek a determination that the Government is one hundred percent liable for the costs associated with remediation of the Sites at issue (which costs continue to accrue as remediation remains ongoing); rather, consistent with the broad interpretation of CERCLA by courts in this and other districts, PPG

seeks a threshold liability determination, to be followed by a subsequent allocation hearing to determine the Government's appropriate share of cleanup costs. PPG respectfully submits that it has made the requisite showing to support such a finding and that nothing in the Government's parallel motion or in the Government's Opposition supports any other result.

## LEGAL ARGUMENT

### I. PPG has met its burden and summary judgment is appropriate

As set forth in PPG's Motion, and as acknowledged by the Government, liability in CERCLA matters may be "inferred from the totality of the circumstances; it need not be proven by direct evidence. Particularly in cases where the issues date back to the 1940s and direct evidence is rare, the Court must rely upon circumstantial evidence." *United States v. Cornell-Dubilier Elecs., Inc.*, *supra*, 2014 WL 4978635, at *8. Stated differently, "there is nothing objectionable in basing findings solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain." *Niagara Mohawk Power Corp. v. Chevron USA, Inc.*, 596 F.3d 112, 131 (2d Cir. 2010). While citing the *Niagara* case, the Government's Opposition acknowledges "that [a] finding [of] liability may be based solely on circumstantial evidence on review of summary judgment . . ." *See* Government's Opposition ("Gov. Opp.") at 12.

PPG has produced from Defendants' own archives numerous memoranda and reports from WWI and WWII-era Government agencies which demonstrate the Government's pervasive control over the chromium chemicals industry. In addition, circumstantial evidence of other documents which cannot be located in the Government's National Archives and Records Administration ("NARA") is significant, particularly as the Government has acknowledged that relevant materials have likely been destroyed by the Government. For instance, following WWII, the entire set of records relative to the sodium bichromate subsidy program in DSC's files was ordered to be destroyed in 1949. *See* PPG's Opposition (PPG's Opp.) (ECF 169) at 9 and 35. This acknowledged destruction of wartime records is significant and further bolsters the weight of the circumstantial material evidencing the subsidy arrangement between the Government and NPR.

It should also be noted that the Government must be held to the same Fed. R. Civ. P. 56 standard relative to its own pending Motion for Summary Judgment which seeks a determination that there is no evidence rendering it liable under CERCLA and RCRA. Paradoxically, the Government states at multiple points that there are multiple material issues of fact in dispute in this matter. The Government's position in this regard is, if nothing else, an admission necessitating the denial of its own Motion. *See, e.g.*, Gov. Opp. at 1, 4, 18-19. For the reasons briefed at length in the PPG Motion and Opposition submissions, PPG has met its

burden of proof and summary judgment is appropriate.

## II. The Government exercised a sustained and very real threat of seizure over the NPR Plant

The Government's argument that NPR's plant was not threatened by seizure ignores the fact of its seizure of the Diamond Alkali Plant – an act that sent a very powerful message to the handful of other chromium chemicals facilities. The Army's historian reported that its seizure of plants "idled by or threatened with labor unrest or management noncompliance with federal policies developed into a major U.S. Army domestic function." *See* PPG Statement of Undisputed Material Facts (ECF 153-3) ("PPG SOF") at ¶ 70. Accordingly, there can be no valid dispute that the Government wielded great power (which it did not hesitate to exercise when necessary) over the chromium chemicals producers, including NPR.

The threat of plant seizure began during WWI, when this authority was granted to the Government through the National Defense Act of 1916. *Id.* at ¶¶ 23-24. Bernard Baruch, Director of the War Industries Board, instituted a "voluntary pricing" scheme the Government enforced with the threat of plant seizure. *Id.* at ¶¶ 30-31. The plant seizure program, reauthorized during WWII, was deemed a "major U.S. Army domestic function," vital to the war effort and a very real threat for NPR. PPG SOF at ¶ 70. The Government's expert and Rule 30(b)(6) designee, Dr. Jay Brigham, acknowledged the aforementioned seizure of the Diamond Alkali Plant and its importance during his testimony in this matter. *See* Supplemental

Certification of Joseph F. Lagrotteria ("Lagrotteria Supp. Cert.," ECF No. 169-4) at ¶ 40. Accordingly, the Government's argument that it never threatened to seize NPR's Plant is spurious and should be given no weight.

**III. The Government required NPR to modify its manufacturing process to increase the production of Chromium Chemicals despite a corresponding increase in the generation of a higher toxicity waste product**

The Government incorrectly asserts that there is "no evidence" that the Government required NPR to change its chromium chemicals process through elimination of sludge rework and push through of greater volumes of virgin ore and subsidized the change by purchasing the waste generated. MRC's rejection of the War Production Board's ("WPB") sludge purchase proposal is not sufficient evidence that the sludge purchase was not subsidized. The Government fails to mention that the MRC also rejected the high grade ore subsidy program, but acknowledges that the high grade ore subsidy was implemented.

The WPB implemented both the high-grade ore and elimination rework subsidies without MRC's involvement. The record demonstrates that the WPB looked to other Government agencies to follow through with both the high grade ore and the sludge purchase subsidies as methods of increasing production to meet war quotas. In late December 1944, the WPB notably reported that the chrome chemicals program was "almost entirely subsidized." PPG SOF at ¶ 101; PPG Opp. SOF at ¶ 123.

5

The evidence shows that the WPB began discussion of this process change with NPR in January 1944. PPG SOF at ¶ 84. The Army Service Forces ("ASF") was directed by the Pentagon to order NPR production increases. NPR advised a seven-day week could not be accomplished and the only means possible was "…by wasteful use of chromite ore without expenditure for additional plant facilities…" *Id.* at ¶ 126. The evidence indicates that this sludge purchase subsidy for increased production mandate was implemented: NPR exceeded its ore usage quota while all other chrome producers were well under quota due to the failure of the high-grade ore program, NPR successfully increased production, and the aerial photographs show massive piles of sludge post-war with distinct light-colored piles at the top of the north pile and behind the kilns. The resultant distinctive quality of the mid-1944 era sludge is positive proof of the sludge purchase subsidy's implementation. PPG's expert Robert Zoch has determined that, "The important distinction in mud characteristics lies both within the composition and physical properties of the ore residues generated at the NPR plant over time. Heavy muds produced over much of the plant operational history were superseded by light mud generation around mid-1944 until after the end of WWII." Zoch Rebuttal Report (ECF 169-5) at 3.

NPR used more Transvaal chemical-grade ore following the Government's directive to increase its production without expanding its plant or purchasing high-grade ore by eliminating the reworking of waste mud and storing it on-site, as also

directed by the Government. In fact, the Government's expert, John Robertson, acknowledged that NPR changed its process in the 1940s. PPG's Response to Defendant's Statement of Undisputed Facts ("PPG Opp. SOF") (ECF 169-2) at ¶ 82.

Thus, the Government implemented its sludge purchase subsidy to NPR for increased military production requirements, as there is no other rational explanation for NPR to have voluntarily undertaken this uneconomic and wasteful process change without the Government's mandate. NPR suffered great losses during WWII, and would not have made this modification unless directed to do so by the Government. PPG SOF at ¶¶ 85-103; PPG Opp. SOF at ¶¶ 82, 84, 88. NPR would have had no business reason to voluntarily undertake this more costly and wasteful process.

Although some documentation related to the subsidies provided to the chrome chemicals producers during WWII has survived the Government's destruction of documents, the Government's own experts have agreed that no evidence exists to confirm that the subsidy proposed to NPR for eliminating the reworking of waste mud to increase production volume *was not* implemented, as Dr. Jay Brigham testified. PPG SOF at ¶ 134; PPG Opp. SOF at ¶ 85:

> Q: Do you know whether there was another or different type of subsidy program proposed for Natural Products Refining?
> A. There was another subsidy program proposed

7

>regarding the purchase of the mud.
>Q. Sludge?
>A. Sludge/mud, COPR, that was discussed, but that never went through.
>Q. When you say it never went through, were there any documents in the documents we produced or the Government produced that said we're not going to do this or it's not going to happen?
>A. I believe there are no documents that say this did <u>not</u> occur.

Accordingly, the evidence—documentary and circumstantial—proves that NPR's process was changed at the sole direction of the Government.

### IV. FMC is still binding in the District of New Jersey

The Government continues to attempt to deflect the factual similarities of *FMC*—which remains good law—to this case, and these erroneous deflections must be disregarded. As explained in PPG's Opposition, the *Bestfoods* opinion dealt with distinguishable facts: "the extent to which parent corporations may be held liable under CERCLA for operating facilities ostensibly under the control of their subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 60 (1998). The factual situation presented in *Bestfoods* is irrelevant to this Court's consideration of the Government's operator liability here.

Neither the United States Supreme Court, nor the Third Circuit Court of Appeals has overruled *FMC*. The *Bestfoods* Opinion does not even reference *FMC* or the analysis carried out by the Third Circuit in that case. In fact, as acknowledged by the Government (Gov. Opp. at 14-15), courts continue to address

8

the viability of *FMC*, which contradicts the Government's position that the Supreme Court "rejected *FMC's* theory of liability." *See id.* at 15. *FMC* is still binding law in the District of New Jersey, and it cannot be disregarded.

**V.     PPG has established that the Government arranged for the disposal of waste at the Sites**

The Government, citing to the *Burlington* opinion, incorrectly claims that PPG failed to show the requisite intent to find it liable as an arranger under CERCLA. *See id.* at 20. As explained in PPG's Motion and Opposition, the Government entered into subsidy agreements with NPR through which the Government agreed to purchase the additional waste generated by the new manufacturing process it required NPR to implement. PPG SOF at ¶¶ 83-103, 111-17; PPG Opp. SOF at ¶¶ 84, 89. Written copies of such agreements cannot be located and, as discussed above and in PPG's Motion, Government records on this subject have been destroyed over time. *Id.* at ¶¶ 131-34; PPG Opp. SOF at ¶ 40. The totality of the circumstances indicates that the subsidy program was finalized – particularly as there was no economic justification or voluntary business reason why NPR would have made such process changes which resulted in a wasteful and more costly process. *See, e.g.*, PPG Opposition at 17-20.

Directing the disposal of waste at the Sites was part of the Government's intent when it took control of NPR's plant and production process. The WPB specifically noted that the change in NPR's production process would yield "a

9

sludge relatively high in chrome compared to normal sludge," and it concluded that NPR could "stockpile the sludge at the plant." PPG SOF at ¶ 91. In response to the Government's directive to NPR to store the waste at the Sites, one WPB member specifically asked, "[h]ow would you stockpile something like that?" Another responded, "I would expect it would be outdoor storage – no other practical way . . . we want about a 10 percent overall increase in production." *Id.* at ¶ 92; PPG Opp. SOF at ¶ 98. The Government's argument that it did not intend to dispose of the waste at the Sites is a denial of the historical facts. The Government demonstrated a clear intent to arrange for the disposal of waste at the Sites and, accordingly, summary judgment should be granted in PPG's favor.

## **CONCLUSION**

The Record in this matter is clear. The Government's direct operational control over the Sites during WWI and WWII, and its arranging for the disposal of waste at the Sites, satisfies the requirements of CERCLA and RCRA. As a result, summary judgment should be granted in PPG's favor.

In the alternative, the Government has conceded that there are issues of fact in dispute. To the extent the Court finds that there are material issues of fact in dispute, which preclude the granting of the PPG's Motion, any such disputed facts must be deemed equally fatal to the Government's parallel Motion and the Government's motion must also be denied.